UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

IN RE AMITIZA ANTITRUST LITIGATION          MASTER DOCKET NO. 21-cv-11057-MJJ

THIS DOCUMENT RELATES TO:
Proposed End-Payor Class Action
DOCKET NO. 23-cv-12918-MJJ[1]

REPORT AND RECOMMENDATION ON
TAKEDA'S MOTION TO DISMISS PREMERA'S COMPLAINT (#38)

KELLEY, U.S.M.J.

I. Introduction.

In 2014, Sucampo Pharmaceuticals, Inc. and commercialization partners, Takeda
Pharmaceutical Company Limited, Takeda Pharmaceuticals U.S.A., Inc., and Takeda
Pharmaceuticals America, Inc. (collectively, "Takeda"), settled patent infringement litigation
against Par Pharmaceutical, Inc., related to Par's development of a generic version of Sucampo's
constipation drug, Amitiza. On June 2, 2023, Premera Blue Cross, a health care company, sued
Takeda on behalf of itself and similarly situated "end payors." Premera alleges that the
Sucampo/Takeda-Par settlement agreement was an implicit "no-AG [authorized generic]" "pay-
to-delay" or "reverse payment" agreement causing end payors to pay higher prices for brand or
generic Amitiza since 2015, #23-cv-11254-MJJ.[2] The agreement is also the basis for pending

---

[1] This case has been referred by District Judge Joun to the undersigned for full pre-trial
proceedings, including reports and recommendations on dispositive motions. (#23-cv-12918-MJJ,
#17.)

[2] The company that acquired Sucampo in 2018 filed for bankruptcy in 2020 while Par's parent
company filed for bankruptcy in 2022. (#23-cv-12918-MJJ, #1 ¶¶ 25-32.)

"direct purchaser" proposed class, #21-cv-11057-MJJ, and "retailer" actions, #23-cv-13061-MJJ, #24-cv-10223-MJJ.

Premera, an indirect purchaser, cannot bring claims under federal antitrust law because of the Supreme Court's decision in *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977) ("*Illinois Brick*"). It brings antitrust, consumer protection, and unjust enrichment claims under the laws of various states and territories. Judge Joun allowed Takeda's motion to dismiss Premera's first proposed class action complaint on November 20, 2023.[3] Ten days later, Premera filed this second proposed class action complaint, #23-cv-12918-MJJ. Takeda again moves to dismiss. (#38; *see* #39, memorandum.) The parties have had ample opportunity in this action to develop their arguments,[4] and many of the arguments were raised in the first action, so that this was a second opportunity. The court issues its Report and Recommendation on the papers. For the reasons set out below, Takeda's motion to dismiss Premera's second complaint should be ALLOWED in part and DENIED in part.

II. Dismissal of Premera's First Complaint.

The court assumes familiarity with *Premera I*, including Judge Joun's discussion of regulatory context. *Premera I* at 3-4. The court also assumes familiarity with Judge Stearns' December 27, 2022 Memorandum and Order allowing in part and denying in part Takeda's motion to dismiss the direct purchasers' complaint, #21-cv-11057-MJJ, #61; *see also* 2022 WL 17968695.

---

[3] Judge Joun's November 20, 2023 Memorandum of Decision is #23-cv-11254-MJJ, #48; *see also* 2023 WL 9474011. Citations to the Memorandum of Decision will take the form: "*Premera I* at [ECF page number]."

[4] *See* #47, opposition; #54, reply; #59, sur-reply; #65, sur-sur-reply; #73, notice of supplemental authority; #74, response. Unless otherwise noted, citations are to the ECF document number on #23-cv-12918-MJJ, followed by the ECF page number.

In briefing on Takeda's motion to dismiss the first complaint, Premera admitted that it did not specifically allege the identity of any state or territory in which it purchased or reimbursed one of its health plan members for a purchase of brand or generic Amitiza. *Premera I* at 7. However, the allegations regarding Premera's incorporation and principal place of business in Washington and business activity in Alaska plausibly demonstrated Premera's Article III standing to pursue the individual claims in those states. *Id*. Because it could not reasonably be inferred that Premera purchased or reimbursed one of its members for a purchase of Amitiza in any of the other states and territories at issue,[5] the first complaint did not plausibly demonstrate Premera's Article III standing to pursue the individual claims in other states. *Id*. at 8. Judge Joun considered whether Premera adequately stated the individual claims under Washington and Alaska law. It did not.

Judge Joun observed that courts have differed as to whether indirect purchasers may sue under Alaska's consumer protection statute for antitrust violations after *Illinois Brick*. *Premera I* at 9. In *Illinois Brick*, "the Supreme Court 'held that direct purchasers may sue for antitrust violations, but also ruled that indirect purchasers may not sue.'" *Premera I* at 9 (quoting *Apple Inc. v. Pepper*, --- U.S. ---, 139 S.Ct. 1514, 1519 (2019)). The Supreme Court later clarified that federal antitrust law does not preempt state antitrust laws from allowing indirect purchasers to recover damages. *Id*. at 9-10.

Alaska's antitrust statute was amended to partially reject *Illinois Brick*. Only Alaska's attorney general may bring antitrust claims for damages on behalf of indirect purchasers. *Premera I* at 10. Judge Joun joined the majority of federal courts to have addressed the issue and concluded that, as an indirect purchaser, Premera could not bring damages claims for antitrust violations

---

[5] The court refers to "states" although Premera brings claims under District of Columbia and Puerto Rico law.

under Alaska's consumer protection statute because allowing Premera to do so would circumvent the partial indirect purchaser bar. *Id*. at 10-11 (collecting cases).

Washington also partially rejects *Illinois Brick*, barring damages claims for antitrust violations by indirect purchasers under its consumer protection statute. Its attorney general may recover restitution for indirect purchasers. *Premera I* at 12. Premera did not cite authority from Alaska or Washington to support unjust enrichment claims for antitrust violations under these circumstances, and Judge Joun again joined the majority of federal courts to have addressed the issue and concluded that indirect purchasers could not bring unjust enrichment claims under Alaska or Washington law for antitrust violations. Allowing them to do so would subvert the statutory scheme. *Id*. at 12-13 & n.8 (collecting cases).

Judge Joun dismissed the proposed class claims, as well, because Premera did not adequately state the only individual claims as to which it plausibly demonstrated its Article III standing. Premera thus naturally lacked the incentive needed to litigate the proposed class claims. *Premera I* at 13-14.

Judge Joun rejected Premera's request to amend the first complaint. *Premera I* at 14. The individual claims under Alaska and Washington law were dismissed with prejudice; all other claims were dismissed without prejudice. *Id*.

III. <u>Factual Allegations and Legal Claims</u>.[6]

    A. <u>Reverse Payment</u>.

---

[6] Motions to dismiss for the failure to state a claim under Fed. R. Civ. P. 12(b)(6) are generally decided from the face of the complaint, without considering other documents; "[l]imited exceptions to this rule allow a court to consider documents that are incorporated into or attached to the complaint, as well as matters of public record subject to judicial notice." *Cebollero-Bertran v. P.R. Aqueduct and Sewer Auth.*, 4 F.4th 63, 69, n.4 (1st Cir. 2021).

The allegations related to the reverse payment here are identical to the allegations related to the reverse payment in the first complaint. As summarized by Judge Joun,

> The drug Amitiza (lubiprostone) is a chloride-channel activator that the [Food and Drug Administration] has approved for treating several medical conditions relating to constipation. [Doc. No. 1 at ¶¶ 103–05, 119]. Since 2004, Amitiza has been subject to a joint commercialization agreement between Sucampo, the company that developed Amitiza, and Takeda, a more established pharmaceutical conglomerate. [*Id.* at ¶¶ 100, 106–10].
>
> This agreement and its later extension granted Takeda a license to all patents for Amitiza and, since 2014, gave Takeda sole responsibility for marketing and selling the drug in the United States. [*Id.* at ¶¶ 109–11]. In 2012, the FDA accepted as substantially complete an [Abbreviated New Drug Application ("ANDA")] concerning a generic version of Amitiza that the generic manufacturer Par had filed. [*Id.* at ¶¶ 127, 135–36]. Takeda and Sucampo then filed a Hatch-Waxman patent infringement suit against Par, while also submitting a citizen petition to the FDA that sought to block approval of the Par generic. [*Id.* at ¶¶ 140–43].
>
> In September 2014, Takeda, Sucampo, and Par settled the patent infringement suit. [*Id.* at ¶¶ 3–4, 148–49]. Under the settlement terms, Par agreed to delay introducing a generic to the market until January 2021. [*Id.*]. In exchange, a declining royalty structure disincentivized Takeda and Sucampo from competing with Par's generic, and the parties committed to delay competition from other generics. [*Id.* at ¶¶ 149, 157]. In the wake of this settlement, no generic Amitiza came to market until Par's generic did so in January 2021. [*Id.* at ¶ 2]. No other generic competitors entered the market until January 2023. [*Id.*].
>
> End-payor entities like Premera pay for prescription drugs for others, such as their members. [*Id.* at ¶ 198]. Due to the delay in generic Amitiza entering the market, Premera and other end payors have paid higher prices for brand or generic Amitiza since July 17, 2015. [*Id.* at ¶¶ 222–25].

*Premera I* at 5-6.

In the second complaint, as in the first complaint, Premera alleges that Anchen Pharmaceuticals, Inc., which was later acquired by Par, submitted an initial ANDA in February 2010. In August 2010, the FDA published draft guidance for generic Amitiza manufacturers on bioequivalence standards and instructed Anchen to re-run its bioequivalence studies. (#1 ¶¶ 30, 127-128, 135.) Sucampo/Takeda's citizen petition, which was filed in January 2014, requested that

the FDA not approve generic products without additional bioequivalence testing beyond the standards in the 2010 draft guidance. *Id*. ¶¶ 141-142. The FDA denied the petition on July 17, 2015. *Id*. ¶ 183. The FDA reasoned that the theory that the generic product could have a different safety profile from Amitiza was speculative and not supported by any scientific basis. *Id.* The FDA regularly approves generic manufacturers' ANDAs on the same day that it denies brand manufacturers' citizen petitions regarding the ANDAs; thus, Par, the target of the allegedly "baseless" petition, was on track for approval, and would have obtained approval, presumably on July 17, 2015. However, the earlier Sucampo/Takeda-Par settlement agreement eliminated the motivation to pursue approval. *Id*. ¶ 184.

The Par generic would not have infringed any valid Amitiza patents after the expiration of the '858 patent, which was the strongest patent of the seventeen total because it was the only patent that claimed the active pharmaceutical compound of Amitiza. The '858 patent expired in July 2014. (#1 ¶¶ 120-121, 193.) The other sixteen patents, according to Premera, were weak. *Id*. ¶¶ 123-126, 194-197. Nine were not asserted in the Par patent infringement suit and six of those nine were not asserted in the patent infringement suits that Sucampo/Takeda initiated against other generic manufacturers. *Id*. ¶¶ 194-195. From November 2014 to January 2020, Sucampo/Takeda sued four manufacturers for whom the FDA subsequently approved ANDAs and one manufacturer with a pending ANDA. In each of these other patent infringement suits, the consent judgment stipulated to the January 1, 2023 generic entry date. *Id*. ¶¶ 189-191.

B. <u>Fraudulent Concealment</u>.

As in the first complaint, here, Premera alleges fraudulent concealment. Specifically, Premera alleges that Sucampo's October 9, 2014 press release and Securities and Exchange Commission Form 8-K ("press release") concealed the anticompetitive nature of the

6

Sucampo/Takeda-Par settlement agreement by stating that Par had a "non-exclusive" license to market a generic version of Amitiza and would "split" profits with Sucampo and that "[a]dditional" details of the settlement agreement remained confidential.[7] According to Premera, "non-exclusive" created a misimpression because the declining royalty structure disincentivized Sucampo/Takeda from launching its own generic version of Amitiza. "Split" created a misimpression because Sucampo/Takeda's share of the profits would decline with competition in the generic Amitiza market. "Additional" created the misimpression that all important details were disclosed when the confidential declining royalty structure was the most important detail. (#1 ¶¶ 176-179, 231.)

Premera alleges that Sucampo's November 7, 2014 quarterly report to the SEC concealed the anticompetitive nature of the Sucampo/Takeda-Par settlement agreement because it attached a version of the agreement from which the declining royalty structure was redacted but the provisions reserving Sucampo's right to launch or license other generic versions of Amitiza were not redacted. (#1 ¶¶ 180-181, 232.)[8]

The complaint includes no allegations regarding the dissemination of the press release and quarterly report to end payors. Premera does not allege that, in late 2014 or at any time prior to paying for brand or generic Amitiza prescriptions, it received the press release and quarterly report.

---

[7] The press release, "Sucampo Announces Settlement Agreement that Resolves Patent Litigation in U.S. Related to AMITIZA, Company Receives Additional Paragraph IV Notice," is available at https://www.sec.gov/Archives/edgar/data/1365216/000117184314004692/newsrelease.htm (last visited August 20, 2024); *see* #1 at 42, n.22.

[8] The redacted agreement was Exhibit 10.2 to this "Form 10-Q." *See* #1 at 42, n.23. The Form 10-Q itself is available at https://www.sec.gov/Archives/edgar/data/1365216/0001171843 17006456/f10q_110117p.htm (last visited August 20, 2024).

On November 21, 2014, the parties in the Par patent suit, including Takeda, filed a proposed consent judgment. Premera alleges that the proposed consent judgment "misleadingly represented that the [Sucampo/Takeda-Par settlement agreement] would have 'procompetitive' value inuring 'to the benefit of the parties and consumers alike.'" (#1 ¶¶ 182, 233) (citing *Sucampo AG, et al. v. Anchen Pharms., Inc., et al.*, U.S. Dist. Ct. D. Del. #1:13-cv-00202-GMS, #119-1 at 2); *compare* #23-cv-11254-MJJ, #1 ¶¶ 176-182, 230-232. The sentence from which Premera selectively quotes actually identifies the anticipated "procompetitive" value:

> This reasonable final settlement will afford Plaintiffs and Par the procompetitive opportunity to more productively use money and other resources that would have been spent in the continued prosecution and defense of this Patent Litigation, to the benefit of the parties and consumers alike, such as by investing more money in pharmaceutical research and development.

(#1:13-cv-00202-GMS, #119-1 at 2.) The court assumes favorably to Premera that this sentence was "misleading[]."

C. <u>Legal Claims</u>.

Like the first, the second complaint asserts claims against Takeda for Conspiracy and Combination in Restraint of Trade under State Law (Count I), *see* #1 ¶¶ 246-259; Monopolization under State Law (Count II), *see id.* ¶¶ 260-270; Unfair and Deceptive Trade Practices under State Law (Count III), *see id.* ¶¶ 271-280; and Unjust Enrichment under State Law (Count IV), *see id.* ¶¶ 281-295; *compare* #23-cv-11254-MJJ, #1 ¶¶ 245-285.

In the second complaint, the antitrust claims are asserted under the laws of Alabama, Arizona, California, the District of Columbia, Florida, Hawaii, Illinois, Iowa, Kansas, Maine, Maryland, Michigan, Minnesota, Mississippi, Nebraska, Nevada, New Mexico, New York, North Carolina, North Dakota, Oregon, Rhode Island, South Dakota, Tennessee, Utah, Vermont, and Wisconsin. (#1 ¶¶ 257, 268.)

The consumer protection claims are presently asserted under the laws of Arizona, California, Connecticut, the District of Connecticut, Florida, Idaho, Illinois, Maine, Massachusetts, Michigan, Minnesota, Nebraska, Nevada, New Hampshire, New Mexico, Oregon, Pennsylvania, South Dakota, Utah, Vermont, Virginia, West Virginia, and Wisconsin. (#1 ¶ 278.)[9]

The unjust enrichment claims are asserted under the laws of Alabama, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, the District of Columbia, Florida, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Oklahoma, Oregon, Pennsylvania, Puerto Rico, Rhode Island, South Carolina, South Dakota, Tennessee, Utah, Vermont, Virginia, West Virginia, Wisconsin, and Wyoming. (#1 ¶ 283.)[10]

The proposed class is defined identically in the first and second complaints:

All entities that indirectly purchased or paid for some or all of the purchase price of Amitiza and/or AB-rated generic versions of Amitiza in Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, the District of Columbia, Florida, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Missouri, Mississippi, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Oklahoma, Oregon, Pennsylvania, Puerto Rico, Rhode Island, South Carolina, South Dakota, Tennessee, Utah, Vermont, Virginia, Washington, West Virginia, Wisconsin, and Wyoming, from any of the Defendants or any generic manufacturer, or their subsidiaries or affiliates, from July 17, 2015, through and until the anticompetitive effects of Defendants' conduct cease (the "Class Period").

---

[9] From the second complaint, Premera eliminated the Alaska consumer protection claim. *Compare* #23-cv-11254-MJJ, #1 ¶ 270a. In the prior round of briefing, Premera withdrew Kansas and North Carolina consumer protection claims. *Premera I* at 6, n.3. In this round of briefing, Premera withdraws Missouri, New Jersey, New York, and Oklahoma consumer protection claims. (#47 at 35, n.8, 37, n.9.)

[10] Premera eliminated the Alaska and Washington unjust enrichment claims from the second complaint. *Compare* #23-cv-11254-MJJ, #1, ¶ 273.

(#1 ¶ 237); *compare* #23-cv-11254-MJJ, #1 ¶ 236. The proposed class excludes, *inter alia*, "natural person consumers" and "all persons or entities who purchased Amitiza or its AB-rated generic for purposes of resale from any of the Defendants or any generic manufacturer." (#1 ¶¶ 238(a), (d)); *compare* #23-cv-11254-MJJ, #1 ¶ 237(a), (d).

The unjust enrichment claims are asserted both individually and on behalf of the proposed class regardless of the state. *See* #1 ¶ 283 ("Premera and the Class seek unjust enrichment under the laws of…"). The antitrust and consumer protection claims are asserted both individually and on behalf of the proposed class or on behalf of the proposed class only depending on the state. There are mistakes in the complaint, as discussed below. But as corrected, Premera alleges these claims individually and on behalf of the proposed class in those states in which it newly alleges that it paid for brand or generic Amitiza prescriptions and on behalf of the proposed class only in those states in which it still does not allege that it paid for brand or generic Amitiza prescriptions. *See id.* ¶¶ 223, 257, 268, 278.

D. New Factual Allegations.

Premera altered ¶ 9 of the first complaint. Paragraph 9 now provides, in relevant part:

> When Premera purchases prescriptions drugs, such as [brand] Amitiza and generic Amitiza, the vast majority of the transactions are from third-party pharmacies, like CVS, Walgreens, and Rite Aid, where Premera's health plan members have prescriptions filled. Premera incurs substantial costs associated with its members['] transactions at these third-party pharmacies.

(#1 ¶ 9); *contrast* #23-cv-11254-MJJ, #1 ¶ 9.

In ¶ 223 of the second complaint, Premera newly alleges that "since July 17, 2015," it has paid for 6,965 prescriptions of brand and generic Amitiza in 40 states, as set out in Figure 7. Figure 7 neither specifies precise dates of purchase nor differentiates between purchases of brand and generic Amitiza, which would have allowed the court to infer more precise dates.

Premera, an indirect purchaser, does not allege that it purchased Amitiza directly from Takeda. The proposed class members are likewise indirect purchasers. Nor does Premera allege that "third-party pharmacies, like CVS, Walgreens, and Rite Aid" purchased Amitiza directly from Takeda. The complaint includes no allegations regarding any wholesalers that might have purchased Amitiza directly from Takeda.

Figure 7 includes Amitiza prescriptions in Ohio (47) and Texas (366), *see* #1 ¶ 223, states not at issue. It also includes Amitiza prescriptions in Alaska (419) and Washington (4,738), *see id.*, states as to which Premera's individual claims have been dismissed with prejudice.

This table lists the legal claims and adds the prescription data:

|  | Conspiracy and Monopolization (Counts I and II) (#1 ¶¶ 257, 268) | Consumer Protection (Count III) (#1 ¶ 278) | Unjust Enrichment (Count IV) (#1 ¶ 283) | Prescriptions Paid for by Premera since July 17, 2015 (#1 ¶ 223) |
|---|---|---|---|---|
| Alabama | X |  | X | 47 |
| Arizona | X | X | X | 53 |
| Arkansas |  |  | X |  |
| California | X | X | X | 173 |
| Colorado |  |  | X | 30 |
| Connecticut |  | X[11] | X | 22 |
| Delaware |  |  | X |  |
| District of Columbia | X[12] | X | X | 4 |

---

[11] The complaint mistakenly cites "Conn. Gen. Stat. § 6-1-105 *et seq.*," *see* #1 ¶ 278c, an amalgam of Connecticut and Colorado law. It is apparent from Premera's briefing that it is bringing the claims under Conn. Gen. Stat. § 42-110a, *et seq.* (#47 at 35.)

[12] The complaint asserts the District of Columbia antitrust and consumer protection claims on behalf of the proposed class only. (#1 ¶¶ 257d, 268d, 278d.) Premera clarifies that these claims should have been asserted both individually and on behalf of the class, which is consistent with Figure 7. (#47 at 20, n.3.)

| | | | | |
|---|---|---|---|---|
| Florida[13] | X[14] | X | X | 148 |
| Georgia | | | X | 75 |
| Hawaii | X | | X | |
| Idaho | | X | X | 174 |
| Illinois | X | X | X | 35 |
| Indiana | | | X | 13 |
| Iowa | X | | X | 5 |
| Kansas | X | | X | |
| Kentucky | | | X | 53 |
| Louisiana | | | X | 37 |
| Maine | X | X | X | 1 |
| Maryland | X | | X | 28 |
| Massachusetts | | X | X | 10 |
| Michigan | X | X | X | 5 |
| Minnesota | X[15] | X | X | |
| Mississippi | X | | X | 49 |
| Missouri | | | X | |
| Montana | | | X | 1 |
| Nebraska | X | X | X | 8 |
| Nevada | X | X | X | 20 |
| New Hampshire | | X | X | 4 |
| New Jersey | | | X | 15 |
| New Mexico | X | X | X | |
| New York | X | | X | 16 |
| North Carolina | X | | X | 152 |
| North Dakota | X | | X | 3 |
| Oklahoma | | | X | 22 |
| Oregon | X | X | X | 13 |
| Pennsylvania | | X | X | 38 |

---

[13] Premera states that it is pursuing antitrust claims under Florida's consumer protection statute, Fla. Stat. Ann. § 501.201 *et seq.*, *see* #1 ¶¶ 257e, 268e, rather than Florida's antitrust statute, and that Judge Joun did not appreciate this distinction when noting that Premera was not pursuing Florida antitrust claims. (#47 at 30 & n.7); *see Premera I* at 6, n.2.

[14] The complaint does not specify whether the Florida antitrust claims are asserted individually or on behalf of the proposed class, *see* #1 ¶¶ 257e, 268e, but Premera clarifies that they should have been asserted both individually and on behalf of the proposed class, which is consistent with Figure 7, *see* #47 at 20, n.3.

[15] The complaint asserts the Minnesota antitrust and consumer protection claims both individually and on behalf of the proposed class, *see* #1 ¶¶ 257m, 268m, 278k, but Premera clarifies that they should have been asserted only on behalf of the proposed class, which is consistent with Figure 7, *see* #47 at 20, n.3.

| State | | | | |
|---|---|---|---|---|
| Puerto Rico | | | X | |
| Rhode Island | X | | X | |
| South Carolina | | | X | 11 |
| South Dakota | X | X | X | |
| Tennessee | X | | X | 48 |
| Utah | X | X | X | 1 |
| Vermont | X | X | X | |
| Virginia | | X | X | 50 |
| West Virginia | | X[16] | X | 14 |
| Wisconsin | X | X | X | 17 |
| Wyoming | | | X | |

In ¶ 252 of the second complaint, Premera newly alleges:

> During the Class Period, branded Amitiza, manufactured and sold by Takeda, was shipped into each state and was sold to or paid for by Premera *and* the Class.

(#1 ¶ 252) (emphasis supplied). This is not consistent with Figure 7, which does not show, among other things, that Premera paid for any brand or generic Amitiza prescriptions since July 17, 2015 in Arkansas, Delaware, Hawaii, Kansas, Minnesota, Missouri, New Mexico, Puerto Rico, Rhode Island, South Dakota, Vermont, or Wyoming. *Id*. ¶ 223; *contrast id*. ¶¶ 269, 279 ("…Premera *and/or* members of the Class paid…") (emphasis supplied).

IV. <u>Discussion</u>.

    A. <u>Article III Standing</u>.

Takeda's argument that Premera has not plausibly demonstrated Article III standing fails.[17]

The test is familiar. To satisfy the constitutional "case-or-controversy" requirement,

---

[16] Takeda argues that it is unclear from the complaint whether Premera brings this claim under the West Virginia Consumer Credit and Protection Act ("WVCCPA"), W.Va. Code § 46A-1-101, or the West Virginia Unfair Trade Practices Act, W.Va. Code § 33-11-1. (#54 at 18, n.12.) It is not. *See* #1 ¶ 278z ("W.Va. Code § 46A-6-101 *et seq*.").

[17] Takeda asserts a lack of Article III standing but then argues a lack of antitrust standing. (#39 at 24-30, #54 at 11, 12.) This is waiver, but the court is obligated to assure itself of subject matter jurisdiction, which "goes to the fundamental institutional competence of the court and can be raised sua sponte at any time…." *McBee v. Delica Co., Ltd*., 417 F.3d 107, 127 (1st Cir. 2005).

…[A] plaintiff must demonstrate (i) that [it] has suffered or likely will suffer an injury in fact, (ii) that the injury likely was caused or will be caused by the defendant, and (iii) that the injury likely would be redressed by the requested judicial relief.

*Food and Drug Administration v. Alliance for Hippocratic Medicine*, 602 U.S. 367, 380 (2024) (citing, *inter alia*, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992)). "Injury in fact," which includes monetary injury, must be "actual or imminent, not speculative – meaning that the injury must have already occurred or be likely to occur soon." *Id*.

Causation and redressability "are often flip sides of the same coin:" if the defendant's conduct caused the plaintiff's injury, then enjoining the conduct or awarding damages for the conduct typically redresses the injury. *Alliance for Hippocratic Medicine*, 602 U.S. at 380-381 (cleaned up) (citation omitted). The links in the causal chain must not be too speculative or attenuated. *Id*. at 383. Yet proximate causation is not a requirement of Article III standing, which requires only that the plaintiff's injury be "fairly traceable" to the defendant's conduct. *Lexmark Intern., Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134, n.6 (2014); *see Lujan*, 504 U.S. at 560-561 ("the injury has to be 'fairly…trace[able] to the challenged action of the defendant, and not…th[e] result [of] the independent action of some third party not before the court") (quoting *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 41-42 (1976)).

Article III standing "is claim-specific: a plaintiff must have standing to bring each and every claim that [it] asserts." *Katz v. Pershing*, *LLC*, 672 F.3d 64, 71 (1st Cir. 2012). "[A]t the pleading stage, the plaintiff bears the burden of establishing sufficient factual matter to plausibly demonstrate [its] standing to bring the action. Neither conclusory assertions nor unfounded speculation can supply the necessary heft." *Hochendoner v. Genzyme Corp.*, 823 F.3d 724, 731 (1st Cir. 2016).

Particularly for Article III standing purposes (but also for antitrust standing purposes, as discussed below), the court is unpersuaded that it makes any difference that Premera may have paid for the brand and generic prescriptions of Amitiza outside of Washington and Alaska by reimbursing the local Blue plans that paid the pharmacies that filled Premera's members' Amitiza prescriptions.[18] The higher prices would still be "fairly traceable" to Takeda's alleged anticompetitive conduct. The Article III burden is explicitly less stringent than the antitrust standing burden. *Sanger Ins. Agency v. HUB Intern., Ltd.*, 802 F.3d 732, 737, n.5 (5th Cir. 2015) (citing *K.P. v. LeBlanc*, 627 F.3d 115, 123 (5th Cir. 2010) ("Tracing an injury is not the same as seeking its proximate cause")). The court recommends that Premera be found to have plausibly demonstrated Article III standing to pursue the individual claims under Alabama, Arizona, California, Colorado, Connecticut, the District of Columbia, Florida, Georgia, Idaho, Illinois, Indiana, Iowa, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Mississippi, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New York, North Carolina, North Dakota, Oklahoma, Oregon, Pennsylvania, South Carolina, Tennessee, Utah, Virginia, West Virginia, and Wisconsin law. *See In re Asacol Antitrust Litig.*, 907 F.3d 42, 47 (1st Cir. 2018) (union benefit plans "indisputably" had Article III standing to pursue individual antitrust claims against drug manufacturer: "They plausibly allege[d] an injury in the form of lost money fairly

---

[18] Takeda asks the court to take judicial notice of an instruction on Premera's website to "Providers Outside of Washington and Alaska" to "**Sign in to your local Blue plan's website**. They pay the claim on our behalf and have the most current status." https://www.premera.com/wa/provider/outside-washington-alaska/ (last visited August 20, 2024); *see* #39 at 26. Premera alleges that it "paid for" the brand and generic Amitiza prescriptions outside of Washington and Alaska. (#1 ¶ 223.) That allegation is well-pled, and Takeda does not suggest that the court should apply a standard other than the standard for facial attacks on subject matter jurisdiction. (#39 at 23-24.) That standard mirrors the Rule 12(b)(6) standard in that the court takes the complaint's well-pled allegations as true. *Laufer v. Acheson Hotels, LLC*, 50 F.4th 259, 265 (1st Cir. 2022); *see Premera I* at 2.

traceable to an allegedly unlawful supra-competitive price, and [sought] classic redress in the form of a damage award").[19]

However, Premera is pursuing individual unjust enrichment claims under Arkansas, Delaware, Hawaii, Kansas, Minnesota, Missouri, New Mexico, Puerto Rico, Rhode Island, South Dakota, Vermont, and Wyoming law, *see* #1 ¶ 283, notwithstanding that it still does not allege that it paid for brand or generic Amitiza prescriptions there, *see id*. ¶ 223. In accordance with *Premera I*, the court recommends that the individual unjust enrichment claims in those states be dismissed for the failure to plausibly demonstrate Article III standing.

As for Premera's Article III standing to pursue the proposed class claims, including under the laws of those states in which the individual claims are dismissed, the focus is on

> …'the incentives of the named plaintiffs to adequately litigate issues of importance to them.' … This focus is in many respects simply an application to aggregate litigation of the basic Article III requirement that a plaintiff possess 'such a personal stake in the outcome of the controversy as to assure concrete…adverseness.'…

*Asacol*, 907 F.3d at 48-49 (first quoting *Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp*., 632 F.3d 762, 770 (1st Cir. 2011); then quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962)).

Article III does not require that the claims of the class representative be in all respects identical to the claims of each class member. *Asacol*, 907 F.3d at 49. A contrary rule confuses the requirements of Article III and Fed. R. Civ. P. 23, governing the availability of class actions, and renders Rule 23's commonality and predominance requirements "superfluous…because any case

---

[19] "Nor does the standing requirement of Article III erect any impediment to [Premera's] ability to litigate as class representative[] materially identical claims by [proposed class members] under the same laws under which [Premera's] claims arise." *Asacol*, 907 F.3d at 47.

that survived such a strict Article III analysis would by definition present only common issues."

*Id*. (citation omitted).

> So the question of [Article III] standing [in the class context] is not: Are there differences between the claims of the class members and those of the class representative? Rather, the pertinent question is: Are the differences that do exist the type that leave the class representative with an insufficient personal stake in the adjudication of the class members' claims?

*Id*.

The situation presented in *Premera I* is not presented here. As discussed below, some of the individual claims should proceed. And, at this preliminary stage, Premera should be found to have a sufficient personal stake in the adjudication of the proposed class members' claims. All of the claims are based on Takeda's alleged anticompetitive conduct and Takeda has not drawn the court's attention to differences in them that would leave Premera with an insufficient personal stake. Premera, of course, must still satisfy Rule 23's more stringent requirements at a later stage.

B. <u>Antitrust Standing</u>.

The court also recommends that Premera be found to have plausibly demonstrated antitrust standing.[20] The antitrust standing doctrine is intended "to 'avoid overdeterrence' and to 'ensure that suits inapposite to the goals of the antitrust laws are not litigated and that persons operating in the market do not restrict procompetitive behavior because of a fear of antitrust liability.'"

---

[20] The court assumes without deciding that federal antitrust standing law applies to the state claims. That is Takeda's position. (#39 at 27-28 & n.6, *id*. at 29-30, #54 at 15-16); *but see* #47 at 23-24 (taking contrary position); *Yuen v. IDEXX Labs., Inc*., --- F. Supp. 3d ---, #2:22-cv-00392-JDL, 2024 WL 83351, at *11-12 (D. Me. Jan. 8, 2024) (noting that courts "have refrained from making sweeping conclusions about the applicability of the *Associated General* [*Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519 (1983) ("*AGC*"),] factors to state law claims" and denying so much of the motion to dismiss that challenged state antitrust and consumer protection claims, without prejudice to a renewed motion to dismiss, which was filed on February 7, 2024, *see* U.S. Dist. Ct. for the Dist. of Maine #2:22-cv-00392-LEW, #106, and remains pending, as of August 20, 2024).

*Vázquez-Ramos v. Triple-S Salud, Inc.*, 55 F.4th 286, 293 (1st Cir. 2022) (quoting *Serpa Corp. v. McWane, Inc.*, 199 F.3d 6, 10 (1st Cir. 1999)). Courts determine whether the plaintiff is the proper party to bring the federal antitrust lawsuit by applying the *AGC* factors, *see* 459 U.S. at 537-545, assessing:

> (1) the causal connection between the alleged antitrust violation and harm to the plaintiff; (2) an improper motive; (3) the nature of the plaintiff's alleged injury and whether the injury was of a type that Congress sought to redress with the antitrust laws ("antitrust injury"); (4) the directness with which the alleged market restraint caused the injury; (5) the speculative nature of the damages; and (6) the risk of duplicative recovery or complex apportionment of damages.

*Vázquez-Ramos*, 55 F.4th at 293 (quoting *RSA Media Inc., v. AK Media Grp., Inc.*, 260 F.3d 10, 14 (1st Cir. 2001)); *see Serpa*, 199 F.3d at 10.

Although it balances all *AGC* factors, the First Circuit emphasizes the causation requirements. *RSA Media*, 260 F.3d at 14. The first and fourth factors expressly require causation between the antitrust violation and alleged harm. *Id*. The third factor does not, but "antitrust injury" is defined "as 'injury of the type the antitrust laws were intended to prevent and that *flows from that which makes the defendants' acts unlawful*.'" *Id*. (emphasis in original) (quoting *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977)). Accordingly, the third factor "requires a proper plaintiff 'to prove more than injury causally linked to an illegal presence in the market.'… The plaintiff must prove that the injury is 'the type of loss that the claimed violations…would be likely to cause.'" *Id*. (quoting *Brunswick*, 429 U.S. at 489) (quoting *Zenith Radio Corp. v. Hazeltine Research*, 395 U.S. 100, 125 (1969))). "Competitors and consumers in the market where trade is allegedly restrained are presumptively the proper plaintiffs to allege antitrust injury." *Serpa*, 199 F.3d at 10-11 (citing *SAS of P.R., Inc. v. P.R. Tel. Co.*, 48 F.3d 39, 45 (1st Cir. 1995) (supplier whose customer in the course of its own antitrust violation allegedly breached its agreement with supplier was not suing as competitor or consumer in relevant market)).

The Rule 12(b)(6) standard applies to motions to dismiss for lack of antitrust standing. *Yuen*, 2024 WL 83351, at *3. The court accepts as true all well-pleaded allegations and draws all reasonable inferences in the plaintiff's favor. *Id*. "[T]he plaintiff need not demonstrate that [it] is likely to prevail, but [its] claim must suggest more than a sheer possibility that the defendant has acted unlawfully." *Id*. (cleaned up) (citations omitted); *see generally Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).

As a threshold matter, Premera plausibly alleges an improper motive. *See* #1 ¶ 218. Takeda does not argue otherwise.

Nor does Takeda argue that the payment of supra-competitive prices, *see* #1 ¶¶ 222, 224, is not "injury…of a type that Congress sought to redress…." It plainly is. *See In re New Motor Vehicles Canadian Export Antitrust Litig.*, 522 F.3d 6, 13 (1st Cir. 2008) ("no doubt that…consumers paying artificially inflated prices due to antitrust violations…are antitrust injuries") (citing *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979)); *see also AGC*, 459 U.S. at 530 ("…Congress was primarily interested in creating an effective remedy for consumers who were forced to pay excessive prices by giant trusts and combinations that dominated certain interstate markets").

The court is not persuaded by Takeda's argument, *see* #54 at 15, #65 at 2-3, that the local Blue plans could sue for the same brand or generic Amitiza purchases, resulting in duplicative recovery. *See Vázquez-Ramos*, 55 F.4th at 293 (at the motion to dismiss stage, deeming "speculative" the prospect that the patients could sue resulting in recovery duplicative of the urologists' and urology practices' recovery related to the allegedly anticompetitive exclusive dealing agreements).

19

The presence of direct purchasers and retailers is not dispositive of end-payor antitrust standing. The question is whether the plaintiff "was an entity most motivated by self-interest, not *the* entity most motivated by self-interest." *See In re DDAVP Direct Purchaser Antitrust Litig.*, 585 F.3d 677, 688 (2d Cir. 2009) (emphasis in original) (citation omitted) (the presence of competitors was not dispositive). Even if the direct purchasers or retailers may be most motivated, the end payors "are also significantly motivated due to their 'natural economic self-interest' in paying the lowest price possible." *See id.* at 689 (quoting *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 444 (2d Cir. 2005)); *see also In re Propranolol Antitrust Litig.*, 249 F. Supp. 3d 712, 725 (S.D. N.Y. 2017) (end payors were also significantly motivated due in part to this natural economic self-interest).

Regarding the pending direct purchaser proposed class and retailer actions, in *Illinois Brick* repealer states at least, "duplicative recovery is a necessary consequence that flows from indirect purchaser recovery and no bar against [antitrust] standing." *Propranolol,* 249 F. Supp. 3d at 726 (cleaned up) (quoting *In re Dynamic Random Access Memory (Dram) Antitrust Litig.*, 516 F. Supp. 2d 1072, 1093 (N.D. Cal. 2007) (the states that have repealed *Illinois Brick* have made the policy decision that duplicative recovery is permissible)).

The court is not persuaded by Takeda's argument that the proffered involvement of the local Blue plans "introduces significant complexity in an already complex matter…." (#54 at 14.) The question is whether the claim "'…rests at bottom on some abstract conception or speculative measure of harm.'" *AGC*, 459 U.S. at 543 (quoting *Blue Shield of Virginia v. McCready*, 457 U.S. 465, 475, n.11 (1982)). That calculating damages may prove difficult does not mean that the claim rests on an abstract conception or a speculative measure of harm nor, in any event, is this "'…an *independent* basis'" for dismissal if the other *AGC* factors are satisfied. *Dale v. Deutsche Telekom*

*AG*, #1:22-cv-03189, 2023 WL 7220054, at *14 (N.D. Ill. Nov. 2, 2023) (emphasis in original) (quoting *Lexmark*, 572 U.S. at 135); *cf. DDAVP*, 585 F.3d at 689 ("It may be difficult to account precisely for the likely effects of generic competition, but we have little doubt that those effects can be sufficiently estimated and measured here…. This is especially so when '[t]he most elementary conceptions of justice and public policy require that the wrongdoer shall bear the risk of the uncertainty which [its] own wrong has created'") (quoting *Bigelow v. RKO Radio Pictures*, 327 U.S. 251, 265 (1946)).

Courts routinely find the allegation that end payors paid higher prices because of the prescription drug manufacturers' alleged anticompetitive conduct sufficient at the motion to dismiss stage. *See, e.g.*, *In re Generic Pharms. Pricing Antitrust Litig.*, 338 F. Supp. 3d 404, 457-458 (E.D. Pa. 2018); *Propranolol*, 249 F. Supp. 3d at 725; *In re Suboxone (Buprenorphine Hydrochloride and Naloxone) Antitrust Litig.*, 64 F. Supp. 3d 665, 698 (E.D. Pa. 2014); *In re K-Dur Antitrust Litig.*, 338 F. Supp. 2d 517, 542-543 (D. N.J. 2004). Takeda, in contrast, cites no case finding such allegations insufficient merely because the end payors reimbursed the local health plans that paid the pharmacies that filled the end payors' members' prescriptions.[21]

_____

[21] Takeda relies heavily on *In re Aftermarket Auto. Lighting Prods. Antitrust Litig.*, #09 MDL 2007-GW(PJWx), 2009 WL 9502003, at *5 (C.D.Cal. 6, 2009). (#39 at 26, #54 at 14.) There, the two individual plaintiffs, a sole proprietorship and a corporation, merely alleged that they "'indirectly purchased autolight products in the United States from one or more of the Defendants during the class period,'" an allegation that was "consistent with" the plaintiffs being market participants but from which it was purportedly "impossible" to tell whether they were in fact market participants. *Aftermarket*, 2009 WL 9502003, at *5 (record citation omitted). Takeda does not identify the other market Premera would have been participating in by reimbursing the local Blue plans. *See also Breiding v. Eversource Energy*, 344 F. Supp. 3d 433, 454 (D. Mass. 2018) (plaintiffs were retail electricity consumers alleging restraint of natural gas market).

C. Failure to Plead a Reverse Payment.

Takeda "incorporates by reference and preserves" the arguments raised in its motion to dismiss the direct purchasers' complaint. (#39 at 30.) Judge Stearns rejected Takeda's argument that the direct purchasers failed to plead a reverse payment, ruling that dismissal was "premature and potentially unfounded." (#21-cv-11057-MJJ, #61 at 11.) Takeda concedes that Premera alleges "essentially" the same facts and reverse-payment theories as the direct purchasers. (#39 at 30.) It does not develop an argument for reconsideration of Judge Stearns' ruling.

D. "Blunderbuss" Complaint.

Takeda moves for dismissal under Fed. R. Civ. P. 8(a)(2) because in essence, Premera lists the state laws without matching the facts to the elements. (#39 at 31, #54 at 17-18, #277.) Some judges have accepted the Rule 8 argument; others, including Judge Gorton recently, have rejected it. *Contrast*, *e.g.*, *In re Revlimid & Thalomid Purchaser Antitrust Litig.*, #CV 19-7532 (ES) (MAH), 2024 WL 2861865, at *109-112 (D. N.J. June 6, 2024) (accepting) *with*, *e.g.*, *Iron Workers Dist. Council of N.E. Health and Welfare Fund v. Teva Pharmaceuticals, Inc.*, --- F. Supp. 3d ----, #23-cv-11131-NMG, 2024 WL 2025572, at *8, *10 (D. Mass. May 7, 2024) (rejecting); *Blue Cross and Blue Shield of Vt. v. Teva Pharm. Indus., Ltd.*, --- F. Supp. 3d ---, #5:22-cv-159, 2024 WL 323775, at *43-44 (D. Vt. Jan. 22, 2024) ("*BCBSVT*") (rejecting). This court rejects it.

"Federal pleading rules call for 'a short and plain statement of the claim showing that the pleader is entitled to relief,'…; they do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014) (per curiam) (quoting Fed. R. Civ. P. 8(a)(2)); *see Snyder v. Collura*, 812 F.3d 46, 50 (1st Cir. 2016) (complaint must "plead facts and not necessarily the specific names of the legal theories and causes of action fairly raised by these facts") (citing *Morales-Vallellanes v.*

*Potter*, 339 F.3d 9, 14 (1st Cir. 2003) ("'…[A] complaint sufficiently raises a claim even if it points to no legal theory or even if it points to the wrong legal theory…'") (quoting *Tolle v. Carroll Touch, Inc*., 977 F.2d 1129, 1134 (7th Cir. 1992)). To satisfy Rule 8(a)(2), a complaint does not have to plead law; neither does it have to match facts to the elements. *Deslandes v. McDonald's USA, LLC*, 81 F.4th 699, 705 (7th Cir. 2023). The court agrees with Judge Gorton that it is not only unnecessary but impractical to require more allegations tailored to each of the myriad state laws. *Iron Workers*, 2024 WL 2025572, at *10.

  E. <u>Antitrust Claims</u>.

    1. <u>Indirect purchaser bar (Florida, Illinois, Maryland)</u>.

      a. <u>Florida</u>.

  The court declines to recommend dismissal of the Florida antitrust claims, which Premera brings under the state's Deceptive and Unfair Trade Practice Act ("FDUTPA"), Fla. Stat. § 501.201 *et seq.* (#1 ¶¶ 257e, 268e.) Courts have rejected challenges to antitrust claims under *Illinois Brick* when the indirect purchasers bring them under the FDUTPA. *In re Seroquel XR (Extended Release Quetiapine Fumarate) Antitrust Litig.*, #20-1076-CFC, 2022 WL 2438934, at *17 (D. Del. July 5, 2022) (citing *Mack v. Bristol-Myers Squibb Co*., 673 So.2d 100, 110-111 (Fla. Dist. Ct. App. 1996) ("the Florida DTPA clearly expresses the legislative policy to authorize consumers (that is, indirect purchasers) to bring actions under the Florida DTPA for price-fixing conduct"); *Generic*, 368 F. Supp. 3d at 840 & n.114 (citing *In re Fla. Microsoft Antitrust Litig*., #99-27340, 2002 WL 31423620, at *2-3 (Fla. Cir. Ct. Aug. 26, 2002)); *see also In re Broiler Chicken Antitrust Litig.*, 290 F. Supp. 3d 772, 819-820 (N.D. Ill. 2017). In reply, Takeda does not address these cases. (#54 at 20-21.)

b. <u>Illinois</u>.

Illinois's Antitrust Act ("IAA") provides that

> … no person shall be authorized to maintain a class action in any court of this State for indirect purchasers asserting claims under this Act, with the sole exception of this State's Attorney General, who may maintain an action parens patriae as provided in this subsection.

740 Ill. Comp. Stat. § 10/7(2).

Premera argues that § 10/7(2) only applies "in any court of [Illinois]" and pursuant to *Shady Grove Orthopedic Assoc. v. Allstate Ins*., 559 U.S. 393 (2010), Fed. R. Civ. P. 23 governs availability of class actions in federal court. (#47 at 31-32.) Judges in this circuit repeatedly have rejected the *Shady Grove* argument. *In re Nexium (Esomeprazole) Antitrust Litig.*, 968 F. Supp. 2d 367, 408-409 (D. Mass. 2013) (unlike the New York law at issue in *Shady Grove*, § 10/7(2) does not appear in a generally applicable procedural law, and a holding that Rule 23 trumps § 10/7(2) "would be 'an application of a federal rule that effectively abridges, enlarges, or modifies a state-created right or remedy'") (quoting *Shady Grove*, 559 U.S. at 422 (Stevens, J., concurring in part and concurring in judgment)); *see In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, #14-md-02503-DJC, 2015 WL 5458570, at *16-17 (D. Mass. Sept. 16, 2015) (following *Nexium*); *see also In re Loestrin 24 FE Antitrust Litig.*, 410 F. Supp. 3d 352, 372 (D. R.I. 2019) (following *Nexium* and *Solodyn*). Judges in other circuits have accepted the *Shady Grove* argument. *See BCBSVT*, 2024 WL 323775 at *31 & nn. 31, 32 (collecting cases).

Premera urges the court to follow the out-of-circuit authority without explaining what the intra-circuit authority got wrong about *Shady Grove*. The court declines to depart from the intra-

circuit authority.[22] The court recommends dismissal of the Illinois antitrust claim on behalf of the proposed class.

### c. Maryland.

Effective October 1, 2017, Maryland's antitrust statute was amended to permit non-governmental indirect purchaser claims. *See* Md. Com., Com. Law § 11-209(b)(2)(ii) (eff. until Sept. 30, 2017); Md. Com., Com. Law § 11-209(b)(2)(ii) (eff. Oct. 1, 2017). At least two federal courts have declined to find that the amendment applies retroactively, noting the absence of an expression of legislative intent that the amendment apply retroactivity and reasoning that the amendment created a substantive right for non-governmental indirect purchasers. *Seroquel*, 2022 WL 2438934, at *19 (citing *In re Hard Disk Drive Suspension Assemblies Antitrust Litig.*, #19-md-02918-MMC, 2021 WL 4306018, at *7 (N.D. Cal. Sept. 22, 2021)).

Premera relies on *In re Packaged Seafood Prods. Antitrust Litig.*, 242 F. Supp. 3d 1033 (S.D. Cal. 2017), *see* #59 at 11, n.5, but that court was interpreting Oregon's antitrust statute and relied in part on circumstantial evidence of legislative intent. *Id.* at 1071-1072 (legislative history of initial passage of statute revealed intent to make statute apply prospectively and no indication of same intent as to more recent amendment). Premera points to no such circumstantial evidence.

---

[22] Takeda does not squarely address Premera's text-based argument, which has persuaded some courts. *See, e.g.*, *BCBSVT*, 2024 WL 323775, at *31; *In re Vascepa Antitrust Litig.*, #21-12061 (ZNQ) (TJB), 2023 WL 2182046, at *5, n.4 (D. N.J. Feb. 23, 2023). But the argument has not persuaded all courts, and it does not persuade this court to depart from intra-circuit authority. *See In re Wellbutrin XL Antitrust Litig.*, 756 F. Supp. 2d 670, 676 (E.D. Pa. 2010) (Illinois legislature created substantive right in terms of courts in the state, as well, in that a person injured by a violation 740 Ill. Comp. Stat. § 10/3, may maintain an action "in the Circuit Court," *see* § 10/7(2), and "[i]t would be inconsistent to read these provisions together and conclude that the substantive right is intended to be enforceable in courts outside of Illinois, but not the accompanying restrictions").

To the extent they seek damages for non-governmental indirect purchases before October 1, 2017, the Maryland antitrust claims should be dismissed.

### 2. Citizenship or residency (Utah).

The Utah Antitrust Act ("UAA") provides that "[a] person who is a citizen of this state or a resident of this state…may bring an action…." Utah Code § 76-10-3109(1)(a). The majority of courts have held that UAA claims must be dismissed if the only named plaintiffs do not allege that they are citizens or residents of Utah. *BCBSVT*, 2024 WL 323775, at *34-35 (citing, *inter alia*, *Miami Prods. & Chem. Co. v. Olin Corp.*, 546 F. Supp. 3d 223, 247 (W.D. N.Y. 2021) (citing, *inter alia*, *In re Effexor Antitrust Litig.*, 357 F. Supp. 3d 363, 393 (D. N.J. 2018)); *see also Nexium*, 968 F. Supp. 2d at 410. A minority of courts have held that UAA claims need not be dismissed because members of the putative class presumably include citizens and residents of Utah. *BCBSVT*, 2024 WL 323775, at *34-35 (citing, *inter alia*, *Generic*, 368 F. Supp. 3d at 838 & n.106 (citing, *inter alia*, *In re Liquid Aluminum Sulfate Antitrust Litig.*, #16-md-2687 (JLL), 2017 WL 3131977, at *28 (D. N.J. July 20, 2017)).[23] The majority position is the more persuasive one. "…[A] member of a putative class is not a party to a lawsuit…, and the plain language of the UAA states that a Utah citizen or resident must 'bring' the action,…not merely be benefited thereby." *Miami Prods.*, 546 F. Supp. 3d at 247 (citations omitted). The court recommends that the Utah antitrust claims be dismissed.

### 3. Intrastate conduct or effects (Alabama, District of Columbia, Mississippi, Tennessee, Wisconsin).

#### a. Alabama.

---

[23] *Generic* and *Liquid Aluminum*, like Premera in reply, *see* #59 at 12, relies on dicta in *In re Asacol Antitrust Litig.*, #15-cv-12730-DJC, 2016 WL 4083333, at *13, *14-16 (D. Mass. July 20, 2016) (dismissing Utah antitrust claim on other grounds).

The Alabama Supreme Court has held that Ala. Code § 6-5-60

> does not provide a cause of action for damages allegedly resulting from an agreement to control the price of goods shipped in interstate commerce. … [T]hese statutes regulate monopolistic activities that occur 'within this state' – within the geographic boundaries of this state – even if such activities fall within the scope of the Commerce Clause ….

*Abbott Labs. v. Durrett*, 746 So.2d 316, 339 (Ala. 1999) (per curiam). Premera argues that allegations of "nationwide antitrust violations, the antitrust impact of which was felt within each state" suffice. (#47 at 33) (quoting *Loestrin*, 410 F. Supp. 3d at 375). But the cases that it cites applying this majority position were not interpreting Alabama law, *see id*.,[24] and courts have singled out Alabama law, because of *Abbott Labs*. *See Jones v. Varsity Brands, LLC*, 618 F. Supp. 3d 725, 762 (W.D. Tenn. 2022); *see also Propranolol*, 249 F. Supp. 3d at 728-729; *accord In re Dealer Mgmt. Sys. Antitrust Litig.*, 362 F. Supp. 3d 510, 550 (N.D. Ill. 2019). Premera does not allege monopolistic activities that occurred within the geographic boundaries of Alabama, so the court recommends dismissal of these antitrust claims.

### b. District of Columbia, Tennessee, Wisconsin.

The majority position has been applied to District of Columbia, Mississippi, Tennessee, and Wisconsin antitrust claims. *BCBSVT*, 2024 WL 323775, at *34; *see also Loestrin*, 410 F. Supp. 3d at 375 (District of Columbia, Mississippi, Tennessee); *Solodyn*, 2015 WL 5458570, at *16 (District of Columbia, Mississippi). Premera generally alleges "substantial effects" on intrastate commerce because retailers within "each state" were foreclosed from offering generic Amitiza to end payors. (#1 ¶ 254.) It specifically alleges that it paid for brand or generic Amitiza in the District of Columbia, Mississippi, Tennessee, and Wisconsin. *Id*. ¶ 223.

---

[24] *Loestrin,* 410 F. Supp. 3d at 375; *Solodyn*, 2015 WL 5458570, at *16; *Generic*, 368 F. Supp. 3d at 835-836; *In re Digital Music Antitrust Litig*., 812 F. Supp. 2d 390, 407-408 (S.D. N.Y. 2011).

Regarding the District of Columbia, the one case Takeda cites is distinguishable and Takeda makes no effort to compare it. (#39 at 36, #54 at 20-21.)[25] This is not compelling argument.

Wisconsin's antitrust act applies where "the conduct complained of 'substantially affects' the people of Wisconsin and has impacts in this state, even if the illegal activity resulting in those impacts occurred predominantly or exclusively outside this state." *Olstad v. Microsoft Corp*., 700 N.W.2d 139, 158 (Wis. 2005) (citation omitted); *see Meyers v. Bayer AG, Bayer Corp.*, 735 N.W.2d 448, 461 (Wis. 2007) (impacts need not be "distinguishable from or disproportionate of [] impacts on other states"). The court agrees with Premera that Takeda's reliance on the number of Wisconsin prescriptions is misplaced. (#47 at 34, #59 at 11-12); *see* #39 at 36-37, #54 at 21. It may reasonably be inferred that Takeda's alleged anticompetitive conduct substantially affected the people of Wisconsin. Lubiprostone is approved by the FDA to treat three constipation-related medical conditions and annually, United States purchasers spend hundreds of millions of dollars on Amitiza. (#1 ¶¶ 105, 163.)

Similarly, "[t]he proper standard for determining whether a case falls within the scope of [Tennessee's antitrust act] is a 'substantial effects' standard," under which "courts must decide whether anticompetitive conduct affects Tennessee trade or commerce to a substantial degree." *Freeman Indus., LLC v. Eastman Chem. Co*., 172 S.W.3d 512, 523 (Tenn. 2005). "[T]he test is pragmatic, turning upon the particular facts of the case," and "does not involve 'mathematical nicety.'" *Id*. (quoting *Anesthesia Advantage, Inc. v. Metz Grp*., 912 F.2d 397, 401 (10th Cir. 1990)).

---

[25] *Contrast In re Cast Iron Soil Pipe And Fittings Antitrust Litig.,* #1:14-md-2508, 2015 WL 5166014, at *26 (E.D. Tenn. June 24, 2015) ("The Indirect Plaintiffs have not alleged any facts specific to the District of Columbia and fail to address how Defendants' actions have in any way affected intrastate commerce in the District of Columbia").

The same allegations that support the District of Columbia and Wisconsin antitrust claims support the Tennessee antitrust claims. *See*, *e.g.*, *Jones v. Varsity Brands, LLC*, #2:20-cv-02892-SHL-tmp, 2023 WL 5662590, at *12 (W.D. Tenn. Aug. 31, 2023) ("…the named Indirect Purchasers' allegation of paying for Varsity Cheer Apparel in Tennessee and of generally being overcharged for their purchases because of Defendants' scheme creates an inference sufficient to plausibly conclude that discovery will reveal evidence of a substantial effect on Tennessee's economy…"); *In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143, 166, 167 (E.D. Pa. 2009) ("…the plaintiffs allege overcharges on a substantial amount of Wellbutrin XL across the United States, including Tennessee, and the Court will not dismiss the plaintiffs' Tenesee claims at this time for failure to allege the specific extent of any impact on the Tennessee economy;" as to Wisconsin, similar).

### c. Mississippi.

Mississippi antitrust claims, as noted, have been treated similarly to District of Columbia, Tennessee, and Wisconsin claims, including by judges in this circuit. *Loestrin*, 410 F. Supp. 3d at 375; *Solodyn*, 2015 WL 5458570, at *16. However, Judge Gorton recently dismissed a claim, reasoning that the Mississippi antitrust act required at least some anticompetitive conduct by the drug manufacturers that was "wholly intrastate," and the union funds did not allege any wholly intrastate anticompetitive conduct by the drug manufacturers. *Iron Workers*, 2024 WL 2025572, at *9 (quoting *In re Keurig Green Mtn. Single-Serve Coffee Antitrust Litig.*, 383 F. Supp. 3d 187, 267 (S.D. N.Y. 2019)).

Recent binding state precedent suggests that Premera's allegations do not suffice. Takeda consists of a Japanese corporation with a principal place of business there and Delaware corporations with principal places of business in Massachusetts. (#1 ¶¶ 9, 12, 15.) Premera does not allege that Takeda sold Amitiza to consumers in Mississippi. Nor does it allege that Takeda

sold Amitiza to wholesalers in Mississippi. It does allege that retailers in Mississippi were foreclosed from offering cheaper generic Amitiza to end payors in Missisippi, *see* #1 ¶ 254, but it does not allege that Takeda sold Amitiza to retailers, as opposed to wholesalers. *Compare State ex rel. Fitch v. Yazaki N.A., Inc*., 294 So.3d 1178, 1188-1190 (Miss. 2020) (affirming dismissal of complaint that did not allege that defendant sold automative wire harness systems ("AWHS") in Mississippi or that any auto manufacturers, suppliers, or distributors were in Mississippi; allegation that "defendants 'manufactured, marketed, and/or sold [AWHS] that were purchased, directly or indirectly, throughout the State of Mississippi after they became part of interstate and intrastate commerce[']" was insufficient to satisfy requirement of a "'wholly intrastate' transaction[] by the defendants") (applying *Standard Oil Co. of Ky. v. State*,  65 So. 468, 471 (Miss. 1914), *overruled in part on other grounds by Mladinich v. Kohn*, 164 So.3d 785 (Miss. 1964)).

  F. Consumer Protection Claims.

    1. Indirect purchaser bar (Connecticut, Illinois, Massachusetts, Virginia).

      a. Connecticut.

In 2002, the Connecticut Supreme Court held that the plaintiff, who had purchased a computer from a retailer on which a Microsoft product was pre-installed, could not bring antitrust claims under either the state's Antitrust Act, Conn. Gen. Stat. § 35-24, *et seq.*, or its Unfair Trade Practices Act ("CUTPA"), *see* Conn. Gen. Stat., § 42-110a, *et seq*., against Microsoft. *Vacco v. Microsoft Corp.*, 793 A.2d 1048, 1063, 1067 (Conn. 2002). On the CUTPA claim, the trial court reasoned that it could not depart from *Illinois Brick*. *Id*. at 1063. The plaintiff argued that the trial court's reasoning conflicted with CUTPA's remedial purpose and imposed a privity requirement that the legislature had previously removed from the statutory scheme. *Id*. The Connecticut

Supreme Court rejected the argument that the removal of the privity requirement compelled a conclusion that the plaintiff, as an indirect purchaser, had standing to pursue a CUTPA-antitrust claim. *Id*. at 1064. Notwithstanding the broad language and remedial purpose of CUTPA, Connecticut courts have applied traditional common-law principles of remoteness and proximate causation, *see id*. at 1065, specifically a three-part test resting on considerations "similar" to those on which *Illinois Brick* rested, *see id*. at 1066:

> First, the more indirect an injury is, the more difficult it becomes to determine the amount of the plaintiff's damages attributable to the wrongdoing as opposed to other, independent factors. Second, recognizing claims by the indirectly injured would require courts to adopt complicated rules apportioning damages among plaintiffs removed at different levels of injury from the violative acts, in order to avoid the risk of multiple recoveries. Third, struggling with the first two problems is unnecessary when there are directly injured parties who can remedy the harm without these attendant problems.

*Id*. (cleaned up) (citation omitted).

Applying the three-part test, the Connecticut Supreme Court found that the plaintiff did not have standing to pursue a CUTPA-antitrust claim. There were numerous links in the distribution chain, from manufacturer, to retailer, to plaintiff. *Id*. at 1066-1067. The second and third factors also counseled against a finding that the plaintiff had standing. *Id*. at 1067 (allowing the plaintiff to recover damages would require adoption of complicated apportionment rules; the damages suffered by the manufacturers and retailers were more closely related to Microsoft's alleged anticompetitive conduct).

Effective July 10, 2017, however, Connecticut enacted an *Illinois Brick* repealer statute. *See* Conn. Gen. Stat. § 35-46a(1) (eff. July 10, 2017 to Sept. 30, 2018). Presumably because that statute has not been applied retroactively, Premera does not bring a Connecticut antitrust claim. *See Spinner Consulting LLC v. Stone Point Capital, LLC*, 623 B.R. 671, 678 (D. Conn. 2020) (refusing to apply the statute retroactively).

31

Takeda argues that Connecticut's *Illinois Brick* repealer is limited to the antitrust statute, and so much of *Vacco* that addresses CUTPA standing remains good law. (#39 at 38, n.9.) Premera admittedly does not address this issue; nevertheless, the court is not inclined to recommend dismissal of the CUTPA-antitrust claims, *in toto*. The court has already found that Premera plausibly demonstrated antitrust standing, and the three-part test rests on similar considerations.

Takeda itself cites *In re Niaspan Antitrust Litig.*, 42 F. Supp. 3d 735 (E.D. Pa. 2014). (#39 at 37-38.) That case was decided before Connecticut's *Illinois Brick* repealer statute was enacted (and before Maryland's antitrust statute was amended), but after *Illinois Bricker* repealer statutes were enacted in Oregon and Rhode Island. The court declined to dismiss the Oregon and Rhode Island unjust enrichment claims, reasoning that indirect purchaser claims were no longer contrary to public policy. *Id.* at 765; *see Loestrin*, 410 F. Supp. 3d at 381; *Solodyn*, 2015 WL 5458570, at *17; *but see Hard Disk*, 2021 WL 4306018, at *29 (dismissing Maryland unjust enrichment claim as contrary to "then-existing" public policy). Takeda does not adequately address this issue. The court does not recommend dismissal of the Connecticut consumer protection claims to the extent that they seek damages after July 10, 2017.

### b. Illinois.

For the same reason that it recommends dismissal of the Illinois antitrust claim on behalf of the proposed class, the court recommends dismissal of the Illinois consumer protection claim on behalf of the proposed class. *Loestrin*, 410 F. Supp. 3d at 373 ("…the EPPs do not have standing to maintain what is in essence an antitrust claim by another name under the Illinois Consumer Fraud and Deceptive Business Practices Act" ("ICFA")) (citing, *inter alia*, *Solodyn*, 2015 WL 5458570, at *16-17); *see also In re Flonase Antitrust Litig.*, 692 F. Supp. 2d 524, 539 (E.D. Pa. 2010) ("Because the indirect purchaser class action claims in this case would be precluded under

[740 Ill. Comp. Stat. § 10/7(2)], they cannot be brought under the ICFA instead; to allow otherwise would constitute an end run around the Illinois legislature's determination").

c. <u>Massachusetts</u>.

Mass. Gen. Laws ch. 93A, §§ 9 and 11, have been construed as "binary," with § 9 conferring standing on consumers ("other than a person entitled to bring an action under" § 11, *see* Mass. Gen. Laws ch. 93A, § 9), and § 11 conferring standing on businesses (any person "who engages in the conduct of any trade or commerce," *see* Mass. Gen. Laws ch. 93A, § 11). *Loestrin*, 410 F. Supp. 3d at 373. *Illinois Brick's* indirect purchaser bar applies to the Commonwealth's antitrust statute and Mass. Gen. Laws. ch. 93A, § 11, but not Mass. Gen. Laws ch. 93A, § 9. *Loestrin*, 410 F. Supp. 3d at 373 (citing *Ciardi v. F. Hoffmann-La Roche, Ltd.*, 762 N.E.2d 303, 308, 311 (Mass. 2002)).

After a lengthy bench trial in *In re Pharm. Indus. Average Wholesale Price Litig.*, 491 F. Supp. 2d 20 (D. Mass. 2007), Judge Saris found that, among other end payors, Blue Cross and Blue Shield of Massachusetts ("BCBSMA") properly brought its consumer protection claim under Mass. Gen. Laws ch. 93A, § 9, because the record showed that it was a non-profit organization acting pursuant to its legislative mandate; that reimbursement for prescriptions drugs was a key part of its core mission; and there was no evidence that it profited from the reimbursements for the prescription drugs. *Id.* at 82.

In the first action, Premera relied on *Average Wholesale* and thus knew that its putative not-for-profit status could be significant.[26] Yet admittedly, it failed to plead its not-for-profit status

---

[26] *See* #23-cv-11254-MJJ, #41 (opposition) at 28, 34; #23-cv-11254-MJJ, #44 (reply) at 16-17.

in this second action.[27] There are no allegations in the complaint to suggest that Premera and the proposed class members did not profit from the reimbursements; conversely, there are allegations that suggest that Premera and the proposed class members were "motivated by business considerations."[28] *Loestrin*, 410 F. Supp. 3d at 373 ("even if some or all of the TPPs are non-profits, they are 'motivated by business considerations' nonetheless") (quoting *Frullo v. Landenberger*, 814 N.E.2d 1105, 1112 (Mass. App. Ct. 2004) ("any transaction in which the plaintiff is motivated by business considerations gives rise to claims only under the statute's business section," Mass. Gen. Laws ch. 93A, § 11)). The court recommends that the Massachusetts consumer protection claims be dismissed.

### d. Virginia.

Premera does not bring Virginia antitrust claims, presumably because courts have interpreted that antitrust statute consistently with *Illinois Brick*. *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 599 F. Supp. 2d 1179, 1186 (N.D. Cal. 2009) (following *California v. Infineon Tech., AG*, 531 F. Supp. 2d 1124, 1150-1151 (N.D. Cal. 2007)).

In *Iron Workers*, wherein the union funds plausibly alleged deceptive conduct, Judge Gorton declined to hold that the Virginia Consumer Protection Act, Va. Code § 59.1-203, "preclude[s] antitrust claims." *Iron Workers*, 2024 WL 2025572, at *11. Below, the court considers whether Premera has plausibly alleged deceptive conduct. It has not.

---

[27] *See* #59 at 14 ("…the public record makes clear…."); *see also* #1 ¶ 8 ("…Premera…is a health care services contractor incorporated…").

[28] *See* #1 ¶ 226 ("…Premera and other members of the class have sustained substantial losses and damage to their business and property in the form of overcharges…"); *id.* ¶ 274 ("Defendants' conduct had a substantial effect on the business operations of Premera and Class members in these states…").

2. <u>Deceptive or Unfair or Unconscionable Conduct (District of Columbia, Idaho, Illinois, Maine, Michigan, Minnesota, New Mexico, Oregon, South Dakota, Utah, Virginia); Reliance (Arizona, California, Pennsylvania, West Virginia); Wisconsin.</u>

The court makes two observations at the outset. First, in support of its argument that it has plausibly alleged deceptive conduct, Premera relies exclusively on the allegations regarding the October 2014 press release and the November 2014 quarterly report and proposed consent judgment. (#59 at 12-13, 15 (citing #1 ¶¶ 177-182, 277).) It does not rely on the allegations in the complaint regarding the patents, the citizen petition, or the other patent infringement suits. Since Premera does not rely on those allegations, the court does not consider them.

Second, Premera characterizes the press release, quarterly report, and proposed consent judgment as "affirmative misrepresentations to the public," *see* #47 at 28; *see also* #59 at 13, 15, and alludes just once to an omission theory, under West Virginia law, *see* #47 at 41. As to any other jurisdiction, that theory is waived, and the court only considers the affirmative misrepresentation theory.

a. <u>District of Columbia.</u>

Takeda's unadorned citation to out-of-circuit authority, *see* #39 at 40, does not persuade the court to depart from intra-circuit authority holding that under the District of Columbia's consumer protection statute, end payors may bring a claim for price-fixing and are not required to plead an affirmative unconscionable act. *Loestrin*, 410 F. Supp. 3d at 379; *see* D.C. Code § 28-3904(r)(3) (in applying subsection prohibiting "unconscionable" terms of sales, "consideration shall be given to…gross disparity between the price of the property or services sold…and the value of the property or services measured by the price at which similar property or services are readily obtainable in transactions by like buyers…"). The court does not recommend dismissal of the District of Columbia consumer protection claims on this ground.

35

b. <u>Idaho</u>.

In *State ex rel. Wasden v. Daicel Chem. Indus., Ltd.*, 106 P.3d 428 (Idaho 2005), the Idaho Supreme Court rejected reliance on the Consumer Protection Act's ("ICPA") harmonization provision, Idaho Code § 48-604(1), and found that the price-fixing at issue was not "unconscionable 'sales conduct' that is directed at the consumer," as required by Idaho Code § 48-603C(2)(d). *Wasden*, 106 P.3d at 433-435. Since then, courts have dismissed ICPA indirect purchaser claims. *See In re Liboderm Antitrust Litig.*, 103 F. Supp. 3d 1155, 1167-1168 (N.D. Cal. 2015) (conduct must be directed at the consumer, and the alleged fraudulent conduct before the Patent and Trademark Office and the agreement to settle patent infringement suit in exchange for payments and a period of generic exclusivity "was not 'misleading, false, or deceptive' *to* consumers") (emphasis in original) (quoting Idaho Code § 48-603(17)) (following *Sheet Metal Workers Local 441 Health & Welfare Plan v. GlaxoSmithKline, PLC*, 737 F. Supp. 2d 380, 411 (E.D. Pa. 2010)).

*Sergeants Benevolent Ass'n Health & Welfare Fund v. Actavias*, #15 Civ. 6549, 2018 WL 7197233 (S.D. N.Y. Dec. 26, 2018), the only case Premera cites that post-dates *Wasden*, *see* #47 at 38-39, involved allegations that the defendants "marketed and sold [the prescription drug] to consumers…." *Sergeants Benevolent*, 2018 WL 7197233, at *41. It is therefore distinguishable. *Mayor and City Council of Baltimore v. Merck Sharp & Dohme Corp.*, Civil Action #23-828, 2023 WL 8018980, at *18 (E.D. Pa. Nov. 20, 2023) (distinguishing *Sergeants Benevolent* and following *Sheet Metal Workers*: "…where the alleged conduct has only an indirect effect on consumers down the distribution chain, as is the case here, …such conduct cannot give rise to a claim under the ICPA"). The court recommends that the Idaho consumer protection claims be dismissed.

c. <u>Illinois</u>.

Under Illinois' consumer protection statute, the plaintiff must actually be deceived by the defendant's alleged misrepresentations. *De Bouse v. Bayer AG*, 922 N.E.2d 309, 316 (Ill. 2009); *see Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 861 (Ill. 2005). "If [the] plaintiff never saw the alleged misrepresentations, [it] cannot have been deceived by them and any misrepresentation cannot have proximately caused [its] injury." *Gredell v. Wyeth Labs., Inc.*, 854 N.E.2d 752, 757 (App. Ct. Ill. 2006).

The deception does not have to be direct; either the plaintiff or a third party may be actually deceived. *De Bouse*, 922 N.E.2d at 316, 318; *see Shannon v. Boise Cascade Corp.*, 805 N.E.2d 213, 218 (Ill. 2004). But the Illinois Supreme Court has expressly rejected a "market theory," and allegations that "consumers, the medical community, the health care insurance industry, and the public," i.e. "unspecified persons having no demonstrated connection to" the plaintiff, were actually deceived do not suffice. *De Bouse*, 922 N.E.2d at 319 (citing *Shannon*, 805 N.E.2d at 218). At best, Premera alleges a "market theory." The court recommends dismissal of the individual Illinois consumer protection claim.

d. <u>Maine</u>.

The Maine Unfair Trade Practices Act ("MUTPA") prohibits "[u]nfair methods of competition" and "unfair or deceptive…conduct of any trade." Me. Rev. Stat. tit. 5 § 207. The Maine Supreme Court has held that, "[i]n pricing cases under the Act[,] the inquiry is whether the price has the effect of deceiving the consumer, or inducing her to purchase something she would not otherwise purchase." *Tungate v. MacLean-Stevens Studios, Inc.*, 714 A.2d 792, 797 (Me. 1998). "Logically, charging *higher* prices would not deceive or induce a consumer to purchase an item he or she would not otherwise purchase." *In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d 1133,

37

1159 (N.D. Cal. 2009) (emphasis in original) (citing *In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011, 1031 (N.D. Cal. 2007)); *see In re Chocolate Confectionary Antitrust Litig.*, 602 F. Supp. 2d 538, 584-585 (M.D. Pa. 2009).

Premera relies on *Zetia*, *see* #47 at 39-40, where the magistrate judge, explicitly, and the district judge, implicitly, relied on the narrow reading of *Tungate* from *In re New Motor Vehicles Canadian Export Antitrust Litig.*, 350 F. Supp. 2d 160, 186-187 (D. Me. 2004), as a case about "unfair or deceptive…conduct of any trade," not "unfair methods of competition." *In re Zetia (Ezetimibe) Antitrust Litig.*, #2:18-md-2836, 2019 WL 1397228, at *30 (E.D. Va. Feb. 6, 2019), *report and recommendation adopted as modified*, 400 F. Supp. 3d 418, 437 (E.D. Va. 2019).[29] The majority of courts, however, have rejected *New Motor Vehicles*' narrow reading of *Tungate*. *In re Polyurethane Foam Antitrust Litig.*, 799 F. Supp. 2d 777, 787 (N.D. Ohio 2011) ("this Court agrees with the majority of federal courts that have passed on this question, finding no basis for *In re Motor Vehicles'* crabbed reading of *Tungate*. The Maine Supreme Court does not qualify its pronouncement as applicable to only 'unfair or deceptive acts'") (quoting *Flash*, 643 F. Supp. 2d at 1159 ("The Court disagrees with the *NMV* court's restrictive reading of *Tungate*. By its own terms, the *Tungate* standard applies broadly to 'pricing cases *under the Act*.' 714 A.2d at 797 (emphasis added). There is nothing in *Tungate* to support the purported distinction advocated by Plaintiffs. As a decision of Maine's highest court, the Court is bound to follow the holding in *Tungate*")); *see Effexor*, 357 F. Supp. 3d at 396-397 ("First, federal courts have criticized the rationale in *In re Motor Vehicles*…. Second, the allegations in that case concerned group boycotts,

---

[29] In *Zetia*, moreover, the Maine consumer protection claim was dismissed on other grounds, *see* 2019 WL 1397228, at *33, *report and recommendation adopted as modified*, 400 F. Supp. 3d at 437, so this was dicta.

not price fixing or reverse settlements…."). This court also rejects *New Motor Vehicles*' narrow reading of *Tungate*, and recommends dismissal of the Maine consumer protection claims.

e. <u>Michigan</u>.[30]

Courts have dismissed antitrust claims brought under the Michigan Consumer Protection Act ("MCPA"), Mich. Comp. Laws § 445.903, because the statute "includes a long list of what it defines as 'unfair, unconscionable, or deceptive methods'" and "[n]one of the expressly prohibited acts pertains to any kind of antitrust violation." *In re Namenda Indirect Purchaser Antitrust Litig.*, #1:15-cv-6549 (CM) (RWL), 2021 WL 2403727, at *30 (S.D. N.Y. June 11, 2021) (citing *In re Pork Antitrust Litig.*, 495 F. Supp. 3d 753, 785 (D. Minn. 2020) ("The MCPA is narrower than other state consumer-protection statutes because it specifically defines what constitutes unfair or unconscionable conduct"); *Packaged Seafoods*, 242 F. Supp. 3d at 1076). Premera cites no relevant authority to the contrary.[31]

Antitrust cases in which MCPA claims were allowed to proceed because the plaintiffs plausibly alleged deceptive conduct are distinguishable from this one. *See Packaged Seafood*, 242

---

[30] Takeda argues that Premera abandoned the Michigan consumer protection claims. (#54 at 21-22.) Premera denies that it did, drawing the court's attention to non-state specific argument in its opposition. The cases cited were addressing consumer protection claims in other states. (#59 at 10, n.3) (citing #47 at 37, 41-42) (citing, as relevant here, *Desiano v. Warner-Lambert Co.*, 326 F.3d 339 (2d Cir. 2003); *Kinetic Co. v. Medtronic, Inc.*, 672 F. Supp. 2d 933, 945 (D. Minn. 2009); *Sheet Metal Workers Loc. No. 20 Welfare & Benefits Fund v. CVS Health Corp.*, 221 F. Supp. 3d 227, 232 (D. R.I. 2016); *Staley v. Gilead Scis., Inc.*, 589 F. Supp. 3d 1132, 1137 (N.D. Cal. 2022)).

[31] Premera does not rely on Mich. Comp. Laws § 445.903(z) ("Charging the consumer a price that is grossly in excess of the price at which similar property or services are sold"); *see also Zetia*, 2019 WL 1397228, at *30 (deeming Judge Casper's interpretation of Mich. Comp. Laws § 445.903(z), *see Solodyn*, 2015 WL 5458570, at *17, as "an outlier on this point, and other cases permitting claims based on allegations of anticompetitive conduct have made specific findings of deceptive conduct"), *report and recommendation adopted as modified*, 400 F. Supp. 3d at 436-437.

F. Supp. 3d at 1077-1078 (defendants alleged to have publicly offered pretextual explanations for price increases); *Suboxone,* 64 F. Supp. 3d at 683, 700-701 (defendants alleged to have fabricated safety concern with regard to prescription drug tablet in order to transfer market from tablets to film formulation before generic entry, publicly announcing removal of tablets from market but continuing to sell them). In light of Premera's lackluster defense, the court recommends dismissal of the Michigan consumer protection claims.

f. <u>Minnesota</u>.[32]

For the Minnesota consumer protection claims, Premera relies on *Suboxone*, *supra*. (#47 at 40.)[33] That reliance is misplaced. The allegations here are not at all "similar[]" to the allegations

---

[32] The complaint asserts claims under the Minnesota Uniform Deceptive Trade Practices Act ("MUDPTA"), Minn. Stat. § 325D.43, *et seq*., and the Minnesota Prevention of Consumer Fraud Act ("MCFA"), Minn. Stat. § 325F.69, *et seq*. (#1 ¶ 278k.) The version of MUDPTA effective to June 30, 2023 enumerated examples of deceptive trade practices, none of which appear to apply here, *see* Minn. Stat. § 325D.44, subd. 1(1)-(12) (eff. to June 30, 2023), plus a "catch-all," *see* Minn. Stat. § 325D.44, subd. 1(13) (eff. to June 30, 2023), that courts have interpreted to prohibit deceptive trade practices or acts creating a likelihood of confusion or misunderstanding similar to the enumerated examples. *See WRB, Inc. v. DAMM, LLC*, #21-cv-1899 (NEB/TNL), 2022 WL 17844323, at *15 (D. Minn. Dec. 22, 2022) (collecting cases). In the version of MUDPTA effective July 1, 2023 to December 31, 2024, the same examples are enumerated, but the catch-all is now subdivision 1(14) and the new subdivision 1(13) prohibits "(i) unfair methods of competition, or (ii) unfair or unconscionable acts or practices." Minn. Stat. § 325D.44, subd. 1(13)-(14) (eff. July 1,2023 to Dec. 31, 2024).

    The version of the MCFA effective to June 30, 2023 prohibited fraud, misrepresentation, and deceptive practices. Minn. Stat. § 325F.69, subd. 1 (eff. to June 30, 2023). Effective July 1, 2023, the MCFA also prohibits unfair or unconscionable practices, defining an "unfair method of competition or an unfair or unconscionable act or practice" as "any method of competition, act, or practice that: (1) offends public policy as established by the statutes, rules, or common law of Minnesota; (2) is unethical, oppressive, or unscrupulous; or (3) is substantially injurious to consumers." Minn. Stat. § 325F.69, subd.1, subd. 8 (eff. July 1, 2023 to July 31, 2023). The parties do not address these recent amendments.

[33] Premera also relies implicitly on *Kinetic*, *supra*. (#47 at 37, 41-42.) That defendant allegedly concealed a defect in the old battery for defibrillators, selling defibrillators with the old batteries without warning of the defect, while developing and obtaining FDA approval for the new battery, *see* 672 F. Supp. 2d at 945, conduct ostensibly covered by one of MUDPTA's enumerated examples, *see* Minn. Stat. § 325D.44, subd. 1(7) ("represents that goods or services are of a

40

there. (#59 at 15.) The defendants in *Suboxone*, as noted above, were alleged to have fabricated a drug safety concern. 64 F. Supp. 3d at 683, 700-701.

Because courts have dismissed MUDTPA and MCFA claims that were based on allegations comparable to those of Premera, this court recommends dismissal. *See*, *e.g.*, *Niaspan*, 42 F. Supp. 3d at 748, 760 (in antitrust case, dismissing MCFA claim notwithstanding that defendants were alleged to have "redacted specific dollar amounts in public filings, refused to disclose certain details about their arrangements, and falsely characterized the settlement agreements as procompetitive"); *Liboderm*, 103 F. Supp. 3d at 1170 (dismissing MUDTPA and MCFA claims in antitrust case despite allegations of fraud before the PTO).

g. New Mexico.

In contrast, Premera has plausibly alleged an "unconscionable trade practice" "in connection with the sale…of any goods or services...." that "result[ed] in a gross disparity between the value received by a person and the price paid." N.M. Stat. § 57-12-2(E)(2); *see Iron Workers*, 2024 WL 2025572, at *11 ("It is plausible that such disparities may arise in an antitrust context where the pricing power of an alleged monopolist deprives consumers of the opportunity to purchase a product for its fair market value"); *Effexor*, 357 F. Supp. 3d at 397-398 ("EPPs Complaint is replete with allegations of price fixing and anticompetitive schemes, and it is beyond cavil that these schemes resulted in consumers paying a substantial premium for goods beyond what they would have otherwise paid"). The court declines to recommend dismissal of the New Mexico consumer protection claims.

---

particular standard, quality, or grade…if they are of another"). Premera is presumably relying on MUDTPA's catch-all.

h. <u>Oregon</u>.

Premera's reliance on *Packaged Seafoods*, *supra*, is misplaced. (#47 at 40.) As noted above, those defendants were alleged to have publicly offered pretextual explanations for price increases. *Packaged Seafoods*, 242 F. Supp. 3d at 1077-1078. For the same reasons that the court recommends dismissal of the Michigan and Minnesota consumer protection claims, it recommends dismissal of the Oregon claims. *See Liboderm*, 103 F. Supp. 3d at 1170-1171 (plaintiff "failed to cite any authority applying the 'unconscionable' tactics provision [of the Oregon Unlawful Trade Practices Act., Or. Rev. Stat. § 646.607] and the conduct alleged here is not sufficiently similar to the examples provided in the statute of actionable acts") (applying *Dram*, 516 F. Supp. 2d at 1115 (interpreting Or. Rev. Stat. § 646.608(u))).

i. <u>South Dakota</u>.

Under the South Dakota Deceptive Trade Practices and Consumer Protection Act ("SDDTPCA"), it is a "deceptive act or practice" to

> [k]nowingly act, use, or employ any deceptive act or practice, fraud, false pretense, false promises, or misrepresentation or to conceal, suppression, or omit any material fact in connection with the sale or advertisement of any merchandise, regardless of whether any person has in fact been misled, deceived, or damaged thereby.

S.D. Code Law § 37-24-1(1).

In *Iron Workers*, Judge Gorton, declining to conduct a state-by-state analysis, declined to dismiss a SDDTPCA claim, among others, relying on allegations regarding the patents and hard switch product hops. 2024 WL 2025572, at *11. As noted above, Premera only relies on the allegations regarding the press release, quarterly report, and proposed consent judgment. *Iron Workers* is distinguishable. The cases Premera cites are also distinguishable. (#47 at 40.) *Contrast Sandee's Catering v. Agri Stats., Inc*. #20 C 2295, 2020 WL 6273477, at *1-2, *11 (N.D. Ill. Oct.

26, 2020) (secretive exchange of competitively sensitive information); *Generics*, 368 F. Supp. 3d at 845-846 (scheme involved offering low prices before increases; complaint included detailed allegations about the defendants' attendance at industry gatherings and the timing and size of the price increases); *In re DDAVP Indirect Purchaser Antitrust Litig.*, 903 F. Supp. 2d 198, 229 (S.D. N.Y. 2012) (submission of three declarations from purported "non-inventors" authored by the defendant's paid consultants who failed to disclose that relationship, despite the PTO's request for non-inventor evidence). For the same reasons the court recommends dismissal of the Michigan, Minnesota, and Oregon consumer protection claims, it recommends dismissal of the South Dakota claims.

          j. <u>Utah</u>.

       The Utah Consumer Sales and Practices Act ("UCSPA") provides that "[a]n unconscionable act or practice by a supplier in connection with a consumer transaction violates this act;" "unconscionability" is a question of law for the court, however, "[i]f it is claimed or appears to the court that an act or practice may be unconscionable, the parties shall be given a reasonable opportunity to present evidence of its setting, purpose, and effect…." Utah Code § 13-11-5(1), (2). "Consumer transaction" includes a sale of goods "to, or apparently to, a person for… primarily personal, family, or household purposes." Utah Code § 13-11-3(2)(a).

       Courts are split on UCSPA-antitrust claims. *Contrast Dram*, 516 F. Supp. 2d at 1117 (although it is modeled after the Federal Trade Commission Act, *see* Utah Code § 13-11-2(4), and construed broadly, the UCSPA does not prohibit "unfair competition" like the FTC Act; a price-fixing prohibition should not be read into the UCSPA) *with Namenda*, 2021 WL 2403727, at *33 ("Other federal courts that have evaluated Utah's statute in the antitrust context have all permitted such claims to proceed, construing the statute liberally to conclude that an antitrust violation can

be unconscionable") (citing *Packaged Seafoods*, 242 F. Supp. 3d at 1087; *In re Microprocessors Antitrust Litig.*, 496 F. Supp. 2d 404, 418 (D. Del. 2007)).

Judge Gorton just declined to "expand [the UCSPA's] scope," dismissing the claim. *Iron Workers*, 2024 WL 2025572, at *11. This court recommends dismissal of the Utah consumer protection claims, as well.

### k. Virginia.

The court again rejects Premera's misplaced reliance on *Suboxone*, *supra*. (#47 at 41.) It recommends dismissal of the Virginia consumer protection claims.

### l. Arizona.

Proximate injury is an essential element under the Arizona Consumer Fraud Act ("ACFA"), *see* Ariz. Rev. Stat. § 44-1522(A), and actual reliance on an affirmative misrepresentation or other prohibited act is required to establish proximate injury. *Miami Prods.*, 546 F. Supp. 3d at 238 ("Because proximate injury is an element of an AFCA claim, and because actual reliance is required to establish proximate injury, the Court agrees with Defendants that the AFCA claims must be dismissed"); *see In re ZF-TRW Airbag Control Units Prods. Liab. Litig.*, 601 F. Supp. 3d 625, 771 (C.D. Cal. 2022); *see also Peery v. Hansen*, 585 P.2d 574, 577 (Ct. App. Ariz. 1978) ("It is clear that before a private party may exert a claim under the statute, he must have been damaged by the prohibited practice. A prerequisite to such damages is reliance on the unlawful acts"). Premera does not plausibly allege actual reliance on the press release, quarterly report, or proposed consent judgment. The allegation that Premera and proposed class members "relied on Takeda['s]…candor in representing the state of competition for [brand] Amitiza and generic Amitiza in making purchasing decisions and in negotiating contracts (including rebates)

with Takeda…," *see* #1 ¶ 277, is conclusory. The court recommends dismissal of the Arizona consumer protection claims.

m. <u>California</u>.

Under the California Unfair Competition Law ("CUCL"), *see* Cal. Bus. & Prof. Code § 17200, *et seq*., "there are three varieties of unfair competition: practices which are unlawful, unfair, or fraudulent." *In re Ditropan XL Antitrust Litig*., 529 F. Supp. 2d 1098, 1105 (N.D. Cal. 2007) (quoting *Daugherty v. Am. Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 837, 51 Cal. Rptr. 3d 118 (Ct. App. Cal. 2006)); *see Albillo v. Intermodal Container Srvcs., Inc*., 114 Cal. App. 4th 190, 206, 8 Cal. Rptr. 350 (Ct. App. Cal. 2003) (to state a CUCL claim, a "plaintiff must establish that the practice is either unlawful (i.e., is forbidden by law), unfair (i.e., harm to victim outweighs any benefit) or fraudulent (i.e., is likely to deceive members of the public)"). It is clear that, under the "fraudulent" prong, the plaintiff must plausibly allege actual reliance. *In re Glumetza Antitrust Litig*., 611 F. Supp. 3d 848, 868 (N.D. Cal. 2020) (that is the crux of deception); *see also Miami Prods.*, 546 F. Supp. 3d at 238 (quoting *In re Tobacco II Cases*, 207 P.3d 20, 39 (Cal. 2009)). Under the "unlawful" and "unfair" prongs, it is less clear. *Ditropan*, 529 F. Supp. 2d at 1105-1106 (finding no basis for requiring actual reliance). The court only recommends dismissal of the "fraudulent" prong California consumer protection claims.[34]

The court is not persuaded by Takeda's argument that the "unlawful" or "unfair" prong California consumer protection claims must be dismissed as duplicative of the antitrust claims. (#39 at 46) (citing *In re Aggrenox Antitrust Litig.*, #3:14-md-2516 (SRU), 2016 WL 4204478, at

---

[34] The AFCA was amended in 2013, adding to the phrase "deceptive act or practice," the phrase "or unfair." *See* Ariz. Rev. Stat. § 44-1522(A) (eff. to Sept. 12, 2013); Ariz. Rev. Stat. § 44-1522(A) (eff. Sept. 13, 2013). Under the AFCA, unlike the CUCL, *see* #47 at 37-38, Premera does not develop an argument that an actual reliance requirement might apply on the "fraud" prong but not the "unfair" prong.

*7 (D. Conn. Aug. 9, 2016)). Unlike the plaintiffs in *Aggrenox*, Premera "offer[s] [some] authority for the proposition that other provisions of California law besides its antitrust law can act as surrogates for antitrust law." *Aggrenox*, 2016 WL 4204478, at *7; *see* #47 at 43 (citing *Quelimane Co. v. Stewart Title Guar. Co.*, 960 P.2d 513, 519 (Cal. 1998) ("If insurers are subject to the [CUCL] and the complaint states a Cartwright Act [Cal. Bus. & Prof. Code § 16700 *et seq.*] violation, the complaint is sufficient against defendant's demurrer")). Takeda does not address that authority.[35]

n. <u>Pennsylvania</u>.

The "Supreme Court of Pennsylvania has consistently interpreted the Consumer Protection Law's private-plaintiff standing provision's causation requirement to demand a showing of justifiable reliance, not simply a causal connection between the misrepresentation and the harm." *Hunt v. U.S. Tobacco Co*., 538 F.3d 217, 222 (3d Cir. 2008). The Third Circuit explained:

> [a] mere causal connection can be established by, for instance, proof that a misrepresentation inflated a product's price, thereby injuring every purchaser because he paid more than he would have paid in the absence of the misrepresentation. … A justifiable-reliance requirement, by contrast, requires the plaintiff to go further—he must show that he justifiably bought the product in the first place (or engaged in some other detrimental activity) because of the misrepresentation.

*Id*. at 222, n.4 (citing *Weinberg v. Sun Co., Inc*., 777 A.2d 442, 445-446 (Pa. 2001)); *see Toy v. Metro. Life Ins., Co*., 928 A.2d 186, 202 (Pa. 2007) ("…*Weinberg* necessarily states that a plaintiff alleging violations of the Consumer Protection Law must prove justifiable reliance"); *see also In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig*., 355 F. Supp. 3d 145, 160-161 (E.D. N.Y. 2018) (following *Hunt* and rejecting *Sheet Metal Workers*, 737 F. Supp. 2d at 421, *see*

---

[35] Takeda's argument that the California consumer protection claims do not allow for recovery of damages is not grounds for dismissal. (#39 at 46 n.27) (citing *Tobacco II*, 207 P.3d at 29 (noting availability of injunctive relief and restitution)); *see also Loestrin*, 410 F. Supp. 3d at 376-377.

#47 at 40, which did not address *Weinberg* or *Toy*). The court recommends dismissal of the Pennsylvania consumer protection claims.

o. <u>West Virginia</u>.

The West Virginia Supreme Court of Appeals has construed the WVCCPA and held:

> …[w]hen consumers allege that a purchase was made because of an express or affirmative misrepresentation, the causal connection between the deceptive conduct and the loss would necessarily include proof of reliance on those overt representations. … Where concealment, suppression or omission is alleged, and proving reliance is an impossibility, the causal connection between the deceptive act and the ascertainable loss is established by presentation of facts showing that the deceptive conduct was the proximate cause of the loss. In other words, the facts have to establish that "but for" the deceptive conduct or practice a reasonable consumer would not have purchased the product and incurred the ascertainable loss.

*White v. Wyeth*, 705 S.E.2d 828 (Sup. Ct. App. W. Va. 2010) (citations omitted). Premera has not plausibly alleged "reliance on…overt representations," or that "but for" the press release, quarterly report, and proposed consent judgment, "a reasonable consumer would not have purchased [brand or generic Amitiza] and incurred the ascertainable loss."

3. <u>Consumer (District of Columbia, Vermont)</u>.[36]

a. <u>District of Columbia</u>.

The District of Columbia's consumer protection statute provides that "[a] consumer may bring an action seeking relief from the use of a trade practice in violation of a law of the District." D.C. Code § 28-3905(k)(1). "When used as a noun," "consumer" describes a person who other than for resale, "does or would purchase…or receive consumer goods…, including a co-obligor or surety, or does or would otherwise provide the economic demand for a trade practice." D.C. Code § 28-3901(a)(2)(A). "When used as an adjective," "consumer" describes what a person "does or

---

[36] Given its recommendations above, the court only addresses Takeda's "consumer" argument as to these states. (#39 at 43-46.)

would purchase…or receive and normally use for personal, household, or family purposes….”

D.C. Code § 28-3901(a)(2)(B)(i).

> The District of Columbia Court of Appeals has explained:

> …[T]he relevant distinction is one between retail and wholesale transactions. Transactions along the distribution chain that do not involve the ultimate retail customer are not “consumer transactions” that the Act seeks to reach. Rather, it is the ultimate retail transaction between the final distributor and the individual member of the consuming public that the Act covers. Accordingly, it is not the use to which the purchaser ultimately puts the goods or services, but rather the nature of the purchaser that determines the nature of the transaction.

*Adam A. Weschler & Son, Inc., v. Klank*, 561 A.2d 1003, 1005 (D.C. Ct. App. 1989).

Applying *Weschler*, courts have held that end payors who are required to pay pharmacies for drugs because their members filled prescriptions there are “not part of the ‘retail’ transaction, in terms of deciding to purchase the product or actually purchasing it;” they play a role in the retail transaction, but their own transactions with the pharmacies are more akin to “wholesale” transactions. *Liboderm*, 103 F. Supp. 3d at 1165; *see In re Humira (Adalimumab) Antitrust Litig*., 465 F. Supp. 3d 811, 849-850 (N.D. Ill. 2020); *accord Restasis*, 355 F. Supp. 3d at 157 (as to Missouri consumer protection statute, which applies to “[a]ny person who purchases…merchandise primarily for personal, family, or household purposes…,” *see* Mo. Rev. Stat. § 407.025.1, observing that “[n]umerous courts have interpreted the [statute] to confer standing exclusively on those who purchase property for their own use…. These courts reason that, when an insurance plan makes a purchase, it does so, not for personal purposes, but for the plan’s business purposes, *i.e.*, to fulfill its side of a contractual relationship with its members, who pay premiums for its coverage”); *Asacol*, 2016 WL 4083333, at *12 (dismissing Missouri consumer protection claim).

*Staley v. Gilead Scis., Inc.*, 446 F. Supp. 3d 578 (N.D. Cal. 2020), *see* #47 at 42, held to the

contrary. *Id*. at 638 (disagreeing with *Liboderm*; "an insurer…is essentially acting as a proxy for

the insured"). The court does not find its reasoning more persuasive and recommends dismissal of

the District of Columba consumer protection claims on this alternate ground.

b. <u>Vermont</u>.

The Vermont Consumer Protection Act (formerly, Consumer Fraud Act) provides that

> Any consumer who contracts for goods or services in reliance upon false or
> fraudulent representations or practices prohibited by section 2453 of this title, or
> who sustains damages or injury as a result of any false or fraudulent representations
> or practices prohibited by section 2453 of this title, or prohibited by any rule or
> regulation made pursuant to section 2453 of this title may sue....

Vt. Stat. tit. 9 § 2461(b). "Consumer" includes

> any person who purchases, leases, contracts for, or otherwise agrees to pay
> consideration for goods or services not for resale in the ordinary course of his or
> her trade or business but for his or her use or benefit or the use or benefit of a
> member of his or her household, or in connection with the operation of his or her
> household or a farm whether or not the farm is conducted as a trade or business, or
> a person who purchases, leases, contracts for, or otherwise agrees to pay
> consideration for goods or services not for resale in the ordinary course of his or
> her trade or business but for the use or benefit of his or her business or in connection
> with the operation of his or her business.

Vt. Stat. tit. 9 § 2453a(a).

Although it did not dismiss the District of Columbia consumer protection claim, the *Staley*

court did dismiss the VCPA claim: "Given that the Vermont code specifies that it is only a

consumer who many bring suit and the specific definition of 'consumer' above, Gilead has the

better position." *Staley*, 446 F. Supp. 3d at 642; *see Asacol,* 2016 WL 4083333, at *15 (dismissing

VCPA claim).

Judge Gorton previously declined to dismiss a VCPA claim, citing *Rathe v. Salvage, Inc.,*

*v. R. Brown & Sons, Inc*., 965 A.2d 460, 467 (Vt. 2008) ("*Rathe I*"), for the proposition that the

VCPA "was amended to ensure businesses were provided the same protections as individuals." *In re Ranbaxy Generic Drug Application Antitrust Litig.*, #19-md-02878-NMG, 2019 WL 6341298, at *8 (D. Mass. Nov. 27, 2019). *Rathe I*, "answer[ing]…the trial court's uncertainty," held that the VCPA "applies to businesses in general" and remanded for a hearing to determine whether Rathe "qualifie[d] as a 'consumer' …." 965 A.2d at 467.[37] Takeda argues that Premera does not qualify as a "consumer" because in reimbursing the local Blue plans that paid the pharmacies that filled Premera's members' Amitiza prescriptions, Premera does not purchase Amitiza for the use or benefit of its business or in connection with the operation of its business. *See* #54 at 28 ("…it does not consume the product…").

The court ultimately departs from *Ranbaxy* and recommends dismissal of the VCPA claims. The Second Circuit, in *RSD Leasing, Inc. v. Navistar Intern., Corp.*, 81 F.4th 153 (2d Cir. 2023) ("*RSD I*"), grappled with the question of whether the Vermont Legislature intended the "use/benefit/operation" language to bear its "most expansive" meaning, that is, "use" as in put into action or service and "literally benefitted," as in derived some pecuniary advantage, profit, or gain by deriving revenue from that use. *Id*. at 163-164 (cleaned up) (citations omitted). It found little state caselaw to assist and noted that federal district courts had adopted both expansive and narrower interpretations. *Id*. at 166 (citing, *inter alia*, *Sergeants Benevolent*, 2018 WL 7197233, at

---

[37] After remand, a jury found Rathe liable on the VCPA claim but the trial court granted judgment as a matter of law, overturning the jury's verdict. The Vermont Supreme Court affirmed, finding that the jury's verdict was not supported by evidence that Rathe was a consumer of services purchased from the defendant hauler; rather, the evidence showed that the hauler bought scrap from Rathe and that Rathe purchased no goods or services from hauler. *Rathe Salvage, Inc. v. R. Brown & Sons, Inc.*, 46 A.3d 891, 901-905 (Vt. 2012) ("*Rathe II*").

*52) ("[t]he language of the statute clearly restricts the term 'consumer' to end users of the product")).

The Second Circuit certified a question to the Vermont Supreme Court: "Does a business that purchases goods intending first to lease those goods to end users and then to resell them at the termination of the lease term qualify as a 'consumer' under the VCPA?" *RSD I*, 81 F.4th at 170. After briefing was complete, the Vermont Supreme Court answered the question, in a divided opinion. The majority answered the question in the negative, expressly declining to address whether the lease of purchased goods satisfies the "use/benefit/operation" clause because, regardless, plaintiff purchased the trucks for resale, triggering the exclusionary "resale" clause. *RSD Leasing, Inc. v. Navistar Int'l Corp.*, --- A.3d ----, #23-AP-274, 2024 WL 2873280, at *3 (Vt. June 7, 2024) ("*RSD II*").

The dissent addressed whether the lease of purchased goods satisfies the "use/benefit/operation" clause, adopting an expansive interpretation of "benefit:"

> It is undisputed that plaintiff generated profits through the leasing of trucks – that is, that the leases provided plaintiff with a profit or gain. Given this fact, it is absurd to say that plaintiff did not purchase the trucks 'for…the benefit of [its] business.'… If leasing the trucks did not provide a benefit to plaintiff's business, plaintiff would not have purchased them.

*RSD II*, 2024 WL 2873280, at *7 (Reiber, C.J., dissenting, joined by Waples, J.) (cleaned up) (citation omitted).

In this court's view, it is significant that the expansive interpretation of "benefit" was only adopted in dissent. It is also significant that the majority cited *Aggrenox*, 2016 WL 4204478, at *9, favorably. *RSD II*, 2024 WL 2873280, at *3. The court in *Aggrenox*, like the court in *Sergeants Benevolent*, *see RSD I*, 81 F.4th at 166, dismissed the VCPA claim: "Humana may be able to sue under the [VCPA] in connection with computers or office equipment of which Humana is a

business consumer, but not in connection with drugs of which Humana's members are consumers."

*Aggrenox*, 2016 WL 4204478, at *9; *see Sergeants Benevolent*, 2018 WL 7197233, at *52

("Sergeants Benevolent cannot state a claim under this statute by alleging that it reimbursed for

[the prescription drug] on behalf of its insured members") (citing *Restasis*, 2018 WL 5928143, at

*7).

### 4. Intrastate conduct (New Hampshire).

The court departs from the intra-circuit authority permitting New Hampshire consumer

protection claims to proceed on allegations of "a nationwide antitrust violation that increased

prices paid by the end payors in each state." *Solodyn*, 2015 WL 5458570, at *16; *see Loestrin*, 410

F. Supp. 3d at 377 (following, *inter alia*, *Solodyn*). It recommends dismissal.

The New Hampshire Consumer Protection Act ("NHCPA") prohibits "any unfair method

of competition or any unfair or deceptive act in the conduct of any trade or commerce within this

state." N.H. Rev. Stat. § 358-A:2.

> Although the New Hampshire Supreme Court has not squarely addressed the issue
> of the territoriality clause, 'numerous federal district courts seated within and
> without New Hampshire have acknowledged that the [NHCPA] requires the
> proscribed conduct to occur within the state; merely selling a good in New
> Hampshire is not enough when the proscribed conduct occurs elsewhere.'

*Pork*, 495 F. Supp. 3d at 789 (quoting *In re Lithium Ion Batteries Antitrust Litig.*, #13-MD-2420

YGR, 2014 WL 4955377, at *22 (N.D. Cal. Oct, 2, 2014) (citing, *inter alia*, *Precourt v. Fairbank*

*Reconstruction Corp.*, 856 F. Supp. 2d 327, 342-344 (D. N.H. 2012))).

Premera's reliance on N.H. Rev. Stat. § 358-A:1, II's definition of "trade" and "commerce"

and *LaChance v. U.S. Smokeless Tobacco Co.*, 931 A.2d 571 (N.H. 2007), *see* #47 at 44, is

misplaced. The definition of "trade" and "commerce" as conduct that affects the people of New

Hampshire either directly or indirectly does not eliminate N.H. Rev. Stat. § 358-A:2's territoriality

requirement: "Even trade or commerce that indirectly affects the people of New Hampshire must still be 'trade or commerce within this state,' *id*. …." *Precourt*, 856 F. Supp. 2d at 343 (citation omitted).

*LaChance* "did not involve any argument by the defendants that their offending conduct did not take place in New Hampshire…." *Precourt*, 856 F. Supp. 3d at 343; *see Lithium Ion Batteries*, 2014 WL 4955377, at *22 ("The *LaChance* court did not say, nor does it[] suggest, that the [NHCPA] applies to proscribed conduct occurring out of state"); *see also Pork*, 495 F. Supp. 3d at 789, n.23 ("In *LaChance*, [t]he New Hampshire Supreme Court was answering an *Illinois Brick* question: did the court's rule that indirect purchasers may not bring claims under the Granite State antitrust statute, announced in *Minuteman, LLC v. Microsoft Corp*., 147 N.H. 634, 795 A.2d 833 (2002), apply to claims under the NHCPA as well. The court concluded that it did not. *LaChance*, 931 A.2d at 575-81. However, the *Illinois Brick*/*Minuteman* issue has no bearing on the territoriality question").

### 5. Natural persons (Nevada).

The court rejects Takeda's argument that the Nevada Deceptive Trade Practices Act ("NDTPA") is limited to natural persons. (#47 at 61.) Nev. Rev. Stat. § 41.600(1) provides that "[a]n action may be brought by any person who is a victim of consumer fraud" and defines "consumer fraud" as "[a] deceptive trade practice as defined in" the NDTPA, Nev. Rev. Stat. §§ 589.0915 to 598.0924. Nev. Rev. Stat. § 41.600(1). Courts holding that the NDTPA is limited to elderly and disabled persons rely on Nev. Rev. Stat. § 598.0977, but that section merely gives elderly and disabled plaintiffs collection priority and provides for punitive damages; it does not preclude other plaintiffs from recovering damages for consumer fraud. *In re Dealer Mgmt. Sys. Antitrust Litig*., 680 F. Supp. 3d 919, 986 (N.D. Ill. 2023); *see also Sergeants Benevolent*, 2018

WL 7197233, at *47 (citing *S. Serv. Corp. v. Excel Bldg. Srvcs., Inc.*, 617 F. Supp. 2d 1097, 1100

(D. Nev. 2007) ("…Nevada law allows a competitor to sue under the consumer fraud statutes…")).

Of the three cases Takeda cites, *see* #39 at 47, one actually rejects the argument that the

NDTPA is limited to disabled and elderly persons. *In re DDAVP Indirect Purchaser Antitrust Litig.*,

903 F. Supp. 2d 198, 226-227 (S.D. N.Y. 2012). The second case cites the first, erroneously. *Cast*

*Iron*, 2015 WL 5166014, at *31. And the third case does not address Nev. Rev. Stat. § 41.600(1).

*Wellbutrin*, 260 F.R.D. at 163-164.

      6. <u>Wisconsin</u>.

Premera clarifies that it brings the consumer protection claims under Wis. Stat. § 100.18(1),

*see* #47 at 44; *see also* #59 at 17,[38] "which generally prohibits false, deceptive, or misleading

representations or statements of fact in public advertisements or sales announcements." *Tietsworth*

*v. Harley-Davidson, Inc.*, 677 N.W.2d 233, 245 (Wis. 2004). To state a claim under § 100.18(1),

the plaintiff must allege that the defendant has, "with the specified intent, made an 'advertisement,

announcement, statement, or representation…to the public,' which contains an 'assertion,

representation or statement of fact' that is 'untrue, deceptive or misleading,' and that the plaintiff

has sustained a pecuniary loss as a result of the 'assertion, representation or statement of fact.'"

*Tietsworth*, 677 N.W.2d at 245 (quoting Wis. Stat. § 100.18(1)). "A nondisclosure is not an

'assertion, representation or statement of fact'…." *Id*. "[P]roving causation…requires a showing

of material inducement;" although a showing of reasonable reliance is not required, the

reasonableness of the plaintiff's reliance may be relevant in considering whether the affirmative

---

[38] The complaint cites not only Wis. Stat. § 100.18, but also Wis. Stat. § 100.20, *see* #1 ¶ 278aa, under which there is no private right of action except for a violation of an order issued by the Wisconsin Department of Agriculture. *Emergency One, Inc. v. Waterous Co., Inc.*, 23 F. Supp. 2d 959, 971 (E.D. Wis. 1998).

misrepresentation materially induced the plaintiff's pecuniary loss. *K&S Tool & Die Corp. v. Perfection Machinery Sales, Inc.*, 732 N.W.2d 792, 802 (Wis. 2007).

Moreover, under § 100.18(1) the plaintiff must be a member of "the public." *Hinrichs v. DOW Chem. Co.*, 937 N.W.2d 37, 51 (Wis. 2020). The plaintiff is a member of "the public" unless a particular relationship exists between the plaintiff and the defendant. *Id.* at 52 (quoting *K&S*, 732 N.W.2d at 800). The plaintiff is no longer a member of "the public" once it enters a contract to purchase the offered item. *K&S*, 732 N.W.2d at 800.

In its opening brief, Takeda argued the lack of a private cause of action under § 100.20, and for purposes of a § 100.18(1) claim, argued that Premera failed to plausibly allege "deceptive" "***advertising***" "within Wisconsin (or anywhere else)." (#39 at 48) (emphasis in original). In its reply, Takeda broadened the § 100.18(1) argument, and added caselaw for it. (#54 at 28-29) ("…Premera failed to plead facts for any of these elements or show that it is a member of 'the public'."…).

Premera argues that Takeda waived the broadened § 100.18(1) argument. (#59 at 17.) Courts "routinely preclude a litigant from raising new arguments in a reply brief" but "this rule is not inflexible; [they] retain discretion to excuse parties from procedural gaffes such as this." *Echevarría v. AstraZeneca Pharm., LP*, 856 F.3d 119, 133, n.18 (1st Cir. 2017). Assuming waiver, the court recommends an exercise of discretion to excuse it. Premera filed the sur-reply, and thus had the opportunity to persuade the court that "EPPs…meet the elements" of § 100.18(1). All Premera says is: "…[T]hey do." (#59 at 17.) The court recommends dismissal of the Wisconsin consumer protection claims for the failure to plead "material inducement" and "public" membership when the putative affirmative misrepresentations were made.

G. Unjust Enrichment Claims.

    1. Miscellaneous.

Takeda argues that California does not recognize unjust enrichment as an independent cause of action, *see* #39 at 59; Premera argues that it does, *see* #47 at 50-51. "[B]oth parties are correct," *see Loestrin*, 410 F. Supp. 3d at 381, and the court declines to recommend dismissal, *see id.*; *see also Solodyn*, 2015 WL 5458570, at *20.

   Mississippi recognizes unjust enrichment as an independent cause of action: "A simple search yields many cases …." *Loestrin*, 410 F. Supp. 3d at 381 (collecting cases); *see In re: Light Cigarettes Mktg. Sales Practices Litig.*, 751 F. Supp. 2d 183, 195 (D. Me. 2010) ("…Mississippi courts describe unjust enrichment as an 'equitable remedy' to mean an equitable solution that encompasses a cause of action, not merely a type of recovery…. To the extent there is any lingering doubt, the Supreme Court of Mississippi in *Owens Corning v. R.J. Reynolds Tobacco Co.* described the requirements for an 'action for unjust enrichment'…," 868 So.2d 331, 342 (Miss. 2004)….").

*Pacamor Bearings, Inc. v. Minebea, Co., Ltd.*, 892 F. Supp. 347 (D. N.H. 1995), supports an argument that New Hampshire law does not recognize an unjust enrichment claim in the circumstances presented here.[39] But Takeda's parenthetical for the case – "unjust enrichment is

---

[39] That court explained:
    …[A]ll claims seeking restitution rest, at bottom, on a plaintiff's ability to show that it conferred a benefit on the defendant. Here, the benefit purportedly received by defendants is increased revenues and profits, at plaintiffs' expense, as a result of defendants' alleged violations of various state and federal laws…. Plaintiffs have not cited, nor has this court found, any New Hampshire law cases that support plaintiffs' contention that profits gained by defendants as a result of their alleged violations of the Lanham Act and New Hampshire's law against unfair competition constitute the unjust receipt and retention of a "benefit" ….
*Pacamor*, 892 F. Supp. at 357.

not an independent cause of action," *see* #39 at 59 – does not make that argument, so the court declines to recommend dismissal, without prejudice.

> 2. <u>Subversion of statutory scheme (Alabama, Arkansas, Colorado, Connecticut, Delaware, Florida, Georgia, Idaho, Illinois, Indiana, Kentucky, Louisiana, Maryland, Massachusetts, Missouri, Montana, New Jersey, Oklahoma, Pennsylvania, Puerto Rico, South Carolina, Utah, Virginia, Wyoming)</u>.

Judge Joun previously rejected the purportedly "…'better reasoned decisions permit[ting] unjust enrichment claims in non-*Illinois Brick* repeater states'" upon which Premera relies again. (#47 at 45 (quoting *Generic*, 368 F. Supp. 3d at 850)). In the first action, Premera "offer[ed] no persuasive legal authority…that demonstrate[d] its ability to state unjust enrichment claims under Alaska or Washington law, given these states' partial adoption of *Illinois Brick*," and Judge Joun "[j]oin[ed] the majority of courts," holding that "indirect purchasers cannot bring unjust enrichment claims for antitrust violations under Alaska or Washington law, as it would 'subvert the statutory scheme' of these states' partial adoption of *Illinois Brick*." *Premera I* at 11-12 (quoting *New Motor Vehicles*, 350 F. Supp. 2d at 211; citing *Solodyn*, 2015 WL 5458670, at *18 ("[T]he vast majority of courts have held that indirect purchasers may not bring state claims for unjust enrichment if they otherwise would be barred from bringing a claim under that state's antitrust and consumer protection statutes, absent a showing that the common law of the state in question expressly allows for such recover") (cleaned up)). In this second action, Premera offers no persuasive legal authority for reconsideration of Judge Joun's ruling.

Of course, Judge Joun was considering the individual Alaska and Washington claims, but that is because Premera failed to plausibly demonstrate its Article III standing to pursue the other individual claims. Where Premera again offers no persuasive legal authority demonstrating its

ability to state unjust enrichment claims under the laws in the other states, the individual and proposed class action unjust enrichment claims in those states should be dismissed, as well.[40]

a. <u>Alabama</u>.

Alabama's antitrust statute does apparently permit indirect purchasers to bring claims,[41] but it is limited to intrastate conduct and permitting restitution in the absence of intrastate conduct would subvert the statutory scheme. *Sheet Metal Workers*, 737 F. Supp. 2d at 429.[42]

The court is aware that others have declined to follow *Sheet Metal Workers* because the court in *Sheet Metal Workers* did not address whether an Alabama consumer protection claim would be similarly barred. *Niaspan*, 42 F. Supp. 3d at 765, n.27; *see also Vascepa*, 2023 WL 2182046, at *11-12 (courts have dismissed autonomous unjust enrichment claims because the claims could not be pled, not because the claims had not been pled). In this court's view, where Premera chose not to bring an antitrust or consumer protection claim and Takeda explicitly challenges an unjust enrichment claim as subversive of the statutory scheme, it should be Premera's burden to show that the antitrust or consumer protection claim that it chose not to bring would have been viable. Anyway, Premera chose not to bring an Alabama consumer protection claim and the court presumes that is because the state's consumer protection statute defines "consumer" as "[a]ny natural person who buys goods or services for personal, family, or household

---

[40] Conversely, Takeda's argument that unjust enrichment claims should be dismissed as duplicative of surviving statutory claims fails. (#39 at 57-59.) Premera is entitled to plead those alternative theories. *Loestrin*, 410 F. Supp. 3d at 382; *Solodyn*, 2015 WL 5458570, at *19; *see* Fed. R. Civ. P. 8(d)(2)-(3).

[41] *See* Ala. Code § 6-5-60(a) ("Any person, firm, or corporation injured or damaged by an unlawful trust, combine, or monopoly, or its effect, direct or indirect, may, in each instance of such injury or damage, recover…").

[42] Albeit under a "No *Illinois Brick*-Repealer" heading, Takeda cites *Sheet Metal Workers*, and the court considers this argument adequately developed. (#39 at 49-50.)

use." Ala. Code § 8-19-3(4) (eff. Aug. 1, 2021); *see* Ala. Code 8-19-3(2) (eff. to July 31, 2021); *see also In re Bextra and Celebrex Mktg. Sales Practices and Prod. Liability Litig.*, 495 F. Supp. 2d 1027, 1036 (N.D. Cal. 2007). The court recommends dismissal of the Alabama unjust enrichment claims.

b.  <u>Arkansas, Delaware, Missouri, Puerto Rico, Wyoming</u>.

As discussed above, the individual unjust enrichment claims in these (and other) states should be dismissed for the failure to plausibly demonstrate Article III standing. The proposed class claims should be dismissed as subversion of the statutory scheme.

"…'Arkansas flatly outlaws indirect-purchaser antitrust claims *ab initio* unless asserted by…the State Attorney General." *Namenda*, 2021 WL 2403727, at *35-36 (quoting *Packaged Seafood*, 242 F. Supp. 3d at 1069) (and collecting cases).

There is intra-circuit authority supporting dismissal of the proposed class Delaware and Missouri claims. *Loestrin*, 410 F. Supp. 3d at 381. Premera cites no contrary authority as to the Delaware claim, *see* #47 at 46 & n.13, so the court recommends dismissal.

As to the Missouri claim, the majority of courts have held that indirect purchaser claims can proceed under Missouri's consumer protection statute, in light of the Missouri Supreme Court's decision in *Gibbons v. J. Nuckolls, Inc.*, 216 S.W.3d 667, 669 (Mo. 2007) (plain language "does not contemplate a direct contractual relationship between plaintiff and defendant" and courts have not imposed a requirement through statutory construction); *see Packaged Seafood*, 242 F. Supp. 3d at 1079-1080 (collecting cases). But Premera has withdrawn the proposed class Missouri consumer protection claim. (#1 ¶ 278l; #47 at 37, n.9). Presumably, it does so because of the authority interpreting Missouri's consumer protection statute "to confer standing exclusively on those who purchase property for their own use." *Restasis*, 355 F. Supp. 3d at 157; *see Asacol*, 2016

59

WL 4083333, at *12; *see also Packaged Seafood*, 242 F. Supp. 3d at 1080 (dismissing Missouri consumer protection claim). Premera cites no Missouri authority holding that "it would be []equitable to permit relief" in these circumstances, so the court recommends dismissal of the proposed class Missouri unjust enrichment claim. *See Packaged Seafood*, 242 F. Supp. 3d at 1088-1094 (adopting majority position that "it would be inequitable to permit relief where the state has clearly made a policy determination that no such relief should lie;" not considering Missouri among "states where [EPPs'] claims are not otherwise barred under relevant antitrust and consumer protection laws").

The Puerto Rico and Wyoming claims should also be dismissed; Premera cites no Puerto Rico or Wyoming authority at all. (#47 at 46 & n.13); *see Liboderm*, 103 F. Supp. 3d at 1175 (dismissing Puerto Rico and Wyoming unjust enrichment claims; plaintiff "cannot made an 'end run' around *Illinois Brick* by relying on its unjust enrichment claim for states that have not enacted an *Illinois Brick* repealer statute absent authority from the courts of those states that would allow unjust enrichment claims to proceed").

### c. Colorado, Connecticut, Maryland.

Like Maryland and Connecticut, as discussed above, Colorado enacted an *Illinois Brick* repealer statute, effective June 7, 2023. *See* Colo. Rev. Stat. § 6-4-115(1) (eff. June 7, 2023). The court declines to recommend dismissal of these unjust enrichment claims to the extent that they seek damages after the respective effective dates of the repealer amendment and statutes, given the split in authority as to whether dismissal is appropriate when indirect purchaser claims are no longer contrary to public policy. Intra-circuit authority does not support dismissal. *Contrast Loestrin*, 410 F. Supp. 3d at 381; *Solodyn*, 2015 WL 5458570, at *18; *Niaspan*, 42 F. Supp. 3d at 765 *with Hard Disk*, 2021 WL 4306018, at *29.

d. <u>Florida</u>.

As discussed above, the FDUPTA claims should not be dismissed, so the court declines to recommend dismissal of the unjust enrichment claims as subversive of the statutory scheme. The court recognizes that in *Seroquel*, 2022 WL 2438934, the court declined to dismiss the FUDTPA claim but nevertheless dismissed the unjust enrichment claim as contrary to public policy. *Id*. at *17, *23-24. Takeda has not addressed this apparent internal inconsistency. (#39 at 50-51.)

e. <u>Georgia, Indiana, Kentucky, Louisiana, Massachusetts, Montana, New Jersey, Oklahoma, South Carolina, Utah, Virginia</u>.

As discussed above, Premera has not stated Utah antitrust and consumer protection claims and Massachusetts and Virginia consumer protection claims. The court recommends dismissal of these unjust enrichment claims.

Premera withdraws the New Jersey and Oklahoma consumer protection claims and does not argue that the unjust enrichment claims should proceed. (#47 at 35, n.8, 46 & n.13.) The court recommends that they be dismissed. *See Loestrin*, 410 F. Supp. 3d at 381.

There is also intra-circuit authority supporting dismissal of the Georgia, Kentucky, Louisiana, Montana, and South Carolina unjust enrichment claims and out-of-circuit authority supporting dismissal of the Indiana unjust enrichment claims. *See Loestrin*, 410 F. Supp. 3d at 381; *see also Sheet Metal Workers*, 737 F. Supp. 2d at 435 ("…the Court of Appeals of Indiana ruled that, because the Indiana legislature had not adopted an *Illinois Brick* repealer statute, the indirect purchaser's antitrust claims were properly dismissed…") (citing *Berhausen v. Microsoft Corp*., 765 N.E.2d 592, 596 (Ind. Ct. App. 2002)). Premera cites no contrary authority.

f. <u>Idaho, Illinois, Pennsylvania</u>.

There is intra-circuit authority supporting dismissal of the Idaho, Illinois, and Pennsylvania unjust enrichment claims. *Loestrin*, 410 F. Supp. 3d at 381. Premera has not stated Idaho and

Pennsylvania consumer protection claims, so the court recommends dismissal of those unjust enrichment claims.

However, Takeda has not argued that Premera is barred from pursuing the individual Illinois antitrust claim, and 740 Ill. Comp. Stat. § 10/7(2) only implicates class actions. Thus, the court recommends dismissal of the proposed class unjust enrichment claim, but not the individual unjust enrichment claim.

### 3. Direct benefit (Florida, Kansas, Maine, Michigan, New York, North Carolina, North Dakota, Rhode Island).[43]

#### a. Florida.

"[U]nder Florida law, a direct benefit is a requirement for an unjust enrichment claim." *McCoy v. Samsung Elec. Am., Inc.*, #21-19470, 2024 WL 3717299, at *6 (D. N.J. Aug. 8, 2024) (citing *Kopel v. Kopel*, 229 So. 3d 812, 818 (Fla. 2017) ("…to prevail on an unjust enrichment claim, the plaintiff must directly confer a benefit on the defendant")). Because Premera alleges that, most of the time, it purchases prescription drugs from third-party retailers and does not specify the kinds of transactions the rest of the time, *see* #1 ¶ 9, consistent with the intra-circuit, and weight of, authority, the Florida unjust enrichment claims should be dismissed. "A direct benefit is not conferred on a manufacturer where a consumer buys a product from a retailer, rather than directly from the manufacturer…. Recent decisions from the Eleventh Circuit and Florida Court of Appeals have rejected [Premera's] theory…." *See In re Evenflo Co., Inc. Mktg., Sales Practices & Prods. Liability Litig.*, --- F. Supp. 3d ----, #20-md-02938-DJC, 2023 WL 8810517, at *19 (citing *Johnson v. Catamaran Health Sols., LLC*, 687 Fed. Appx. 825, 830 (11th Cir. 2017) (rejecting argument

---

[43] Given its recommendations above, the court limits its consideration of Takeda's "direct benefit" argument to these states. (#47 at 53-56.)

that the plaintiffs conferred a benefit on the defendant by paying membership fees to a third-party, which paid premiums to the defendant); *CFLB P'ship, LLC v. Diamond Blue Int'l, Inc.*, 352 So. 3d 357, 359-360 (Fla. Dist. Ct. App. 2022)); *see Miami Prods. & Chem. Co. v. Olin Corp.*, #1:19-cv-00385 EAW, 2022 WL 3701159, at *2 (W.D. N.Y. Aug. 26, 2022) ("While *Kopel* was not decided in the antitrust context, it is an authoritative statement of Florida's highest court on the requirements of Florida's common law. Further, the Court agrees with the other federal courts that have concluded that an indirect purchaser has not conveyed a direct benefit on a defendant as required by Florida law"); *Namenda*, 2021 WL 2403727, at *36.[44]

### b. Kansas.

There is a split of authority, but judges in this circuit have declined to dismiss Kansas unjust enrichment claims for the failure to plead conferral of a direct benefit. *Solodyn*, 2015 WL 545857, at *18 (acknowledging contrary authority, including *In re Aftermarket Filters Antitrust Litig.*, #08-CV-4883-RWG, 2010 WL 1416259, at *3 (N.D. Ill. Apr. 1, 2010), *see* #39 at 54-55, but declining to dismiss); *see Loestrin*, 410 F. Supp. 3d at 383 (following *Solodyn*). The court does not recommend dismissal of the proposed class Kansas unjust enrichment claim. The individual claim should be dismissed for the failure to plausibly demonstrate Article III standing.

### c. Maine.

For Maine unjust enrichment claims, there is also a split of authority and judges in this circuit have come out on the side of "direct" benefit, implicitly relying on *Rivers v. Amato*, #CV-00131, 2001 WL 1736498, at *4 (Me. Super. Ct. June 22, 2021). *Solodyn*, 2015 WL 5458570, at *18 (citing *Aftermarket Filters*, 2010 WL 1416259, at *2 (citing *Rivers*)); *see Loestrin*, 410 F. Supp. 3d at 384 (following *Solodyn*); *but see*, *e.g.*, *Keurig*, 383 F. Supp. 3d at 270-271 ("…indirect

---

[44] *Solodyn*, 2015 WL 5458570, at *18, *see* #47 at 47, n.16, was decided before *Kopel*.

nature of the plaintiff's claim in *Rivers* is different in kind from the IPPs' claim," i.e. "the alleged passing on of overages through multiple layers of the distribution channel"); *Pork*, 495 F. Supp. 3d at 794 ("*Rivers* never actually bought anything…"). Because *Rivers* is an arguably distinguishable superior court decision, on summary judgment, the court departs from the intra-circuit authority and declines to recommend dismissal of the Maine unjust enrichment claims, without prejudice.

d. <u>Michigan</u>.

Judge Casper in *Solodyn* and Judge Smith in *Loestrin* found that Michigan law does not necessarily require that the plaintiff plead conferral of a direct benefit on the defendant. *Solodyn*, 2015 WL 5458570, at \*18 (citing *In re Cardizem CD Antitrust Litig.*, 105 F. Supp. 2d 618, 671 (E.D. Mich. 2000)); *Loestrin*, 410 F. Supp. 3d at 383 (same). This court disagrees with that view. *See Smith v. Glenmark Generics, Inc., USA*, #315898, 2014 WL 4087968, at \*1 (Ct. App. Mich. Aug. 19, 2014) (per curiam) (unpublished) ("…caselaw does not specifically state that the benefit must be received *directly* from the plaintiff, but these decisions make it clear that it must. This is particularly true where emphasis is placed on the fact that the defendant must receive a benefit *from* the plaintiff, and where the facts show that a benefit received indirectly is not enough to establish a claim for unjust enrichment. … In this case, the facts show that defendant did not receive a direct benefit from plaintiff. Defendant did not sell the contraceptives directly to plaintiff, and plaintiff admitted that she did not purchase the contraceptives from defendant, but rather from a pharmacy") (emphasis in original) (discussing, *inter alia*, *Kammer Asphalt Paving Co., Inc. v. E. China Twp. Schs.*, 504 N.W.2d 635, 641 (Mich. 1993), *see* #47 at 48, n.20)); *see In re General Motors LLC Ignition Switch Litig.*, 257 F. Supp. 3d 372, 427-428 (S.D. N.Y. 2017) ("At most, 'Michigan courts have in some instances allowed a plaintiff to recover for an indirect conferral of

benefit where the plaintiff is a subcontractor and the defendant is the party that hired the general contractor. This doctrine only applies where the defendant and the plaintiff had some sort of *interaction*, however.'… The doctrine does not apply to cases 'involving consumer plaintiffs and a remote manufacturer'") (quoting *Storey v. Attends Healthcare Prods., Inc.*, #15-cv-13577, 2015 WL 3125210, at *12 (E.D. Mich. June 3, 2016) (emphasis in original)); *Fenerjian v. Nongsim Co., Ltd.*, 72 F. Supp. 3d 1058, 1088 (N.D. Cal. 2014) ("*Cardizem* is not instructive because [it did not] cite any Michigan state authority involving indirect purchasers or transactions. Under the reasoning of *Lipov* [*v. Louisiana-Pac. Corp.*, #12-cv-439, 2013 WL 3805673, at *6 (W.D. Mich. July 22, 2013),] and *A&M Supply* [*Co. v. Microsoft Corp.*, #274164, 2008 WL 540883, at *2 (Ct. App. Mich. Feb. 28, 2008)], the transactions and relationship between the indirect purchaser plaintiffs are too attenuated to state an unjust enrichment claim under Michigan law"); *see also Woodhams v. Pfizer, Inc.*, #18-cv-3990 (JPO), 2021 WL 5304309, at *5 (S.D. N.Y. Nov. 15, 2021) ("Woodhams, the plaintiff who purchased Robitussin in Michigan at Harding's Market, does not allege that he had any direct interaction with Pfizer, so his unjust enrichment claim is dismissed"). Departing from intra-circuit authority, the court recommends dismissal of the Michigan unjust enrichment claims.

e. New York.

There is intra-circuit authority for dismissal of the New York unjust enrichment claims. *Loestrin*, 410 F. Supp. 3d at 384 (citing *Liboderm*, 103 F. Supp. 3d at 1176) (citing *Fenerjian*, 72 F. Supp. 3d at 1090 ("…under the reasoning of *Sperry* [v. *Crompton Corp.*, 863 N.E.2d 1012 (N.Y. 2007)] and [another case], the transactions and relationship between the indirect purchaser plaintiffs and the defendants are too attenuated to state an unjust enrichment claim under New York law"))); *see Sperry*, 863 N.E.2d at 1018 ("Here, the connection between the purchaser of

tires and the producers of chemicals used in the rubber-making process is simply too attenuated to support such a claim"). There is out-of-circuit authority to the contrary. *See Zetia*, 400 F. Supp. 3d at 442 ("[t]he court also finds the reasoning in [*In re Processed Egg Prods. Antitrust Litig.*], 851 F. Supp. 2d [867,] 930 [(E.D. Pa. 2012)]…to be persuasive"); *see also Sergeants Benevolent*, 2018 WL 7197233, at *64-65 (collecting cases).

Courts holding that indirect purchasers may bring New York unjust enrichment claims against drug manufacturers rely on *Waldman v. New Chapter, Inc.*, 714 F. Supp. 2d 398, 403-404 (E.D. N.Y. 2010), *see*, *e.g.*, *Processed Egg*, 851 F. Supp. 3d at 930, where the court read caselaw, including *Sperry*, to distinguish between indirect purchaser claims against the manufacturer of one of a product's ingredients, which is too attenuated, and indirect purchaser claims against the manufacturer of the product itself, which is not too attenuated. *Waldman*, 714 F. Supp. 2d at 403-404. *Waldman* has been criticized. *See Fenerjian*, 72 F. Supp. 3d at 1089 ("…*Waldman* does not cite any persuasive authority for distinguishing *Sperry* [and the other case] on that basis. *Waldman* relies on *Cox* [*v. Microsoft Corp.*, 8 A.3d 39, 40, 778 N.Y.S.2d 147 (2004),] which…predates *Sperry* [and the other case] and appears contrary to those cases. Moreover, the relevant discussion in *Cox* comprises one sentence and *Cox* itself did not reference any distinction between price-fixed products and price-fixed ingredients of products").

Notwithstanding the intra-circuit authority, because this issue can be re-visited at a later stage, the court declines to recommend dismissal of the New York unjust enrichment claims. It is significant that the Second Circuit has described "the requirement of a connection between plaintiff and defendant [as] a modest one." *Myun-Uk Choi v. Tower Research Capital LLC*, 890 F.3d 60, 69 (2d Cir. 2018) (also relying on *Cox* in vacating dismissal of claim).

66

f. <u>North Carolina</u>.

Judge Casper in *Solodyn* and Judge Smith in *Loestrin* declined to dismiss the North Carolina unjust enrichment claims. *Loestrin*, 410 F. Supp. 3d at 382 (citing *Solodyn*, 2015 WL 5458570, at *18 (citing *Processed Egg*, 851 F. Supp. 2d at 927-935, and *Cardizem*, 105 F. Supp. 2d at 671)). There is out-of-circuit authority to the contrary. *See Hard Disk*, 2021 WL 4306018, at *28-29 (citing *Flonase*, 692 F. Supp. 2d at 545-546). That the Fourth Circuit has read the North Carolina Supreme Court's decision in *Embree Constr. Group, Inc. v. Rafcor, Inc*., 411 S.E.2d 916, 923 (N.C. 1992), to "suggest[] a broader approach to unjust enrichment than is indicated by *Effler* v. *Pyles*, 380 S.E.2d 149 (Ct. App. N.C. 1989), is sufficient to persuade this court to follow the intra-circuit authority. *Metric Constructors, Inc. v. Bank of Tokyo-Mitsubishi, Ltd*., 72 Fed. Appx. 916, 921 (4th Cir. 2003) (unpublished) (per curiam) ("…it is sufficient for a plaintiff to prove that it has conferred some benefit on the defendant, without regard to the directness of the transaction").

g. <u>North Dakota</u>.

*Solodyn* and *Loestrin* support dismissal of the North Dakota unjust enrichment claims for the failure to plead conferral of a direct benefit. *Loestrin*, 410 F. Supp. 3d at 383 (citing *Solodyn*, 2015 WL 5458570, at *18 (citing *Apache Corp. v. MDU Res. Group, Inc*., 603 N.W.2d 891, 895 (N.D. 1999) ("For a complainant to recover, it is sufficient if another has, without justification, obtained a benefit at the direct expense of the complainant, who then has no legal means of retrieving it. ... The essential element in recovering under a theory of unjust enrichment is the receipt of a benefit by the defendant from the plaintiff which would be inequitable to retain without paying for its value;" money saved by the defendant by breaching its contract with a natural gas processor which resulted in the processor buying less gas from the plaintiff was not "a benefit [obtained] at the direct expense" of the plaintiff, rather, the plaintiff's reduction in income resulted

from its use of a percentage of process as a pricing factor in its agreement with the processor) (cleaned up) (citations omitted)))); *see In re Relafen Antitrust Litig.*, 225 F.R.D. 14, 28 (D. Mass. 2004) ("Here, the benefits that SmithKline received were obtained most directly from wholesalers, who, in turn, obtained benefits from end payors….") (citing *Apache*).

Courts holding to the contrary rely on *Opp v. Matzke*, 559 N.W.2d 837 (N.D. 1997), where the North Dakota Supreme Court rejected the defendant property owner's argument that she received no benefit from the well drilled by the plaintiff because she did not personally live at the property: "The well benefits the land; Ruby receives a benefit by the fact she provides her mother and brother a place to live on the property. Because Ruby provides her family a place to live on the property, Ruby benefits from the well." *Id.* at 840; *see Sergeants Benevolent*, 2018 WL 7197233, at *66 (citing *Opp*); *In re Auto. Parts Antitrust Litig.*, 50 F. Supp. 3d 836, 865 (E.D. Mich. 2014). In *Opp*, however, the defendant did receive a benefit from the plaintiff. Here, Takeda is not alleged to have received one from Premera. Presumably, wholesalers did. Consistent with the intra-circuit authority, the court recommends dismissal of the North Dakota unjust enrichment claims.

### h. Rhode Island.

The individual Rhode Island unjust enrichment claim should be dismissed for want of Article III standing. Regarding the proposed class claim, the court declines to depart from Judge Smith and thus declines to recommend dismissal for the failure to plead conferral of a direct benefit. *Loestrin*, 410 F. Supp. 3d at 383. The court in *In re Refrigerant Compressors*, #2:09-MD-02042, 2013 WL 1431756 (E.D. Mich. Apr. 9, 2013), *see* #39 at 56, did not cite any Rhode Island law, and actually cited a case declining to dismiss the Rhode Island unjust enrichment claim. *Id.* at *26 (citing *Aftermarket Filters,* 2010 WL 1416259, at *2-3); *see Packaged Seafoods*, 242 F.

Supp. 3d at 1092 ("However, *Refrigerant Compressors* did not cite a single case so concluding under – or even discussing – Rhode Island law. And the Court has been unable to locate a single Rhode Island case which required conferral of a direct benefit").[45] The court further notes that the Rhode Island Supreme Court regards the third element of an unjust enrichment claim – "that the recipient accepted the benefit under such circumstances that it would be inequitable for the recipient to retain the benefit without paying the value thereof" – to be the "most important" element. *Emond Plumbing & Heating, Inc. v. BankNewport*, 105 A.3d 85, 90 (R.I. 2014) (cleaned up) (citation omitted).

H. <u>Statute of Limitations</u>.

Takeda moves to dismiss several claims that it argues are subject to a limitations period of two years or less. (#39 at 32-33.) The court recommends dismissal of most of the claims that Takeda challenges as untimely on other grounds. Because it does not recommend dismissal of the California unjust enrichment claims and Takeda challenges those claims as untimely, *see* #39 at 59 n.40 (citing Cal. Civ. Proc. Code § 339(1)), the court considers and rejects the statute of limitations argument, without prejudice.

---

[45] In the other case cited by Takeda, *In re Novartis and Par Antitrust Litig.*, #18 Civ. 4361 (AKH), 2019 WL 3841711 (S.D. N.Y. Aug. 15, 2019), *see* #39 at 56, the court relied in part on *Refrigerant Compressors*. *Novartis*, 2019 WL 3841711, at *6. It also cited *J.P. Morgan Chase Bank, N.A. v. Leigh*, #CA 11-246ML, 2011 WL 4351584, at *2 (D. R.I. Aug. 23, 2011) (Almond, M.J.), *report and recommendation adopted without objection*, 2011 WL 4351561 (D. R.I. Sept. 15, 2011). *Novartis*, 2019 WL 3841711, at *6. *J.P. Morgan Chase* did not present circumstances comparable to those presented here. 2011 WL 4351584, at *2 ("Since the Bank did not guarantee Mr. Rayburn's payment for such services, his failure to perform, i.e., to make timely payment for the services, does not create a cause of action against the Bank for payment in the form of an unjust enrichment claim merely because the Bank was a secured creditor of Mr. Rayburn. The Marina's allegations do not plead any circumstances which could reasonably be construed as unjust or inequitable").

First, the court agrees with Takeda that for claims subject to a limitations period of two years or less, Premera's own allegations preclude a fraudulent concealment argument. "The federal doctrine of fraudulent concealment operates to toll the statute of limitations 'where a plaintiff has been injured by fraud and "remains in ignorance of it without any fault or want of diligence or care on his part."'" *Salois v. Dime Sav. Bank of N.Y., FSB*, 128 F.3d 20, 25 (1st Cir. 1997) (quoting *Holmberg v. Armbrecht*, 327 U.S. 392, 397 (1946) (quoting *Bailey v. Glover*, 88 U.S. (21 Wall.) 342, 348 (1847)). The doctrine requires wrongful concealment by the defendants of their actions and the failure of the plaintiff to discover, within the limitations period, the operative facts which form the basis of the cause of action despite the plaintiff's diligent efforts to discover the facts. *Álvarez-Maurás v. Banco Popular of P.R.*, 919 F.3d 617, 626 (1st Cir. 2019); *see Salois*, 128 F.3d at 25-26; *accord Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 194-195 (1997).

"The burden rests squarely on the party pleading fraudulent concealment." *Berkson v. Del Monte Corp.*, 743 F.2d 53, 55 (1st Cir. 1984). Under Fed. R. Civ. P. 9(b), moreover, the facts giving rise to the fraudulent concealment argument must be pled with particularity. *See Epstein v. C.R. Bard., Inc.*, 460 F.3d 183, 189 (1st Cir. 2006); *see also Humana, Inc. v. Biogen, Inc.*, 666 F. Supp. 3d 125, 146 (D. Mass. 2023). The particularity requirement extends to the diligence prong. *Gonzalez-Bernal v. United States*, 907 F.2d 246, 250 (1st Cir. 1990).[46]

---

[46] Premera does not cite relevant California (or other state) law adopting the federal fraudulent concealment doctrine. (#47 at 28.) The court's own research, however, revealed that California law is similar to federal law. *Platt v. Elec. Supply, Inc. v. EOFF Elec. Inc.*, 522 F.3d 1049, 1055 (9th Cir. 2008) (under California law, a complaint must show (1) when the fraud was discovered; (2) the circumstances under which it was discovered; and (3) that the plaintiff was not at fault for failing to discover it or had no actual or presumptive knowledge of facts sufficient to put it on inquiry) (quoting *Baker v. Beech Aircraft Corp.*, 39 Cal. App. 3d 315, 321, 114 Cal. Rptr. 171 (1974)); *Berenson v. Browning-Ferris Indus. of Cal., Inc.*, 7 Cal. 4th 926, 931 Cal. Rptr. 2d 440, 873 P.2d 613 (1994) (the fraudulent concealment doctrine tolls limitations period while the claim is undiscovered or until the plaintiff, by exercise of reasonable diligence, should have discovered it).

Premera alleges that it "had no notice, and no way of obtaining notice, of the anticompetitive nature of Takeda and its co-conspirators' scheme and its own resulting injury *until January 2021*, when Par launched its AG without any competition from Sucampo or any other licensee." (#1 ¶ 234) (emphasis supplied); *see id*. ¶ 235 ("…prior to January 2021…"). Arguably, this is an admission of notice in January 2021, two years and five months before filing the first complaint and two years and ten months before filing this complaint. Regardless, Premera does not allege that it failed to discover, within a limitations period of two years or less, the operative facts which form the basis of the cause of action, despite diligent efforts.

The court turns to Premera's continuing violation claim. (#47 at 26-27.) The federal doctrine applies when "a price-fixing conspiracy…brings about a series of unlawfully high priced sales over a period of years," and provides that "each overt act that is part of the violation and that injures the plaintiff, *e.g.*, each sale to the plaintiff, starts the statutory period running again, regardless of the plaintiff's knowledge of the alleged illegality at much earlier times." *Klehr*, 521 U.S. at 189 (cleaned up) (citation omitted); *see Zenith*, 401 U.S. at 338. According to Premera, under the federal continuing violation doctrine, the claims are timely for Amitiza purchases "within" the limitations periods. (#47 at 27.)

However, Premera does not actually allege Amitiza purchases "within" a limitations period of two years or less. *See* #1 ¶ 223 ("since July 17, 2015"). That is presumably why Premera relies on the allegation that it "continue[s]" to pay higher prices. (#47 at 26) (quoting #1 ¶ 240).

Takeda does not argue that the allegations are insufficient; it argues that Premera does not cite relevant state law adopting the federal continuing violation doctrine. (#54 at 19.) The California Supreme Court applies its continuous accrual theory in the consumer protection context and at least one federal district court has predicted that it would extend the theory to the antitrust

context. *In re Pre-Filled Propane Tank Antitrust Litig.*, MDL #2567, 2019 WL 4796528, at *7 (W.D. Mo. Aug. 21, 2019) (discussing *Aryeh v. Canon Bus. Sols., Inc.*, 292 P.3d 871 (Cal. 2013)); *see also Glumetza*, 611 F. Supp. 3d at 868 (absent binding precedent to the contrary, applying federal continuing violation doctrine to California unjust enrichment claim).

V.      Recommendation.

In summary, the court recommends:

Dismissal of the Alabama antitrust claims; the Illinois antitrust claim on behalf of the proposed class; the Maryland antitrust claims to the extent they seek damages for non-governmental indirect purchasers before October 1, 2017; the Mississippi antitrust claims; and the Utah antitrust claims;

Dismissal of the Missouri consumer protection claim; the New Jersey consumer protection claims; the New York consumer protection claims; and the Oklahoma consumer protection claims, as withdrawn;

Dismissal of the Arizona consumer protection claims; the California consumer protection claims to the extent that they are brought under the "fraudulent" prong; the District of Columbia consumer protection claims; the Idaho consumer protection claims; the Illinois consumer protection claims; the Maine consumer protection claims; the Massachusetts consumer protection claims; the Michigan consumer protection claims; the Minnesota consumer protection claim; the New Hampshire consumer protection claims; the Oregon consumer protection claims; the Pennsylvania consumer protection claims; the South Dakota consumer protection claims; the Utah consumer protection claims; the Vermont consumer protection claim; the Virginia consumer protection claims; the West Virginia consumer protection claims; and the Wisconsin consumer protection claims;

Dismissal of the individual unjust enrichment claims under Arkansas, Delaware, Hawaii, Kansas, Minnesota, Missouri, New Mexico, Puerto Rico, Rhode Island, South Dakota, Vermont, and Wyoming laws for want of Article III standing;

Dismissal of the Colorado, Connecticut, and Maryland unjust enrichment claims to the extent they seek damages before the effective dates of the repealer amendment and statutes;

Dismissal of the Alabama unjust enrichment claims; the Arkansas unjust enrichment claim on behalf of the proposed class; the Delaware unjust enrichment claim on behalf of the proposed class; the Florida unjust enrichment claims; the Georgia unjust enrichment claims; the Idaho unjust enrichment claims; the Illinois unjust enrichment claim on behalf of the proposed class; the Indiana unjust enrichment claims; the Kentucky unjust enrichment claims; the Louisiana unjust enrichment claims; the Massachusetts unjust enrichment claims; the Michigan unjust enrichment claims; the Missouri unjust enrichment claim on behalf of the proposed class; the Montana unjust enrichment claims; the New Jersey unjust enrichment claims; the North Dakota unjust enrichment claims; the Oklahoma unjust enrichment claims; the Pennsylvania unjust enrichment claims; the Puerto Rico unjust enrichment claim on behalf of the proposed class; the South Carolina unjust enrichment claims; the Utah unjust enrichment claims; the Virginia unjust enrichment claims; and the Wyoming unjust enrichment claim on behalf of the proposed class.

Should this Report and Recommendation be adopted in full, the following claims would proceed. "I" denotes individual claims only while "C" denotes proposed class claims only.

| | Conspiracy and Monopolization (Counts I and II) (#1 ¶¶ 257, 268) | Consumer Protection (Count III) (#1 ¶ 278) | Unjust Enrichment (Count IV) (#1 ¶ 283) |
|---|---|---|---|
| Alabama | | | |
| Arizona | X | | X |
| Arkansas | | | |
| California | X | X (as limited) | X |
| Colorado | | | X (as limited) |
| Connecticut | | X (as limited) | X (as limited) |
| Delaware | | | |
| District of Columbia | X | | X |
| Florida | X | X | |
| Georgia | | | |
| Hawaii | X (C) | | X (C) |
| Idaho | | | |
| Illinois | X (I) | | X (I) |
| Indiana | | | |
| Iowa | X | | X |
| Kansas | X (C) | | X (C) |
| Kentucky | | | |
| Louisiana | | | |
| Maine | X | | X |
| Maryland | X (as limited) | | X (as limited) |
| Massachusetts | | | |
| Michigan | X | | |
| Minnesota | X (C) | | X (C) |
| Mississippi | | | X |
| Missouri | | | |
| Montana | | | |
| Nebraska | X | X | X |
| Nevada | X | X | X |
| New Hampshire | | | X |
| New Jersey | | | |
| New Mexico | X (C) | X (C) | X (C) |
| New York | X | | X |
| North Carolina | X | | X |
| North Dakota | X | | |
| Oklahoma | | | |
| Oregon | X | | X |

| | | | |
|---|---|---|---|
| Pennsylvania | | | |
| Puerto Rico | | | |
| Rhode Island | X (C) | | X (C) |
| South Carolina | | | |
| South Dakota | X | | X |
| Tennessee | X | | X |
| Utah | | X | X |
| Vermont | X (C) | | X (C) |
| Virginia | | | |
| West Virginia | | | X |
| Wisconsin | X | | X |
| Wyoming | | | |

VI.    Review by District Judge.

Objections to this Report and Recommendation must comply with Fed. R. Civ. P. 72(b)(2), which requires that objections be made in writing and filed with the Clerk's Office within fourteen days of service of the Report and Recommendation. The written objections must specifically identify the portions of the Report and Recommendation to which the party objects and the grounds for the objections. A party's failure to comply with Fed. R. Civ. P. 72(b)(2) will preclude further appellate review. *Santos-Santos v. Torres-Centeno*, 842 F.3d 163, 168-169 (1st Cir. 2016).

August 21, 2024                                    /s/M. Page Kelley
                                                   M. PAGE KELLEY
                                                   United States Magistrate Judge