# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE AMITIZA ANTITRUST LITIGATION | Civil Action Nos. 1:21-cv-11057-MJJ |

# MEMORANDUM IN SUPPORT OF MOTION TO REQUIRE TAKEDA TO WITHDRAW LETTERS TO ABSENT CLASS MEMBERS

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ..................................................................................................... 1

II. BACKGROUND ....................................................................................................... 2

III. ARGUMENT ............................................................................................................. 3

    A. Standard of Review ....................................................................................... 3

    B. Takeda's communication with the absent class members is coercive and misleading. ..................................................................................................... 5

        1. Takeda's arbitrary deadline places false pressure on the absent class members to make a decision. ........................................................ 5

        2. Takeda does not provide the absent class members with information about putative class counsel. .......................................... 6

        3. The letters fail to explain that the absent class members have defenses to any motion to compel arbitration and interprets the contract in its favor. ...................................................................... 7

IV. CONCLUSION .......................................................................................................... 8

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Cheverez v. Plains all Am. Pipeline, LP.*,
   No. 15-CV-4113, 2016 WL 861107 (C.D. Cal. Mar. 3, 2016)....................................... 7, 8

*County of Santa Clara v. Astra USA, Inc.*,
   No. 05-CV-3740, 2010 WL 2724512 (N.D. Cal. July 8, 2010).........................................8

*In re Cox Enterprises, Inc. Set-top Cable Television Box Antitrust Litig.*,
   790 F.3d 1112 (10th Cir. 2015) .......................................................................................8

*Davine v. Golub Corp.*,
   No. 12-CV-30136-MGM, 2014 WL 5427006 (D. Mass. Oct. 24, 2014) ........................4

*FWK Holdings LLC et al v. Takeda Pharmaceutical Company Ltd. et al.*,
   No. 21-CV-11057 (D. Mass. June 25, 2021) ..................................................................5

*Gulf Oil Co. v. Bernard*,
   452 U.S. 89 (1981)...........................................................................................................3

*Hill v. Xerox Bus. Servs., LLC*,
   59 F.4th 457 (9th Cir. 2023) ............................................................................................8

*Jones v. Jeld-Wen, Inc.*,
   250 F.R.D. 554 (S.D. Fla. 2008)................................................................................. 4, 6

*Jubinville v. Hill's Pet Nutrition, Inc.*,
   No. 19-CV-74-WES, 2019 WL 1584679 (D.R.I. Apr. 12, 2019).....................4, 5, 7, 8

*Kleiner v. First Nat. Bank of Atlanta*,
   751 F.2d 1193 (11th Cir. 1985).......................................................................................4

*In re McKesson HBOC, Inc. Sec. Litig.*,
   126 F. Supp. 2d 1239 (N.D. Cal. 2000) ...........................................................................5

*McWilliams v. Advanced Recovery Sys., Inc.*,
   176 F. Supp. 3d 635 (S.D. Miss. 2016)............................................................................5

*In re School Asbestos Litig.*,
   842 F.2d 671 (3d Cir. 1988) ............................................................................................4

*Slamon v. Carrizo (Marcellus) LLC*,
   3:16-CV-2187, 2018 WL 3615989 (M.D. Pa. July 27, 2018) .........................................4

*Talavera v. Leprino Foods Co.*,
    No. 1:15-CV-105, 2016 WL 880550 (E.D. Cal. Mar. 8, 2016) ........................................................ 4

**Other Authorities**

Fed. R. Civ. P. 23 ................................................................................................................................ 4, 5

I.   INTRODUCTION

Takeda attempts to put its finger on the scale as to the number of members of the direct purchaser class by intimidating two of the smaller absent class members, Caesar Castillo, LLC and Drogue Ria Betances, Inc. (the absent class members), into withdrawing from the class on a claim of arbitration that has long been waived. Takeda sent a coercive and misleading letter to each of these absent class members that must be corrected and withdrawn.

*First*, Takeda has set an arbitrary and misleading deadline by which it purports to require the absent class members to decide if they will exclude themselves from the class. There is no basis for such a deadline in the schedule set by the Court and it implies a sense of urgency that simply does not exist, particularly given the three years that have passed since Takeda had notice of its potential claim for arbitration. Putting such unnecessary pressure on the absent class members to quickly respond on an important issue is coercive.

*Second*, the letters fail to provide contact information for putative class counsel or inform the absent class members that they could seek their own counsel to evaluate Takeda's claims. Takeda's "take our word for it" communication can readily mislead the absent class members into thinking they have no choice and into not seeking the legal advice to which they are entitled. This issue is compounded by Takeda providing its interpretation of the contracts between it and the absent class members, without telling them that their own counsel may provide differing advice.

*Third*, the letters imply that the absent class members have no choice but to arbitrate. This is not true and is misleading. The absent class members have meritorious defenses to any attempt Takeda may make to force them into arbitration. Takeda has known that the absent class members were part of the proposed class since the case was filed in 2021, and (presumably) knew which class members could be subject to arbitration. Despite that, Takeda

did nothing to assert, or even mention, any possible arbitration right until now – more than three years later. Much like as argued in the Meijer motion, Takeda has waived its ability to compel the absent class members to arbitration. But the letters make no mention of any such possibility, or that the absent class members can oppose any effort by Takeda to compel arbitration at all.

Takeda should be required to send a corrective letter to the absent class members, approved by putative class counsel, that withdraws its demand for arbitration and should be ordered to have no further contact with the absent class members as to any issue involving this case.

## II.   BACKGROUND

On August 13, 2024, more than three years after the initial complaint in the case was filed, Takeda first raised the possibility of moving to compel arbitration of the absent class members. It did so via email, where it provided the direct purchaser plaintiffs with less than 48 hours to determine if we individually represented these class members (we do not), and decide if we would accept service of papers related to compelling those absent class members to arbitration.[1] After as much consideration as was possible on Takeda's short deadline, the direct purchaser plaintiffs responded that we do not individually represent those absent class members.[2] The direct purchaser plaintiffs received no further communication from Takeda on the issue until Takeda sent the letters in question.

On August 21, 2024, Takeda sent each of the absent class members a misleading and coercive letter, demanding that they withdraw from the class by August 31, 2024, or face

---

[1] *See* Declaration of Erin C. Burns Ex. 1 (correspondence from J. Barlow to J. MacAuley, Aug. 13, 2024) (Burns Decl.).

[2] *See id.* Ex. 2 (correspondence from E. Burns to J. Barlow, Aug. 14, 2024).

motions to compel arbitration.[3] The next day, August 22, 2024, the direct purchaser plaintiffs asked that Takeda withdraw the letters by the end of the day on August 23, 2024, citing several reasons why the letters were misleading and coercive.[4] In an email that sought to shift the blame for Takeda's inappropriate communication with absent class members, Takeda declined to withdraw the letters.[5]

The direct purchaser plaintiffs have had short discussions with counsel for the absent class members, but that is insufficient to cure the damage done by Takeda's letters, which were sent directly to the absent class members, which are Takeda's customers. The statements made in the letters could be sufficient to convince the absent class members to surrender their claims to avoid potentially antagonizing a supplier.

The absent class members have been just that – absent. They should not now be burdened with potential arbitration motions, under threat of losing their claims in the class action, particularly because Takeda has long waived its claim by waiting until more than three years after this suit was filed when it was on notice that direct purchasers of Amitiza, like the absent class members, were included in the class.

### III.   ARGUMENT

**A.   Standard of Review.**

Rule 23(d) of the Federal Rules of Civil Procedure provides the Court with "both the duty and broad authority" to regulate communication with absent class members.[6] A Court should step in and exercise its Rule 23(d) authority when communications "have been found to

---

[3] *See id.* Ex. 3 and 4 (correspondence from J. Barlow to Cesar Castillo, LLC, Aug. 21, 2014; correspondence from J. Barlow to Drogueria Betances, Inc., Aug. 21, 2014).

[4] *See id.* Ex. 5 (correspondence from E. Burns to J. Barlow, Aug. 22, 2024).

[5] *See id.* Ex. 6 (correspondence from J. Barlow to E. Burns, Aug. 23, 2024).

[6] *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99–100 (1981) (citing Fed. R. Civ. P. 23).

be violative of the principles of Rule 23."[7] Examples of communications that violate the principles of Rule 23 include "communications that misrepresent the status or effect of the pending action, communications that coerce prospective class members into excluding themselves from the litigation, and communications that undermine cooperation with or confidence in class counsel."[8] It is "patently misleading" to "induce putative class members into releasing claims without knowledge of the possibility of recovery through [ ] current litigation; it also does not afford putative class members a meaningful chance to evaluate the claims and their likelihood of success with counsel."[9] There is no requirement for a finding of actual misconduct. "[T]he key is whether there is 'potential interference' with the rights of the parties in a class action."[10] The movant bears the burden of making this showing.[11]

When assessing whether a communication is abusive, the facts must be examined in totality.[12] A party's intent is not conclusive of the Court's determination in the inquiry as to whether a communication is abusive.[13] A business relationship increases the likelihood of serious abuses.[14]

---

[7] *Jubinville v. Hill's Pet Nutrition, Inc.*, No. 19-CV-74-WES, 2019 WL 1584679, at *7 (D.R.I. Apr. 12, 2019) (quoting *Jones v. Jeld-Wen, Inc.*, 250 F.R.D. 554, 561 (S.D. Fla. 2008)).

[8] *Id.* (quoting *Jones*, 250 F.R.D. at 561).

[9] *Slamon v. Carrizo (Marcellus) LLC*, 3:16-CV-2187, 2018 WL 3615989, at *3 (M.D. Pa. July 27, 2018).

[10] *Jubinville*, 2019 WL 1584679, at *7 (quoting *Slavkov v. Fast Water Heater Partners I, LP*, No. 14-CV-4324, 2015 WL 6674575, at *2 (N.D. Cal. Nov. 2, 2015)); *see also In re School Asbestos Litig.*, 842 F.2d 671, 683 (3d Cir. 1988) ("Rule 23(d) does not . . . require a finding of *actual* harm . . . .").

[11] *Id.* (citing *Cox Nuclear Med. v. Gold Cup Coffee Servs., Inc.*, 214 F.R.D. 696, 697–98 (S.D. Ala. 2003)).

[12] *Jubinville*, 2019 WL 1584679, at *8. *See also Talavera v. Leprino Foods Co.*, No. 1:15-CV-105, 2016 WL 880550, at *5 (E.D. Cal. Mar. 8, 2016) ("Whether a communication is misleading or coercive – and therefore warrants judicial intervention – often depends not on one particular assertion, but rather the overall message or impression left by the communication.").

[13] *Jones*, 250 F.R.D. at 562.

[14] *See Davine v. Golub Corp.*, No. 12-CV-30136-MGM, 2014 WL 5427006, at *3 (D. Mass. Oct. 24, 2014) ("Misleading or coercive communications with potential class members that could or are intended to undermine participation in a class or collective action are of great concern. When an ongoing business relationship . . . exists, any communications are more likely to be coercive."); *see also Kleiner v. First Nat. Bank of Atlanta*, 751 F.2d 1193,

**B.    Takeda's communication with the absent class members is coercive and misleading.**

**1.    Takeda's arbitrary deadline places false pressure on the absent class members to make a decision.**

Takeda's letters demand the absent class members decide whether or not to remain in the class by August 31, 2024, under threat of being compelled to arbitration. Arbitrary deadlines have been held to be coercive because "they create a risk that [an absent class member] would be misled into believing that failure [to comply] eviscerates any possibility of recovery."[15] Such arbitrary deadlines create "a gratuitous air of urgency."[16] That is precisely what Takeda has done here. There is no reason that the absent class members must make their decision about whether or not to withdraw from the class in a mere ten days. Particularly not when Takeda has known of the class definition in this case since it was filed, and presumably knew with which of its customers it had mandatory arbitration agreements.

When the initial complaint in this case was filed on June 25, 2021, the class was defined as:

> All persons and entities in the United States and its territories that directly purchased Amitiza, authorized generic Amitiza and/or generic Amitiza in any form, from January 1, 2016 until the effects of defendants' conduct cease.[17]

---

1202 (11th Cir. 1985) ("[I]f the class and class opponent are involved in an ongoing business relationship, communications from the class opponent to the class may be coercive.") (citation omitted)).

[15] *Jubinville*, 2019 WL 1584679, at *8.

[16] *See In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1239, 1245 (N.D. Cal. 2000) (holding communication "misleading, if not intentionally deceptive," where"[t]he solicitations communicate a gratuitous air of urgency, both by failing to provide any information regarding the timetable for a class action . . . and by directing prospective claimants to meet an arbitrary deadline . . . ."); *see also McWilliams v. Advanced Recovery Sys., Inc.*, 176 F. Supp. 3d 635, 641 (S.D. Miss. 2016) (letter "did not comply with Rule 23" where it set an "arbitrary" 10-day deadline).

[17] *FWK Holdings, LLC, Meijer Inc., and Meijer Distribution, Inc. v. Takeda Pharmaceutical Co. Ltd., Takeda Pharmaceuticals USA, Inc., Endo Int'l PLC, and Par Pharmaceutical, Inc.*, No. 21-CV-11057, Class Action Complaint and Demand for Jury Trial (D. Mass. June 25, 2021) (ECF No. 1).

This definition included the absent class members, each of which purchased Amitiza directly from Takeda. Takeda could have readily, in June 2021, determined what entities purchased Amitiza directly, reviewed its contracts with those entities, and raised arbitration at that time, more than three years ago. Instead, it waited until after the direct purchaser plaintiffs demanded production of Takeda's agreements with its direct customers[18] and brought the mandatory arbitration clauses to its attention[19] to assert its purported arbitration rights.

Takeda attempts to shift the blame for the deadline to the direct purchaser plaintiffs by complaining about the direct purchaser plaintiffs' insistence that Takeda promptly assert its arbitration rights,[20] which it already has not. The 3-year delay in asking for arbitration renders Takeda's arbitrary deadline coercive, and the deadline is clearly designed to intimidate the absent class members into making a decision without sufficient time to consult their own attorneys (or putative class counsel). Particularly as Takeda waited until the end of August when people are taking last vacations and getting children ready to go back to school. The letters, and demand for arbitration, should be withdrawn for this reason alone.

> **2.    Takeda does not provide the absent class members with information about putative class counsel.**

Takeda's letters also should have informed the absent class members that they can consult with their own attorneys and should have provided contact information for putative class counsel.[21] Where defense counsel provides "no suggestion that the consumer may proceed more slowly and confer with counsel about a potential claim, the mischief potentially wrought

---

[18] *See* Burns Decl. Ex. 7 (Direct Purchaser Plaintiffs' Second Request for Product of Documents to Takeda, Mar. 22, 2024).

[19] *See* Meijer's Opp. to Takeda's Mot. to Compel Arb., at 2 & n.3, ECF 265.

[20] *See* Ex. 6 (correspondence from J. Barlow to E. Burns, Aug. 23, 2024).

[21] *See Jones*, 250 F.R.D. at 561 ("'[u]nsupervised, unilateral communications with the plaintiff class sabotage the goal of informed consent by urging exclusion on the basis of a one-sided presentation of the facts, without opportunity for rebuttal.'" (quoting *Kleiner*, 751 F.2d at 1202)).

by the reference to a . . . deadline . . . has a potentially adverse impact on the rights of absent putative class members.[22]

At a bare minimum, Takeda should have provided contact information for putative class counsel prominently in its letters, so as to provide the absent class members with a source of information about the absent class members' ability to oppose any effort by Takeda to compel arbitration three years after the case was filed when Takeda initially received notice that these claims were asserted and arbitration was a possibility.[23] The fact that some counsel were listed as copied on the letters, and contact information was listed on the complaint attached to Takeda's letters does not solve this deficiency. The absent class members may not have known to look for contact information there, or may not have read the entire near 100-page complaint in its entirety and reached the last page that provided the contact information.[24]

### 3. The letters fail to explain that the absent class members have defenses to any motion to compel arbitration and interprets the contract in its favor.

The letters are misleading and coercive because they imply that the absent class members have no choice but to arbitrate, or to withdraw from the class completely. This is not correct, as Takeda well knows. Takeda has already moved to compel Meijer, a proposed class representative, to arbitration, and Meijer has opposed, asserting that Takeda waived its right to arbitrate by waiting a year after learning of the agreement under which it sought arbitration to attempt to assert those rights. The parties recently completed briefing those issues, and the motion is pending before this Court.

---

[22] *Jubinville*, 2019 WL 1584679, at *8 (thirty-day deadline).

[23] *Cheverez v. Plains all Am. Pipeline, LP*, No. 15-CV-4113, 2016 WL 861107, at *4 (C.D. Cal. Mar. 3, 2016) (holding communication misleading because it failed to provide contact information for counsel).

[24] To the extent Takeda argues that putative class counsel for the direct purchaser class should have communicated affirmatively with absent class members about provisions that Takeda now argues mandate arbitration of this dispute, it is not putative class counsel's job to help Takeda assert and defend its rights. And given the amount of time that has passed since Takeda was on notice of its potential claim, it was reasonable to think that Takeda had decided not to pursue arbitration.

As Takeda has waited more than three years after the filing of the case to raise the possibility of arbitration with the absent class members, it undoubtedly knew that the absent class members can argue that Takeda waived its right to assert its claims – and with abundant basis to do so.[25] But, it made no such disclosure to the absent class members. Instead, it blithely asserted that the absent class members have already agreed to arbitration, and thus have no option except to either engage in arbitration, or surrender their claims entirely. Communications are misleading when they do not permit putative class members to fully evaluate their likelihood of recovering through a class action.[26]

Takeda's letters also interpret the meaning of the contract for the absent class members and, again, does not disclose that the absent class members can and should seek their own counsel to evaluate Takeda's claim.[27]

## IV.   CONCLUSION

For the reasons set forth above, Takeda should be required to send a subsequent communication to the absent class members, withdrawing its previous letters and arbitration demand. The communication should be approved by putative class counsel. Takeda also should be ordered to have no further contact with the absent class members as to any issue involving this case.

---

[25] *See Hill v. Xerox Bus. Servs., LLC*, 59 F.4th 457, 473 (9th Cir. 2023) (finding the defendants' six-year litigation strategy, despite knowing of agreements to arbitrate with absent class members, constituted waiver); *see also In re Cox Enterprises, Inc. Set-top Cable Television Box Antitrust Litig.*, 790 F.3d 1112, 1119 (10th Cir. 2015) (finding the defendants' extensive discovery and opposition of a class certification motion, despite knowledge of arbitration claim against absent class members to be gamesmanship and constituting waiver).

[26] *See Cheverez v*, 2016 WL 861107, at *3–4; *see also County of Santa Clara v. Astra USA, Inc.*, No. 05-CV-3740, 2010 WL 2724512, at *4 (N.D. Cal. July 8, 2010) (invalidating an accord and satisfaction which precluded participation in a class action where the letter accompanying the check only included the name of the case and an explanation that it was a putative class action; defendant "was required to provide enough information so that recipients would not be misled about the strength or extent of the [class] claims").

[27] *See Jubinville*, 2019 WL 1584679, at *8.

Dated: August 28, 2024                                    Respectfully submitted,

**HAGENS BERMAN SOBOL SHAPIRO LLP**

*/s/ Erin C. Burns*
Erin C. Burns (*pro hac vice*)
Thomas M. Sobol (BBO #471770)
Jessica R. MacAuley (BBO #685983)
Rebekah Glickman-Simon (BBO # 708043)
Daniel Polonsky (BBO #709609)
1 Faneuil Hall Square
Boston, MA 02109
Tel: (617) 482-3700
Fax: (617) 482-3003
erinb@hbsslaw.com
tom@hbsslaw.com
jessicam@hbsslaw.com
rebekahgs@hbsslaw.com
danielp@hbsslaw.com

Mark T. Vazquez (admitted *pro hac vice*)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
455 N. Cityfront Plaza Dr.
Suite 2410
Chicago, IL 60611
Tel: (708) 628-4962
Fax: (708) 628-4950
markv@hbsslaw.com

*Attorneys for FWK Holdings LLC, Meijer, Inc., Meijer Distribution Inc., and the Proposed Class*

Michael L. Roberts (admitted *pro hac vice*)
Stephanie E. Smith (admitted *pro hac vice*)
**ROBERTS LAW FIRM US, PC**
20 Rahling Cir.
Little Rock, AR 72223
Tel: (501) 821-5575
mikeroberts@robertslawfirm.us
stephaniesmith@robertslawfirm.us

*Attorneys for KPH Healthcare Services, Inc., a/k/a. Kinney Drugs, Inc. and the Proposed Class*

Joseph M. Vanek (BBO # 551083)

David P. Germaine (admitted *pro hac vice*)
Eamon P. Kelly (admitted *pro hac vice*)
John P. Bjork (admitted *pro hac vice*)
**SPERLING & SLATER, LLC**
55 W. Monroe St., Suite 3200
Chicago, IL 60603
Tel: (312) 641-3200
jvanek@sperling-law.com
dgermaine@sperling-law.com
ekelly@sperling-law.com
jbjork@sperling-law.com

John D. Radice (*pro hac vice*)
**RADICE LAW FIRM, P.C.**
475 Wall St.
Princeton, NJ 08540
Tel: (646) 245-8502
Fax: (609) 385-0745
jradice@radicelawfirm.com

*Attorneys for FWK Holdings LLC, Meijer, Inc., Meijer Distribution Inc., and the Proposed Class*

## CERTIFICATE OF SERVICE

      I, Erin C. Burns, certify that, on this date, the foregoing document was filed electronically via the Court's CM/ECF system, which will send notice of the filing to all counsel of record. Parties may access the filing through the Court's system.

Dated: August 28, 2024                                          */s/ Erin C. Burns*