UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| IN RE AMITIZA ANTITRUST LITIGATION </br></br> THIS DOCUMENT RELATES TO: </br> Proposed End-Payor Class Action </br> DOCKET NO. 23-12918-MJJ | Master Docket No. 21-cv-11057-MJJ |

# MEMORANDUM OF DECISION

September 30, 2024

JOUN, D.J.

On August 21, 2024, Magistrate Judge M. Page Kelley issued a seventy-five-page Report and Recommendation ("R&R"), [Doc. No. 75], in which she recommended that the Court grant in part and deny in part the Motion to Dismiss ("Motion") filed by Takeda Pharmaceutical Company Limited, Takeda Pharmaceuticals U.S.A., Inc., and Takeda Pharmaceuticals America, Inc. (collectively, "Takeda"), [Doc. No. 39]. Premera Blue Cross ("Premera") did not file any objection to the R&R. Takeda filed Objections to the R&R on September 4, 2024, [Doc. No. 78], which Takeda revised the following day (the "Objections"), [Doc. No. 79]. Premera filed a Response to Takeda's Objection on September 18, 2024. [Doc. No. 85].

## I. LEGAL STANDARD

Having reviewed the record in its entirety, the Court makes a *de novo* determination as to the parts of the R&R to which Takeda has specifically objected. *See* Fed. R. Civ. P. 72(b). The

Court "may accept, reject, or modify, in whole or in part," the recommendation of Magistrate Judge Kelley, "or recommit the matter to [her] with instructions." 28 U.S.C.A. § 636(b)(1).

## II. ANALYSIS

### A. Objection as to Antitrust Standing

The R&R "recommend[ed] that Premera be found to have plausibly demonstrated antitrust standing." [Doc. No. 75 at 17]. "Assum[ing] without deciding that federal antitrust standing law applies," [*id.* at 17 n.20], the R&R analyzed this issue under a multi-factor, balancing test from *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters* ("*ACG*"), 459 U.S. 519 (1983). *See* [Doc. No. 75 at 17–18]. Specifically, the R&R looked to:

> (1) the causal connection between the alleged antitrust violation and harm to the plaintiff; (2) an improper motive; (3) the nature of the plaintiff's alleged injury and whether the injury was of a type that Congress sought to redress with the antitrust laws ("antitrust injury"); (4) the directness with which the alleged market restraint caused the asserted injury; (5) the speculative nature of the damages; and (6) the risk of duplicative recovery or complex apportionment of damages.

[*Id.* at 18 (quoting *Vazquez-Ramos v. Triple-S Salud, Inc.*, 55 F.4th 286, 293 (1st Cir. 2022))].

To start, the R&R easily concluded that Premera plausibly alleged an improper motive, which Takeda did not contest, and that paying supracompetitive prices was a type of injury that the antitrust laws have sought to redress. [*Id.* at 19]. The R&R also rejected Takeda's argument that local Blue plans might sue for the same Amitiza purchases as Premera, causing duplicative recovery. [*Id.*]. Next, the R&R concluded that the presence of direct purchasers and retailers did not preclude antitrust standing, because Premera is "significantly motivated" by "natural economic self-interest." [*Id.* at 20 (quoting *In re DDAVP Direct Purchaser Antitrust Litig.*, 585 F.3d 677, 688 (2d Cir. 2009) (cleaned up))]. And the R&R added that "in *Illinois Brick* repealer states at least, 'duplicative recovery is a necessary consequence that flows from indirect purchaser recovery and no bar against [antitrust] standing." [*Id.* (quoting *In re Propranolol*

*Antitrust Litig.*, 249 F. Supp. 3d 712, 726 (S.D.N.Y. 2017))]. Finally, after dismissing the notion that difficult damages calculations meant Premera's claims rested "on some abstract conception or speculative measure of harm," [*id.* (quoting *AGC*, 459 U.S. at 543), the R&R relied on a string of cases that have denied motions to dismiss end-payor claims against prescription drug manufacturers based on their anticompetitive conduct causing higher prices, [*id.* at 21 (collecting cases)].

Takeda claims that the R&R's recommendation erred, raising two main points. [Doc. No. 79 at 10–14]. Neither ground convinces the Court, however, that the recommended result is wrong.

*First*, despite Takeda's contrary position, [*id.* at 11–12], the Court agrees with the R&R that Premera adequately pleaded its payments for Amitiza prescriptions. [Doc. No. 1 at ¶¶ 9 (alleging that "[w]hen Premera purchases prescription drugs, such as Amitiza . . . from third-party pharmacies . . . . Premera incurs substantial costs"), 223 (nearly 7,000 payments for Amitiza identified by state of purchase)].[1] Premera is therefore "significantly motivated due to their "natural economic self-interest" in paying the lowest price possible." *DDAVP*, 585 F.3d at 689. Any "'[i]nferiority' to other potential plaintiffs can be relevant, but it is not dispositive." *Id.* As the R&R notes, Takeda has not distinguished a line of authorities greenlighting indirect purchasers' antitrust standing against prescription manufacturers. [Doc. No. 75 at 21 (collecting cases)]; *see also In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*, 64 F. Supp. 3d 665, 698 (E.D. Pa. 2014) (determining that "whether there is a more direct victim— must . . . carry little weight in states that allow suits to be brought by indirect purchasers," because "[s]trict application of this factor, in the context of indirect purchasers, would always

---

[1] The Court notes that Takeda has withdrawn "any suggestion that local Blue Plans first pay pharmacies for Premera members' out-of-state purchases of brand or generic Amitiza." [Doc. No. 83 at 1].

caution against standing, an outcome incompatible with the purpose of *Illinois Brick* repealer statutes").

*Second*, Takeda faults the R&R's statement that in *Illinois Brick*-repealer states duplicative recovery is a "necessary consequence that flows from indirect purchaser recovery," with a case parenthetical that such "duplicative recovery is permissible" as these states' "policy decision." [Doc. No. 75 at 20]; *see* [Doc. No. 79 at 12–13]. In contesting this statement, Takeda invokes examples of *Illinois Brick*-repealer states that would still limit duplicative, indirect buyer recovery by statute. [*Id.*]. Yet, these examples only highlight that—even if duplicate recovery may not be necessary or permissible in some *Illinois Brick*-repealer states—these states expect that duplicative, indirect buyer recovery may feasibly be minimized, if not avoided, in any damages calculations. What is more, it would be quite illogical for *Illinois Brick*-repealer states to reject *Illinois Brick* (and in some cases enact provisions to limit duplicative damages for indirect buyers), just to apply *Illinois Brick*'s analysis to bar claims by indirect buyers under *ACG*'s prudential standing grounds. The R&R was right not to nullify states' *Illinois Brick*-repealer laws, nor to ignore *Illinois Brick*-repealer states' public policies. *See In re Loestrin 24 FE Antitrust Litig.*, 410 F. Supp. 3d 352, 371–76 (D.R.I. 2019); [Doc. No. 85 at 13 (collecting other intra-circuit cases)].

Takeda's objection is overruled, and the Motion is denied as to this basis. However, the Court modifies the R&R's disputed statement concerning duplicative recovery as explained above.

### B. Objection as to Reverse Payment

The R&R did not recommend dismissal of Premera's claims for failure to plead a reverse payment. [Doc. No. 75 at 22]. This is consistent with Judge Stearns' prior ruling in this matter on

4

the same issue with respect to the direct purchasers. *In re Amitiza Antitrust Litig.*, No. 21-11057, 2022 WL 17968695, at *4 (D. Mass. Dec. 27, 2022). Although Takeda "concede[d] that Premera alleges essentially the same facts and reverse-payment theories as the direct purchasers," it did "not develop an argument for reconsideration of Judge Stearns' ruling." [Doc. No. 75 at 22 (cleaned up)]. The Court agrees that there is no basis to revisit Judge Stearns' decision. Takeda's objection is overruled, and the Motion is denied as to this basis.

### C. Objections as to State Antitrust Claims

#### 1. Florida

The R&R did not recommend dismissal of Premera's antitrust claims under Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201, *et seq.* [Doc. No. 75 at 23]. Takeda objects that the separate Florida Antitrust Act, Fla. Stat. § 542.15, *et seq.*, has been read to bar antitrust claims by indirect purchasers, but Takeda still does not specifically address the authorities relied on by the R&R. [Doc. No. 79 at 15]; *see* [Doc. No. 75 at 23 (noting Takeda "does not address these cases"). These authorities include a Florida intermediate appeals court that authorized FDUTPA antitrust claims by indirect purchasers—a decision which Takeda itself invokes but fails to square with its objection. *See Mack v. Bristol-Myers Squibb Co.*, 673 So. 2d 100, 109 (Fla. Dist. Ct. App. 1996) ("[T]he Florida DTPA clearly expresses the legislative policy to authorize consumers (that is, indirect purchasers) to bring actions under the Florida DTPA for price-fixing conduct.").[2] Takeda's objection is overruled. These claims may proceed.

---

[2] Takeda's only other authority does not help its cause; there, the federal district court dismissed a Florida Antitrust Act claim but allowed claims under the FDUTPA to proceed. *See Sergeants Benevolent Ass'n Health & Welfare Fund v. Actavis, plc*, No. 15-cv-6549, 2018 WL 7197233, at *39–40 (S.D.N.Y. Dec. 26, 2018). Nor has Takeda demonstrated that anything meaningful turns on the semantics of calling the FDUTPA claims "antitrust" or "consumer protection" claims.

### 2. District of Columbia

The R&R did not recommend that Premera's District of Columbia antitrust claims be dismissed. [Doc. No. 75 at 27–28]. This is consistent with the "majority position" that "nationwide antitrust violations, the antitrust impact of which was felt within each state" generally satisfy claim requirements of intrastate conduct or effects. [*Id.* at 27 (quoting Doc. No. 47 at 33 (quoting *Loestrin*, 410 F. Supp. 3d at 375)]. In objecting, Takeda posits that the District of Columbia's antitrust statue applies only to intrastate *conduct*, so the merely intrastate *effects* alleged by Premera should fail to state a claim. [Doc. No. 79 at 15–17]; *see* D.C. Code § 28-4502 (declaring that "[e]very contract, combination in the form of a trust or otherwise, or conspiracy in restraint of trade or commerce all or any part of which is within the District of Columbia is . . . illegal."); *id.* at § 28-4503 ("It shall be unlawful for any person to monopolize, attempt to monopolize, or combine or conspire with any other person or persons to monopolize any part of trade or commerce, all or any part of which is within the District of Columbia."). As Premera counters, however, Takeda has not distinguished cases concluding that intrastate effects do suffice for a District of Columbia antitrust claim. [Doc. No. 85 at 16–17].

The natural reading of the District of Columbia's antitrust statute is that it covers antitrust violations affecting any trade or commerce within the District of Columbia. Takeda has failed to explain its strained interpretation of the statutory text, limiting the law's coverage to antitrust violations that occur by conduct within D.C. Such a cramped reading clashes with the statute's broadly stated purpose and the harmonization provision that its interpretation be guided by the federal courts' readings of comparable antitrust statutes. *See* D.C. Code § 28-4501(b) ("The purpose of this chapter is to promote the unhampered freedom of commerce and industry throughout the District of Columbia by prohibiting restraints of trade and monopolistic

practices."); D.C. Code Ann. § 28-4515 ("[I]n construing this chapter, a court of competent jurisdiction may use as a guide interpretations given by federal courts to comparable antitrust statutes."); *cf. United States v. Nippon Paper Indus. Co.*, 109 F.3d 1, 4 (1st Cir. 1997) ("[C]ivil antitrust actions predicated on wholly foreign conduct which has an intended and substantial effect in the United States come within . . . [the] jurisdictional reach [of the Sherman Act's Section One]."). The majority position, untouched by Takeda,[3] best reflects the plain-language reading of the D.C. antitrust statute. *See Loestrin*, 410 F. Supp. 3d at 375. Takeda's objection is overruled, and the District of Columbia antitrust claims may proceed.

### 3. **Wisconsin**

The R&R also did not recommend that Premera's Wisconsin antitrust claims be dismissed. [Doc. No. 75 at 28]. Takeda does not dispute that "Wisconsin's antitrust act applies where 'the conduct complained of substantially affects the people of Wisconsin and has impacts in [the] state, even if the illegal activity resulting in those impacts occurred . . . exclusively outside [the] state.'" [*Id.* (quoting *Olstad v. Microsoft Corp.*, 700 N.W.2d 139, 158 (Wis. 2005) (cleaned up))]. Rather, Takeda objects that seventeen prescriptions covered by Premera in Wisconsin do not plausibly raise a substantial effect in Wisconsin. [Doc. No. 79 at 17]. But the Court agrees with Premera that the R&R correctly relied on Premera's class-wide allegations to infer a substantial effect in Wisconsin. [Doc. No. 85 at 17; Doc. No. 75 at 28]; *Meyers v. Bayer AG*, 718 N.W.2d 251, 255 (Wis. Ct. App. 2006) ("[T]he people of Wisconsin are substantially

---

[3] The cases highlighted by Takeda's Objections do not undercut the majority position's application to D.C.'s antitrust statute. *In re Cast Iron Soil Pipe and Fittings Antitrust Litig.* recognized that case law regarding the statute was "relatively limited," but interpreted it "as paralleling Section 1 of the Sherman Act," and simply required "a connection" within D.C. No. 14-md-2508, 2015 WL 5166014, at *24 (E.D. Tenn. June 24, 2015). *Miami Prod. & Chem. Co. v. Olin Corp.* applied a standard that plaintiffs only needed to show that "challenged conduct—though it may have originated out-of-state—likely affected commerce in-state, such as by causing residents to pay artificially inflated prices." 546 F. Supp. 3d 223, 243 (W.D.N.Y. 2021) (cleaned up).

affected if the price of a product is 'fixed' as a result of illegal practices."), *aff'd* 735 N.W.2d 448 (Wis. 2007).[4] Takeda's objection is overruled, and the Wisconsin antitrust claims may proceed.

### 4. Tennessee

Like the District of Columbia and Wisconsin antitrust claims, the R&R did not recommend that the Tennessee antitrust claims be dismissed. [Doc. No. 75 at 28–29]. Such claims turn on a "substantial effects standard" [*Id.* at 28 (quoting *Freeman Indus., LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 523 (Tenn. 2005)) (cleaned up)]. Therefore, the R&R determined the "same allegations that support the District of Columbia and Wisconsin antitrust claims support the Tennessee antirust claims." [*Id.* at 29]. Takeda repeats its objection that Premera alleged coverage of prescriptions in Tennessee numbering in the double-digits fall short. [Doc. No. 79 at 17–18]. Yet again, consistent with the District of Columbia and Tennessee antitrust claims, the Court overrules Takeda's objection. The Tennessee antitrust claims may also proceed.

## D. Objections as to State Consumer Protection Claims

### 1. Connecticut

The R&R does not recommend "dismissal of the Connecticut consumer protection claims to the extent they seek damages after July 10, 2017." [Doc. No. 75 at 32]. As the R&R summarizes, the Connecticut Supreme Court held in 2002 that one indirect purchaser plaintiff could not bring antitrust claims under Connecticut's Antitrust Act, Conn. Gen. Stat. § 35-24, *et seq.*, or its Unfair Trade Practices Act ("CUTPA"), *see* Conn. Gen. Stat., § 42-110a, *et seq.* [*Id.*

---

[4] The Wisconsin Supreme Court held a complaint *sufficiently* pleaded a substantial intrastate effect by alleging "a broad price-fixing scheme affecting at a minimum, thousands in Wisconsin." *Meyers*, 735 N.W.2d 448 at 451. Contrary to Takeda's suggestion, [Doc. No. 79 at 17], it does not follow that a specific allegation of at least thousands being affected in Wisconsin must therefore be *necessary* to state a Wisconsin antitrust claim.

at 30 (citing *Vacco v. Microsoft Corp.*, 793 A.2d 1048, 1063, 1067 (Conn. 2002))]. In finding that the plaintiff lacked standing to bring the CUTPA claim, *Vacco* applied a test, which rested "on considerations 'similar' to those on which *Illinois Brick* rested." [*Id.* at 31 (citing *Vacco*, 793 A.2d at 1066]. "Effective July 10, 2017, however, Connecticut enacted an *Illinois Brick* repealer statute." [*Id.*]. So, the R&R declined to recommend that the CUTPA claims be dismissed to the extent they seek damages after July 10, 2017, reasoning that Premera had satisfied the antitrust-standing test, and noting that Takeda had not adequately addressed Connecticut's shift in its public policy through the *Illinois Brick*-repealer statute. [*Id.* at 32].

In objecting, Takeda argues that the R&R erred on these claims by relying on an erroneous antitrust-standing recommendation. The Court has already overruled Takeda's objection to the R&R's antitrust standing recommendation. *Supra*, Section II.A. Particularly given Connecticut's *Illinois Brick*-repealer statute,[5] the Court overrules Takeda's objection here too. The CUTPA claims may proceed.

### 2. New Mexico

The R&R did not recommend that the New Mexico consumer protection claims be dismissed, concluding that Premera had plausibly alleged a required "unconscionable trade practice" in connection with the sale of any goods or services that "results in a gross disparity between the value received by a person and the price paid." [Doc. No. 75 at 41 (quoting N.M. Stat. § 57-12-2(E)(2))]. While Takeda objects that Premera does not identify an allegation of the gross disparity in the Complaint, [Doc. No. 79 at 18], Premera's alleged payment of

---

[5] *Cf., e.g.*, *Brown v. Hartford Healthcare Corp.*, No. X03-cv-22-6152239-S, 2023 WL 7150051, at *7 (Conn. Super. Ct. Oct. 26, 2023) ("The legislature's adoption of § 35-46a must be understood as a rejection of the proposition that the Court's concerns in *Illinois Brick* and *Hanover Shoe* warrant a bar on antitrust suits by indirect purchasers.").

supracompetitive prices for Amitiza plausibly meets the mark, *e.g.*, [Doc. No. 1 at ¶ 240]. Takeda's objection is overruled. These claims may proceed.

### 3. Utah

The R&R "recommends dismissal of the Utah consumer protection claims." [Doc. No. 75 at 44]. Premera does not contest this. [Doc. No. 85 at 19]. Accordingly, the Court allows Takeda's limited objection concerning the R&R's summary chart, which is modified to reflect the undisputed recommendation as to these claims.

### E. Objections as to State Unjust Enrichment Claims

#### 1. Alabama, Missouri (class only), Utah

The R&R recommended dismissal of the Alabama unjust enrichment claims. [Doc. No. 75 at 58–59]. While Alabama appears to permit indirect purchasers to bring antitrust claims, [*id.* at 58, 58 n. 41], such claims are "limited to intrastate conduct" so the R&R concluded that "permitting restitution in the absence of intrastate conduct would subvert the statutory scheme," [*id.* (citing *Sheet Metal Workers*, 737 F. Supp. 2d at 429)]. Similarly, although most "courts have held that indirect purchaser claims can proceed under Missouri's consumer protection statute," the R&R recommended dismissal of the Missouri class unjust enrichment claims because Premera did not (and "[p]resumably" could not on a non–*Illinois Brick* basis) bring the consumer protection claims. [*Id.* at 59–60]. Likewise, the R&R recommended that the Utah unjust enrichment claims be dismissed, due to Premera's failure to state Utah antitrust or consumer protection claims, which the R&R recommended dismissing for non-*Illinois Brick* reasons. [*Id.* at 26, 43–44, 61]. Neither party objected to these dispositions in the R&R. Still, *sua sponte*, the Court modifies them.

While the Court understands the R&R to have applied *Premera Blue Cross v. Takeda Pharm. Co. Ltd.* (*Premera I*), No. 23-cv-11254, 2023 WL 9474011, at *6 (D. Mass. Nov. 20, 2023) (concluding "that indirect purchasers cannot bring unjust enrichment claims for antitrust violations under Alaska or Washington law, as it would "subvert the statutory scheme" of these states' partial adoption of *Illinois Brick*), the Court draws a distinction here. Given *Illinois Brick*'s explicit concerns about indirect buyers bringing claims for antitrust violations, *Premera I* followed most courts in barring such claims being brought under an unjust enrichment theory in states that adopted *Illinois Brick* for private plaintiffs, "absent a showing that the common law of the state in question expressly allows for such recovery." *Id.* (quoting *In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, No. 14-md-02503, 2015 WL 5458570, at *18 (D. Mass. Sept. 16, 2015)). This reflected a presumption that states adopting *Illinois Brick* for any private plaintiffs, clearly shared that decision's concerns with respect to such plaintiffs.

But the Court will not hold plaintiffs to the same heightened standard, simply because an antitrust-type claim may not be available to a particular plaintiff under a state's antitrust and consumer protection statutes. Absent clearer evidence that a state statutory scheme affirmatively intends to bar an unjust enrichment claim for an antitrust violation or that such a claim would violate a state's public policy, the Court will permit the unjust enrichment claim when plausibly stated under the general standard for unjust enrichment. *See Loestrin*, 410 F. Supp. 3d at 382 (permitting end payor to "proceed with their unjust enrichment claims under the laws of the states in which they assert no other claims, so long as the state has passed an *Illinois Brick*-repealer statute signaling that such a cause of action would not violate the state's public policy": "[C]ourts often award equitable remedies under common law claims for unjust enrichment in circumstances where other state law claims fail." (quoting *In re Cardizem CD Antitrust Litig.*,

11

105 F. Supp. 2d 618, 669 (E.D. Mich. 2000) (cleaned up))); *In re Flonase Antitrust Litig.*, 692 F. Supp. 2d 524, 542–43 (E.D. Pa. 2010) ("[S]tates which have rejected *Illinois Brick* . . . are not bound by the policy that only direct purchasers may recover a manufacturer defendant's ill-gotten gains. Therefore, if Plaintiffs meet the requirements these states establish to state a claim for unjust enrichment, their claims for unjust enrichment are not barred.").

The Court has not discerned clear evidence that Premera's Alabama, Missouri (class only), or Utah unjust enrichment claims would subvert a statutory scheme in these states or violate any public policy of these states. And Premera has plausibly alleged these claims under unjust enrichment law. So, the Court modifies the R&R to allow the Alabama, Missouri (class only), and Utah unjust enrichment claims to proceed.

### 2. Mississippi

Following guidance from the Supreme Court of Mississippi and intra-circuit authorities, the R&R did not recommend that the Mississippi unjust enrichment claims be dismissed, because "Mississippi recognizes unjust enrichment as an independent cause of action." [Doc. No. 75 at 56 (citing *Owens Corning v. R.J. Reynolds Tobacco Co.*, 868 So. 2d 331, 342 (Miss. 2004), *Loestrin*, 410 F. Supp. 3d at 382, and *In re Light Cigarettes Mktg. Sales Pracs. Litig.*, 751 F. Supp. 2d 183, 193–96 (D. Me. 2010))]. Premera is correct that Takeda's lone citation in objecting here, *In re Hard Disk Drive Suspension Assemblies Antitrust Litig.*, No. 19-md-02918, 2021 WL 4306018, at *24 (N.D. Cal. Sept. 22, 2021), fails to rebut the R&R's authorities. Consistent with the Court's resolution of the Alabama, Missouri (class only), and Utah unjust enrichment claims, *supra*, Section II.E.1, the Mississippi unjust enrichment claims presumably do not subvert a statutory scheme or violate a public policy. Takeda's objection is overruled. These claims may proceed.

### 3. New Hampshire

The R&R did not recommend that the New Hampshire unjust enrichment claims be dismissed, implicitly rejecting Takeda's parenthetical statement that "unjust enrichment is not an independent cause of action" in New Hampshire. [Doc. No. 75 at 56–57 (citing Doc. No. 39 at 59)]. Takeda does not contest this rejection, which is well supported. *See* [Doc. No. 85 at 20 (collecting cases)]. Instead, Takeda takes issue with the R&R for not recommending dismissal of the New Hampshire claims based on a separate argument that Takeda never presented but which would find support in a case cited by Takeda. [Doc. No. 75 at 56–57 (stating that *Pacamor Bearings, Inc. v. Minebea, Co., Ltd.*, 892 F. Supp. 347 (D. N.H. 1995), "supports an argument that New Hampshire law does not recognize an unjust enrichment claim in the circumstances presented here"); Doc. No. 79 at 19]. But the R&R was right not to dismiss claims with prejudice based on an argument that Takeda never made or developed such that Premera had no meaningful opportunity to respond. And like the Mississippi unjust enrichment claims, these may proceed because they have not been shown to subvert a statutory scheme or violate a public policy. The objection is overruled.

### 4. Kansas

The R&R did not recommend dismissal for the proposed class claims of Kansas unjust enrichment, resolving a "split of authority" against a requirement to "plead the conferral of a direct benefit."[6] [Doc. No. 75 at 63 (citing *Solodyn*, 2015 WL 5458570, at *18, and *Loestrin*, 410 F. Supp. 3d at 383)]. Takeda objects, citing various, out-of-circuit cases. [Doc. No. 79 at 20]. But the Court agrees with the R&R and the *Solodyn* and *Loestrin* decisions on this point. *See also TP ST Acquisition v. Lindsey*, No. 21-cv-02020, 2021 WL 1750872, at *16–17 (D. Kan. May 4,

---

[6] The R&R did, however, recommend dismissal for Premera's individual claim of Kansas unjust enrichment. [Doc. No. 75 at 63].

2021) ("[A]lthough the case law on this issue is not well-developed, Kansas courts have permitted recovery where a benefit was conferred indirectly on the unjustly enriched party."). Takeda's objection is overruled. The class claims of Kansas unjust enrichment may proceed.

### 5. Maine

The R&R "decline[d] to recommend dismissal of the Maine unjust enrichment claims, without prejudice," splitting from intra-circuit authorities. [Doc. No. 75 at 63–64 (noting *Solodyn*, 2015 WL 5458570, at *18, and *Loestrin*, 410 F. Supp. 3d at 384, concluded that a Maine unjust enrichment claim requires a "'direct' benefit, implicitly relying on *Rivers v. Amato*," No. cv-00131, 2001 WL 1736498, at *4 (Me. Super. Ct. June 22, 2001))]. In objecting, Takeda complains that the R&R lacks supporting state law authority. [Doc. No. 79 at 20].

As Premera highlights, however, the R&R correctly relied on cases analyzing *Rivers* as distinguishable. [Doc. No. 75 at 63–64 (citing *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 383 F. Supp. 3d 187, 270–71 (S.D.N.Y. 2019), and *In re Pork Antitrust Litig.*, 495 F. Supp. 3d 753, 794 (D. Minn. 2020))]; *see also* [Doc. No. 85 at 21 (noting that *Rivers* rejected a speculative theory that the plaintiff could confer a benefit on a defendant through "communications and efforts," without making any purchase)]; *In re Flonase Antitrust Litig.*, 692 F. Supp. 2d 524, 546 (E.D. Pa. 2010) ("To override the general premise that a direct benefit is not required, the state courts should make a clear statement to the contrary."). *Pork* also lays out the relevant standard for unjust enrichment claims under Maine law. 495 F. Supp. 3d at 794 (recognizing that "the Supreme Judicial Court of Maine has held that 'lack of privity . . . do[es] not bar an action for unjust enrichment[,]'" *Aladdin Elec. Assocs. v. Town of Old Orchard Beach*, 645 A.2d 1142, 1144 (Me. 1994)" (cleaned up), and concluding that "nothing in *Rivers* undermines Maine's no-privity rule"). Even had *Rivers* been cleanly on point, unlike an

14

intermediate appellate court's decision, *see Torres-Ronda v. Nationwide Mut. Ins. Co.*, 18 F.4th 80, 84 (1st Cir. 2021), a Maine superior court's decision is not entitled to special deference.[7] The objection is overruled. These Maine unjust enrichment claims may proceed.

### 6. New York

The R&R did not recommend dismissal of the New York unjust enrichment claims at this stage, [Doc. No. 75 at 65–66 (noting, however, *Loestrin*, 410 F. Supp. 3d at 384, as a contrary, intra-circuit authority)]. As the R&R discusses, some federal courts read a contested decision from New York's highest court, *Sperry v. Crompton Corp.*, 8 N.Y.3d 204 (2007), and related case law to support dismissal of New York unjust enrichment claims brought by indirect purchasers, [*id.* (collecting cases)]; others have allowed such claims by distinguishing claims "against the manufacturer of one of a product's ingredients" (like those in *Sperry*) as "too attenuated," versus claims "against the manufacturer of the product itself" as actionable, [*id.* at 66 (citing *Waldman v. New Chapter, Inc.*, 714 F. Supp. 2d 398, 403–04 (E.D.N.Y. 2010), and collecting other cases)]. *Waldman* relied on a New York appellate authority, *Cox v. Microsoft Corp.*, 778 N.Y.S.2d 147 (2004) (sustaining New York unjust enrichment claim brought by "indirect purchasers of Microsoft's software products," and rejecting holding that "plaintiffs only indirectly bestowed a benefit upon Microsoft"), that predates *Sperry*, but the R&R notes that the Second Circuit has still relied on *Cox* in the wake of *Sperry*, [Doc. No. 75 at 66 (citing *Myun-Uk Choi v. Tower Research Capital LLC*, 890 F.3d 60, 69 (2d Cir. 2018) (vacating dismissal of a New York unjust enrichment claim)].

---

[7] S*ee also* Superior Court, State of Maine Judicial Branch, https://www.courts.maine.gov/courts/superior/index.html ("The Maine Superior Court is Maine's trial court of general jurisdiction[.]") (last visited Sept. 23, 2024).

Takeda objects that the R&R does not extend *Sperry*, consistent with *Loestrin*, to preclude the New York unjust enrichment claims. The Court reads *Sperry* and *Cox* as reconcilable, however, overruling the objection. These New York unjust enrichment claims may proceed.

### 7. North Carolina

Consistent with intra-circuit authority, the R&R did not recommend dismissing the North Carolina unjust enrichment claims. [Doc. No. 75 at 67 (citing *Loestrin*, 410 F. Supp. 3d at 382 (citing *Solodyn*, 2015 WL 5458570, at *18))]. Despite "out-of-circuit authority to the contrary," [*id.*], the R&R was persuaded by the Fourth Circuit's reading of the case law—including the North Carolina Supreme Court's decision in *Embree Constr. Group, Inc. v. Rafcor, Inc.*, 330 N.C. 487, 496 (N.C. 1992)—that a direct benefit need not be pleaded for a North Carolina unjust enrichment claim. [Doc. No. 75 at 67 (citing *Metric Constructors, Inc. v. Bank of Tokyo-Mitsubishi, Ltd.*, 72 Fed. Appx. 916, 921 (4th Cir. 2003) (unpublished) (per curiam) (concluding that "[u]nder North Carolina law, it is sufficient for a plaintiff to prove that it has conferred some benefit on the defendant, without regard to the directness of the transaction")].

Takeda contends that several contrary authorities are faithful to "North Carolina intermediate courts that have directly addressed this issue." [Doc. No. 79 at 21–22]. Reinforcing the Fourth Circuit's persuasive reading of *Embree* in *Metric*, Premera cites several authorities, including a more recent North Carolina intermediate appellate decision, rejecting a direct-benefit requirement. [Doc. No. 85 at 23 (citing, among other cases, *New Prime, Inc. v. Harris Transp. Co.*, No. 12-271, 222 N.C. App. 317, 2012 WL 3192718, at *4 (N.C. Ct. App. 2012) (unpublished))]. The Court is convinced that the R&R rightly followed the intra-circuit cases in

16

light of *Metric* and *Embree*. Takeda's objection is overruled. The North Carolina unjust enrichment claims may proceed.

### 8. California

The R&R did not recommend dismissal of the California unjust enrichment claims, rejecting Takeda's statute-of-limitations argument as to these claims without prejudice. [Doc. No. 75 at 69–72]. Takeda objects to the R&R's conclusion that "absent binding precedent to the contrary," the California courts would apply continuing violations doctrine to a California unjust enrichment claim. [Doc. No. 79 at 22 (quoting Doc. No. 75 at 71]. To this point, Takeda submits that Premera did not carry the burden to show this doctrine may apply, which the R&R determined based on its own research. [*Id.*].

Persuasive case law supports the R&R's application of continuing violations doctrine. *See In re Pre-Filled Propane Tank Antirust Litig.*, MDL No. 2567, 2019 WL 4796528, at *7 (W.D. Mo. Aug. 21, 2019) (citing *Aryeh v. Canon Bus. Sols., Inc.*, 55 Cal. 4th 1185, 1199 (2013)). Takeda complains that Magistrate Judge Kelley conducted independent legal research. But this is not a closed-universe mock trial. A judge's constitutional role is to say what the applicable law is—regardless of what authorities the parties may cite. *See Hernandez-Lara v. Lyons*, 10 F.4th 19, 42–43 (1st Cir. 2021) (noting that judges have a "duty . . . to say what the law is" (quoting *Marbury v. Madison*, 5 U.S. 137, 177 (1803)). After extensive briefing on the Motion and filing revised Objections, Takeda has failed to move the needle on this issue with any contrary authority. The objection is overruled, however, the Court modifies the R&R to clarify that the Motion is denied only as to California unjust enrichment claims for Amitiza purchases within the two-year statute of limitations. *See Aryeh*, 55 Cal. 4th at 1199 ("[T]he

theory of continuous accrual supports recovery only for damages arising . . . within the limitations period.").

### 9. South Dakota

The R&R "recommends that the individual unjust enrichment claims in [South Dakota] be dismissed for the failure to plausibly demonstrate Article III standing." [Doc. No. 75 at 16]. Premera does not contest this. [Doc. No. 85 at 23]. Accordingly, the Court allows Takeda's limited objection concerning the R&R's summary chart, which is modified to reflect the undisputed recommendation as to these claims.

## III. CONCLUSION

The Court, having examined all Takeda's Objections to the R&R, [Doc. No. 79], and having made *de novo* findings concerning them, OVERRULES the Objections. The Court MODIFIES the reasoning in the R&R, as explained, *supra*, Section II.A., the disposition of the Alabama, Missouri (class only), and Utah unjust enrichment claims as explained, *supra*, Section II.E.1, the disposition of the California unjust enrichment claims as explained, *supra*, Section II.E.8, and the R&R's summary chart as explained, *supra*, Sections II.D.3, II.E.9. The Court otherwise ADOPTS and APPROVES the recommendations as to all other claims as set forth in Magistrate Judge Kelley's exceptionally thorough and well-reasoned R&R, [Doc. No. 75]. Accordingly, Takeda's Motion to Dismiss, [Doc. No. 38], is GRANTED in part and DENIED in part, as set forth in the R&R but with the modification that the Motion is GRANTED as to the California unjust enrichment claims based on Amitiza purchases outside the two-year statute of limitations, and DENIED as to the Alabama, Missouri (class only), and Utah unjust enrichment claims.

SO ORDERED.

                                                  /s/ Myong J. Joun  
                                                  United States District Judge

Case 1:21-cv-11057-MJJ   Document 326   Filed 09/30/24   Page 19 of 19