**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
|  | ) |  |
|  | ) |  |
| IN RE AMITIZA ANTITRUST | ) |  |
| LITIGATION | ) | Civil Action No. 21-11057-MJJ |
|  | ) |  |
|  | ) |  |

**MEMORANDUM OF DECISION**

January 26, 2026

JOUN, D.J.

Defendants Takeda Pharmaceutical Company Ltd. and Takeda Pharmaceuticals USA, Inc.

("Takeda") move for partial summary judgment as to certain claims brought under various state

laws by Premera Blue Cross ("Premera") on behalf of two putative end payor classes (with

Premera, "EPPs" or "Plaintiffs"). For the reasons explained below, Defendants' Motion for

Partial Summary Judgment, [Doc. No. 604; 23-cv-12918 Doc. No. 182], is <u>DENIED in part</u> and

<u>GRANTED in part</u>.

## I.    BACKGROUND[1]

---

[1] I assume the parties' familiarity with the facts. As such, this background will be limited to the facts relevant to the cross-motions at issue. The facts are undisputed unless noted otherwise. Disputes over characterizations, implications, completeness, or legal arguments, may not be considered genuine fact disputes. *See Atain Specialty Ins. Co. v. Davester LLC*, 518 F. Supp. 3d 551, 555 (D. Mass. 2021) ("Disputes over facts that are irrelevant or unnecessary will not preclude summary judgment") (citation omitted); *Muniz v. RXO Last Mile, Inc.*, 2023 WL 5353749, at *2 (D. Mass. Aug. 21, 2023) (finding responses to statement of facts obstructive where the dispute merely raises "distinctions without a difference" or "restates legal standards to manufacture a dispute"); *Guerrios Flores v. S.M. Med. Servs., C.S.P.*, 2020 WL 1698993, at *2 (D.P.R. Apr. 7, 2020) ("Responses which do not oppose the truth of the statement offered and are either irrelevant to the matter at hand, provide additional evidence not related to the fact in question and/or failed to contradict it are insufficient to properly controvert a material fact") (citation omitted).

### A. **Amitiza And The Settlement Agreement**

In 2006, the Food and Drug Administration ("FDA") approved Sucampo Pharmaceuticals, Inc.'s ("Sucampo") New Drug Application ("NDA") for Amitiza, a chronic constipation drug. [Doc. No. 629-19 at ¶ 1]. Takeda markets and sells brand Amitiza in the United States pursuant to a Commercial License Agreement ("CLA") with Sucampo, dated October 29, 2004. [*Id.* at ¶ 2]. In February 2010, Anchen Pharmaceuticals, Inc. ("Anchen") submitted an Abbreviated New Drug Application ("ANDA") seeking approval of a generic Amitiza product. [*Id.* at ¶ 6]. In November 2011, Par Pharmaceutical, Inc. ("Par") acquired the rights to the ANDA originally filed by Anchen. [*Id.* at ¶ 7]. Par submitted a revised ANDA in 2012, which contained a Paragraph IV certification as to all Amitiza patents then-listed in the Orange Book, certifying that they were either invalid or not infringed by Par's product. [*Id.* at ¶ 8]. That certification triggered Sucampo's right to sue Par, which it, joined by Takeda and RTU, did on February 7, 2013. [*Id.* at ¶ 9]. In September and October 2014, Par entered into and executed a settlement agreement resolving the ongoing and potential future patent litigation with Takeda, Sucampo, and RTU (the "Settlement Agreement"). [*Id.* at ¶ 10].

On October 9, 2014, Sucampo, in conjunction with Takeda and Par, issued a press release announcing the Settlement Agreement, including a statement that, "Par will split with Sucampo the gross profits of the licensed products sold during the term of the agreement." [*Id.* at ¶ 11]. Pursuant to the Settlement Agreement, Par began to lawfully market generic Amitiza without FDA approval of its ANDA in January 2021, and no other generic form of lubiprostone entered the market as of January 2021. [*Id.* at ¶ 12]. EPPs were able to obtain notice of the Settlement Agreement by January 2021, when Par launched generic lubiprostone, and no other generic form of lubiprostone entered the market. [*Id.* at ¶ 13]. While Defendants contend that EPPs were able

to obtain this notice earlier than 2021, EPPs dispute this and argue that "[w]ith the information publicly available prior to January 2021, EPPs had no way of discovering the anticompetitive nature of the Agreement through the exercise of reasonable diligence prior to January 2021." [*Id.*].

### B. EPPs And The Chain Of Transactions Between Consumers And EPPs

Plaintiff Premera Blue Cross ("Premera") is a health care services contractor incorporated in the State of Washington, with its principal place of business in Mountlake Terrace, Washington. [Doc. No. 629-19 at ¶ 14]. Premera, on behalf of itself and all other similarly situated third-party payers ("TPPs") (collectively, "Plaintiffs" or "EPPs"), filed their complaint ("Complaint") on November 30, 2023, alleging that the Settlement Agreement improperly delayed generic competition for Amitiza through a "reverse payment." [*Id.* at ¶¶ 15–16]. Premera operates as both an insurer for fully insured health plans and as a third-party Administrator Services Only provider ("ASO Provider") for many Administrative Services Only customers ("ASO Customers") with respect to prescription drug benefits. [*Id.* at ¶ 17]. Premera's ASO Customers are self-funded plan sponsors. [*Id.* at ¶ 18]. Premera and other EPPs are not direct purchasers of Amitiza and lubiprostone. [*Id.* at ¶ 19]. Rather, manufacturers sell Amitiza or lubiprostone to wholesalers or large retailers, which then sell the product to pharmacies. [*Id.*].

The chain of transactions that occur between a manufacturer's initial sale of a pharmaceutical drug to direct purchasers and end payors' payment for that drug consists of the following transactions: (1) "manufacturers sell prescription drug products to wholesalers that distribute and resell the products to pharmacies"; (2) "Pharmacies purchase drug products from wholesalers (or directly from manufacturers in some cases) and resell them to consumers"; and (3) "consumers purchase prescription drugs from pharmacies, most often by using pharmacy

benefits provided by a health plan sponsor. . . . [w]hen an insured consumer purchases a prescription drug, the cost of the drug is typically split between the consumer and the health plan sponsor." [*Id.* at ¶ 43]. EPPs and their members pay retail prices to pharmacies for prescription drugs, though Defendants dispute Plaintiffs' expert's definition of "retail price" as "the amount paid by the end payors" and "received by the pharmacy," noting that studies he cites to use the term differently, to describe "prices charged by pharmacies." [*Id.* at ¶ 45]. EPPs pay for some or all of the cost for their members' prescription drugs that are covered under their health plans. [*Id.* at ¶ 46].

As an insurer, Premera administers prescription drug coverage for fully insured and self-funded plan sponsors; as an ASO Provider, Premera administers prescription drug coverage for self-funded plan sponsors. [*Id.* at ¶ 20]. When a health plan member covered by one of those prescription drug plans brings a prescription to a retail pharmacy, the pharmacy contacts Premera's pharmacy benefit manager ("PBM"). [*Id.* at ¶ 21]. Between January 1, 2013 and the present, which includes the entirety of the proposed class period, Premera has contracted with the PBM Express Scripts Inc. ("ESI") to adjudicate prescription drug claims for its commercial customers (both fully insured and self-funded customers). [*Id.* at ¶ 22]. When a beneficiary under a Premera insurance plan submits a prescription to a pharmacy, the pharmacy contact submits a claim electronically to ESI, not Premera, and ESI responds electronically to inform the pharmacy whether the prescription drug is covered, whether the patient must receive prior authorization, and the amount of any copay or coinsurance due. [*Id.* at ¶ 23]. If the copay or coinsurance does not cover the whole amount due, ESI then pays the pharmacy some amount. [*Id.* at ¶ 24]. The

amount depends on the contract between the pharmacy and ESI. [*Id.*].[2] The parties dispute whether Premera knows what amount is paid by its PBM, ESI, to the pharmacies, whether Premera knows if the amount paid by Premera for each prescription drug claim is more or less than the amount paid by ESI to the pharmacy, and whether Premera has produced data reflecting the amounts paid by ESI to pharmacies for Amitiza and lubiprostone on a transaction-by-transaction level. [*Id.* at ¶¶ 25–26, 28]. While Defendants argue that Premera has not identified such evidence in the record, Plaintiffs point to claims level data, [*see* 23-cv-12918 Doc. No. 102-1 at ¶ 131], provided by ESI to Premera that contains the total number of pills purchased, the total amount paid by the plan, and the member contribution, for each individual claim transaction (excluding those that were reversed or rejected) for Amitiza and lubiprostone for the associated time period. [Doc. No. 629 at ¶ 26].

ESI invoices Premera for prescription drug claims adjudicated on behalf of Premera's health plan members every two weeks. [*Id.* at ¶ 27]. For each prescription drug transaction adjudicated by ESI for Premera, Premera pays ESI an amount governed by its contract with ESI. [*Id.* at ¶ 29]. The contract governs the amounts paid by Premera on behalf of its fully insured customers and its self-funded customers (i.e., ASO Customers). [*Id.*]. Under Premera's contracts with ESI during the relevant period, the amount Premera paid depended on several factors, including: Whether the claim was submitted at a retail or mail order pharmacy; The identity of the insured plan sponsor; Whether the drug was covered under the relevant formulary; Rebates

---

[2] I note for clarity that Premera pays for its insured members' purchases of covered prescription drugs. [Doc. No. 629 at ¶¶ 23–24]. Premera uses the services of PBMs to effectuate the transaction. [*Id.* at ¶ 24]. As part of the process of setting up plans with ESI, Premera electronically provides ESI with information regarding the plan, and ESI submits detailed claims level data to Premera. [*Id.* at ¶ 23]. Additionally, PBMs and ASO Providers provide pharmacy benefit services for plan sponsors or insurers, but do not purchase drugs or resell them to end payors. [*Id.* at ¶ 44]. The parties dispute, however, whether PBMs and ASO Providers "are not otherwise insurers," as Defendants state that ASO Providers are frequently insurers as well as ASO Providers; Premera is both an insurer and an ASO Provider. [*Id.*].

passed through from ESI to Premera; Whether the product is brand or generic or, if an AG, whether the product was designated by ESI as brand or generic. [*Id.* at ¶ 30]. Plaintiffs dispute the extent to which rebates are a factor into the amount Premera paid. [*Id.*]. ESI has contracts with other insurers, but Premera disputes that the terms of ESI's agreements with other insurers are different than ESI's contract with Premera, as Premera has no visibility into those agreements. [*Id.* at ¶ 31]. The amount Premera's ASO Customers pays to Premera is governed by each ASO's respective contract with Premera, and that may or may not be the same amount paid by Premera to its PBM. [*Id.* at ¶ 32]. For its ASO Customers, Premera pays the claim for the prescription drug through its PBM and it later invoices the appropriate ASO Customer for those claims on a monthly basis, and the self-funded group pays Premera. [*Id.*]. The invoice to the ASO customers provides a count of the prescriptions and the dollar amount for the claims during the invoiced period. [*Id.*]. Premera bills each ASO client based on contractual agreement, which could be on a per employee per month, per member per month, or per-claim basis, in addition to the claims amount. [*Id.* at ¶ 33]. The terms of Premera's contracts with its ASO customers may vary. [*Id.* at ¶ 34].

### C.  The EPP Class And Its Expert, Dr. Martin Kovach

On October 22, 2024, Plaintiffs moved to certify two classes: a "Damages Class" and an "Unjust Enrichment Class." [*Id.* at ¶ 35]. Plaintiff filed a Second Amended Motion for Class Certification on November 12, 2024. [*Id.* at ¶ 36]. Only "entities" are included within the two proposed class definitions, and both specifically exclude "natural person consumers." [*Id.* at ¶ 37]. On September 19, 2025, I certified the two proposed EPP classes. [Doc. No. 616; 23-cv-12918 Doc. No. 184]. Plaintiffs rely on the opinions of Dr. Martin Kovach ("Dr. Kovach") as common evidence of injury in support of their class certification motion and in response to

Takeda's opposition to the same. [Doc. No. 629-19 at ¶ 38]. Dr. Kovach opines that wholesale prices of prescription drugs (in general) "affect" retail prices, though the parties dispute whether Dr. Kovach provided empirical evidence relating specifically to Amitiza to support this assertion. [*Id.* at ¶ 39]. Dr. Kovach testified that the basis of this opinion was part of his "general knowledge after working in this field for 20 years, reading many, many articles on the top of prescription drug pricing and – and looking at data from – from many – proprietary data from many, many cases on this topic." [*Id.* at ¶ 40 (citing Doc. No. 607-22, 165:5–11)]. Takeda argues that Dr. Kovach did not test his opinion by reviewing transactional data reflecting amounts paid for Amitiza by PBMs to pharmacies, by pharmacies to wholesalers, or by ASO Customers to ASO Providers. [*Id.* at ¶ 41]. Plaintiffs dispute this and point to evidence that Dr. Kovach analyzed Amitiza retail price data, coupled with an analysis of consumer contributions, to show that all or virtually all of the EPPs were injured. [*Id.* at ¶ 39]. The parties also dispute whether generic prices are in part a function of the pre-generic price of their brand equivalent, and whether a drug's generic price discount for both wholesale and retail prices is a function of the number of generic versions of that drug that are on the market. [*Id.* at ¶¶ 47–48].

Premera alleges that it paid for prescriptions of Amitiza and/or generic Amitiza in California and Florida. [*Id.* at ¶ 49]. Premera's claims data shows that it and/or its self-funded customers paid for prescriptions of brand and/or generic Amitiza in California and Florida during the Class Period. [*Id.* at ¶ 50]. Defendants dispute this and state that Premera's claims data does not reflect amounts paid by its self-funded customers but only amounts paid by Premera in either is role as insurer or ASO Provider. [*Id.*]. There are EPP class members that reside in California and Florida which indirectly purchased or paid for some or all of the purchase price of Amitiza and/or generic Amitiza. [*Id.* at ¶ 51]. Defendants dispute this because although the claims data

includes the addresses of individual plan members, (i.e., patients), and the locations of the pharmacies at which the prescriptions were dispensed, Plaintiffs do not cite to any evidence of the state of residence for each end payor or class member. [*Id.*]. Finally, Defendants dispute that Premera keeps abreast of relevant news in the pharmaceutical industry. [*Id.* at ¶ 52].

## II.    PROCEDURAL HISTORY

On September 5, 2025, Takeda filed its Motion for Partial Summary Judgment as to EPP-specific claims. [Doc. No. 604]. On October 6, 2025, EPPs filed their Opposition, as well as their response to Takeda's Rule 56 Statement of Material Facts, including its own statement of additional material facts. [Doc. Nos. 625, 626]. On October 20, 2025, Takeda filed its Reply, as well as its response to Plaintiffs' additional statement of material facts. [Doc. Nos. 629, 629-1].

## III.   LEGAL STANDARD

Summary judgment is appropriate when, based upon the record, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute is "one that must be decided at trial because the evidence, viewed in the light most flattering to the nonmovant, would permit a rational factfinder to resolve the issue in favor of either party." *Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990) (citation omitted). Where, as here, the nonmovant bears the burden of proof at trial, the nonmovant "must point to facts memorialized by materials of evidentiary quality and reasonable inferences therefrom to forestall the entry of summary judgment." *Geshke v. Crocs, Inc.*, 740 F.3d 74, 77 (1st Cir. 2014); *see Woodward v. Emulex Corp.*, 714 F.3d 632, 637 (1st Cir. 2013) (nonmovant bearing burden of proof must "demonstrate that a trier of fact reasonably could find in his favor"). "[A] nonmovant may not rest upon mere allegations" but instead "must set forth specific facts showing that there is a genuine issue of material fact as to each issue upon

which he would bear the ultimate burden of proof at trial." *Bellone v. Southwick-Tolland Regional School District*, 748 F.3d 418, 424 (1st Cir. 2014). In reviewing a summary judgment motion, a court may examine "all of the record materials on file" "including depositions, documents, electronically stored information, affidavits or declarations…or other materials." Fed. R. Civ. P. 56(c); *Ahmed v. Johnson*, 752 F.3d 490, 495 (1st Cir. 2014).

## IV.    ANALYSIS

### A.    <u>EPPs' Antitrust Law Claims</u>

#### 1.    Proof Of Injury Under Maine, Michigan, and Florida Law

Defendants argue that partial summary judgment is warranted as to Plaintiffs' antitrust claims under the laws of Maine, Florida, and Michigan, because they have not put forth evidence that any overcharges incurred by the direct purchasers were "passed on" to the end payors. According to the First Circuit, indirect purchaser plaintiffs must "establish that *all* class members paid a higher price." *In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 632 F. Supp. 2d 42, 56 (D. Me. 2009) (citing *In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 522 F.3d 6, 29 (1st Cir. 2008)). This is because "[t]oo many factors play into an individual negotiation to allow an assumption—at least without further theoretical development—that any price increase or decrease will always have the same magnitude of effect on the final price paid." *New Motor Vehicles*, 522 F.3d at 29. As such, Plaintiffs must put forth proof, rather than mere "inference," that end payors were overcharged for Amitiza, and that the prices they actually paid were not altered during the chain of transactions that occurs from direct purchasers to the end payors. *A & M Supply Co. v. Microsoft Corp.*, 252 Mich. App. 580, 584 (2002) ("[P]roving overcharge and pass-on are essential to succeeding in an indirect purchaser suit under [Michigan Antitrust Reform Act] MARA, and therefore adopt this construct"); *Karofsky v. Abbott Lab'ys*, No. 95-cv-

1009, 1997 WL 34504652, at *11 (Me. Super. Oct. 16, 1997) ("Because indirect purchasers must demonstrate that any overcharges resulting from the illegal action of the defendants have been passed on to them, an entirely separate level of evidence and proof is injected into litigation of indirect purchaser claims"); *In re Fla. Microsoft Antitrust Litig.*, No. 99-27340, 2002 WL 31423620, at *7 (Fla. Cir. Ct. Aug. 26, 2002) ("Plaintiffs will have to show that at least some portion of these overcharges were passed on to the indirect purchaser end users that make up the classes here"). A presumption of pass-on is insufficient at summary judgment. *Execu-Tech Bus. Sys., Inc. v. Appleton Papers Inc.*, 743 So. 2d 19, 22 (Fla. Dist. Ct. App. 1999) (rejecting appellants' arguments that "where class members purchase products in an anti-competitive market injury to each can be presumed," holding that "such presumption should not arise in indirect purchaser cases due to the evidentiary complexities and uncertainties noted in *Illinois Brick*") (cleaned up).

Plaintiffs claim they have provided the requisite proof through their expert, Dr. Martin Kovach. Dr. Kovach has provided two expert reports detailing his opinion that all or virtually all end payor class members were injured because, (1) based on studies analyzing both wholesale and retail drug prices, pharmacies generally pass through savings from generic entry to EPPs, and (2) Dr. Kovach's analysis of retail price data—the prices EPPs actually paid for the drugs— coupled with an analysis of consumer contributions—shows that overcharges were passed on to EPPs. [Doc. No. 625 at 23]. Specifically, Plaintiffs argue that "if overcharges were not passed onto EPPs, the retail data, coupled with Dr. Kovach's consumer contribution analysis, would show no injury." [*Id.*].

Defendants say this is not enough. Defendants argue that Plaintiffs have not addressed the chain of transactions that occurs between the manufacturers' initial sale and the end payors'

10

payment for the drugs. For instance, Premera's payments for claims are governed by its contracts with PBMs and where it acts as an ASO Provider, the amounts paid by ASO customers are governed by each individual customer's contract with Premera. Because Plaintiffs have not put forth evidence of the amounts of overcharges, passed on at each link in the chain, (i.e., what each wholesaler paid and what the pharmacy charged), Plaintiffs have not met their burden of proving that the overcharges were passed on. Further, Defendants argue that Plaintiffs cannot use Dr. Kovach's inferences regarding overcharge as a substitute for actual proof that each and every indirect purchaser was overcharged.

In *New Motor Vehicles*, the consumer plaintiffs alleged that defendant car manufacturers conspired to stifle competition, which resulted in a suppressed supply of Canadian cars in the United States that artificially elevated prices in the U.S. Automobile market. 632 F. Supp. 2d at 46. Plaintiffs argued that "any upward pressure on national pricing would necessarily raise the prices actually paid by individual consumers." *Id.* at 52. Plaintiffs argued that empirical data from their expert shows that injury generally flows from the Manufacturer's Suggested Retail Price ("MSRP") transaction price with a high degree of causation, impacting "virtually all class members." *Id.* at 55. The court analyzed whether "an alteration of the negotiating range that comes with higher list prices translates into a 'pass through' of a higher price to the consumer." *Id.* at 57 (citation omitted). In granting summary judgment in favor of Defendants, the court held that plaintiffs' experts' inferences of pass-through based on academic studies and professional experience and observation were nothing more than "intuitive appeal," and not "evidence that *each transaction sales price* was affected by the agreement." *Id.* at 58, 62–63 (emphasis in original).

11

While I agree with Plaintiffs that the chain of transactions that flow from a drug wholesaler to the end payor is not as complex or individually variable as the transactions are in *New Motor Vehicles*, Dr. Kovach's report presents the same type of "intuitive appeal" that was rejected as insufficient proof in *New Motor Vehicles*. For instance, Dr. Kovach opines that TPP class members that paid for brand Amitiza were injured because, "[g]iven such high generic conversion rates in the but-for scenarios, a simple probability analysis shows that it is extremely unlikely that none of a TPP's Amitiza prescriptions would have converted to generic lubiprostone in the but-for scenario." [Doc. No. 607-18 at 55, ¶ 82]. As such,

> Because the difference between the actual Amitiza price and the but-for generic lubiprostone price is substantial, it is very unlikely that a Class member would be uninjured, even after adjusting for consumer cost sharing. A TPP's payment is equal to the retail price minus the consumer contribution. Because consumer contributions are lower for generic drugs than for brand drugs, adjusting prices to account for consumer contributions can reduce the difference between the actual Amitiza price and but-for generic lubiprostone price; however, a consideration of price data and economic incentives suggests that consumer cost sharing would rarely offset this price difference.

[*Id.* at ¶ 84]. For generic Amitiza purchasers, Dr. Kovach opines that the "generic discount off the pre-generic brand price would always have been greater in the but-for scenario," resulting in overcharge, which "would not have been offset by any cost-sharing differential between the actual world and the but-for scenario because the co-pays and coinsurance rates would by definition have been the same in the actual world and the but-for scenario." [*Id.* at ¶ 89]. At class certification, I held that Dr. Kovach's opinions were sufficient to demonstrate classwide injury based on his opinion that "all or virtually all members of the Classes were injured by the alleged delay in generic entry." [23-cv-12918 Doc. No. 184 at 51]. Based on Dr. Kovach's analyses detailed above, I found that "there is a high probability that class members were overcharged." [*Id.*]. However, what is acceptable for the purposes of class certification is not parallel to what is

required at summary judgment. For example, in *In re Fla. Microsoft Antitrust Litig.*, the Florida Circuit Court accepted an expert's opinion that overcharges were passed on to every class member based on "economic principles, rather than individual class member evidence," to certify the class. 2002 WL 31423620, at *7 (Fla. Cir. Ct. Aug. 26, 2002). However, the court held that "[w]hether a fact-finder actually should or will accept Plaintiffs' common evidence on this issue is beyond the scope of the class certification inquiry." *Id.* at *8. Similarly, here, Dr. Kovach's opinion that each and every class member was injured is based on his own inferences of the likelihood or probability of overcharge and pass-on. While those inferences may stem from his analyses of the prices that EPPs actually paid, it does not address, as Defendants point out, empirical evidence relating to Amitiza or data reflecting the amounts paid in the multiple transactions that occur in the chain. As the Michigan Court of Appeals stated, "though the real world often validates economic theories and analyses, they represent evidence that courts and juries may have a difficult time accepting as proof." *A & M Supply Co.*, 252 Mich. App. at 627–628.

For these reasons, summary judgment is <u>GRANTED</u> as to EPPs' antitrust claims under Michigan, Maine, and Florida law.

### 2.  Standing Under Hawaii Law

Plaintiffs bring antitrust claims under Hawaii's antitrust statute. In their Complaint, Plaintiffs did not cite to the specific section of the statute under which they bring their antitrust claims. [*See* 23-cv-12918 Doc. No. 1 at ¶ 257(f) ("Hawaii Code § 480-1 *et seq.*, with respect to the Class's purchases of Amitiza or generic Amitiza in Hawaii"); ¶ 268(f) ("Hawaii Code § 480-1 *et seq.*, with respect to the Class's purchases of Amitiza or generic Amitiza in Hawaii")]. In seeking summary judgment, Defendants argue that Plaintiffs lack standing to the extent that their

13

claims are brought under § 480-2, which prohibits unfair competition. [Doc. No. 605 at 18–19].

Under that section, "[n]o person other than a consumer" has standing to sue for unfair or

deceptive acts or practices that are declared unlawful. Haw. Rev. Stat. § 480-2(d). A "consumer"

is defined in the statute as "a natural person who, primarily for personal, family, or household

purposes, purchases, attempts to purchase, or is solicited to purchase goods or services or who

commits money, property, or services in a personal investment." Haw. Rev. Stat. § 480-1.

Because Plaintiffs' class definition excludes "natural person consumers," [Doc. No. 629-19 at ¶

37], they lack standing.

In their opposition, Plaintiffs clarify that they are bringing antitrust claims under Haw. Rev.

Stat. § 480-4 and § 480-9, which respectively prohibit contracts or combinations "in restraint of

trade or commerce" and prohibit monopolization. These sections do not limit standing to bring

suit to natural person consumers. The statute further permits "[a] class action for claims for a

violation of this chapter other than claims for unfair or deceptive acts or practices" that "may be

prosecuted on behalf of indirect purchasers by a person other than the attorney general." Haw.

Rev. Stat. § 480-13.3(a). A "person" is defined in the statute to include "corporations" and other

business entities. Haw. Rev. Stat. Ann. § 480-1. The statute also permits "any person who is

injured . . . by reason of anything forbidden or declared unlawful by this chapter" to recover

damages. Haw. Rev. Stat. § 480-13(a). Defendants' only response to this clarification is that

EPPs are narrowing their claims for the first time in their Opposition. But it is clear from the

Complaint that EPPs bring claims under Count I for "Conspiracy and Combination in Restraint

of Trade Under State Law" and Count II for "Monopolization Under State Law." [*See* 23-cv-

12918 Doc. No. 1 at ¶¶ 246–270]. That EPPs only clarified the specific sections for the first time

in their Opposition does not change the fact that EPPs indeed retain standing to bring their claims under those provisions of the statute. As such, summary judgment is DENIED as to this claim.

### 3. Timeliness Of Antitrust Claims Under The Laws Of Arizona, Kansas, Maine, Michigan, New York, North Carolina, Oregon, and Wisconsin

Takeda argues that EPPs' antitrust claims under the laws of Arizona, Kansas, Maine, Michigan, New York, North Carolina, Oregon, and Wisconsin are time-barred. In each of these states, the statute of limitations ranges from three to six years. Takeda argues, and EPPs do not disagree, that EPPs' claims accrued as early as October 2016, when they paid their first overcharge, but did not file their complaint until November 30, 2023, more than seven years after EPPs' began incurring overcharges. Additionally, EPPs were on notice of their claims at least as of January 2021, when Par first launched a generic and no authorized generic followed. As such, EPPs' claims are time-barred absent an applicable tolling doctrine. Here, EPPs argue that two doctrines are available to save their state law claims—the "continuing violation" doctrine and the doctrine of fraudulent concealment.

The continuing violation doctrine advises that "each time a plaintiff is injured by an act of the defendants a cause of action accrues to him to recover the damages caused by that act," and as to those damages, "the statute of limitations runs from the commission of the act." *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 338 (1971). While "federal courts routinely apply the 'continuing violation' doctrine in the context of federal antitrust law," the "doctrine has received mixed treatment by state courts deciding state antitrust claims." *In re Opana ER Antritrust Litig.*, 162 F. Supp. 3d 704, 725 (N.D. Ill. 2016). State statutes of limitations apply to state claims in federal courts. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). To determine whether tolling doctrines apply to EPPs' state claims, the court must look to state law.

15

As an initial matter, I find that EPPs' reliance on *Mayor of Baltimore v. Actelion Pharm. Ltd.*, 995 F.3d 123, 132 (4th Cir. 2021) ("*Tracleer*") to claim that the continuing violations doctrine is always available is misplaced. There, the Fourt Circuit held that "[v]irtually every court faced with similar allegations has held, citing the continuing-violation doctrine, that a new cause of action accrues to purchasers upon each overpriced sale of the drug." *Id.* (citation omitted). However, that case considered violations of both federal and state antitrust laws, and the court's holding was in the context of only the federal claim and reliance on federal authorities that involved federal claims or a combination of federal and state law claims. *In re Copaxone Antitrust Litig.*, No. 22-cv-1232, 2025 WL 2771874, at *34 (D.N.J. Aug. 7, 2025) (distinguishing *Tracleer*). Indeed, "[t]he Fourth Circuit did not separately analyze this question as to the state law claims, nor is it clear that this specific argument was presented in that case—that the state law claims may not follow the same statute of limitations principles as federal jurisprudence." *Id.* As such, "[b]ecause each state has its own statutes of limitations, accrual rules, and tolling principles, the Court will discuss the timeliness" of EPPs' claims "on a state-by-state basis." *In re: Lamictal Indirect Purchaser & Antitrust Consumer Litig.*, 172 F. Supp. 3d 724, 741 (D.N.J. 2016); *In re Nexium (Esomeprazole) Antitrust Litig.*, 968 F. Supp. 2d 367, 399–402 (D. Mass. 2013) (finding continuing violations doctrine available for federal antitrust claim but unavailable for claims under individual state laws where plaintiffs did not allege fraudulent concealment or "any other ground for tolling the statute of limitations").

Defendants have established that the continuing violations doctrine is not available to toll the statute of limitations in at least the following states for EPPs' state law claims: Arizona, *see In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, No. 87-cv-987, 1990 WL 126500, at *22 (D. Ariz. July 25, 1990) ("Arizona, however, does not recognize the doctrine of continuing

16

tort"); Maine, *see McKinnon v. Honeywell Int'l, Inc.*, 2009 ME 69, ¶ 14, 977 A.2d 420, 425

("[W]e have never adopted the continuing violations doctrine as a means of tolling the statute of

limitations"); and Michigan, *see Twp. of Fraser v. Haney*, 509 Mich. 18, 27 (2022) (continuing-

wrongs doctrine "has been abrogated in Michigan"). In Kansas and Wisconsin, it is unclear

whether doctrine has been adopted, and as such, I will follow the reasoning of another federal

district court in construing the doctrine as unavailable. *See, e.g.*, *In re Pre-Filled Propane Tank

Antirust Litig.*, No. 14-md-02567, 2019 WL 4796528, at *9 (W.D. Mo. Aug. 21, 2019) ("The

Kansas Supreme Court has not determined if the continuing violations doctrine would apply to

claims brought under its antitrust laws . . . the Court is unable to predict that it would adopt the

continuing violations doctrine. Absent such indication, the Court finds that the claims under the

Kansas Restraint of Trade Act are untimely"); *see also id.* at *16 ("Given the differences

between Wisconsin law and federal law and the lack of clear guidance to the contrary, current

Wisconsin precedent does not foreshadow the Wisconsin Supreme Court recognizing the

continuing violations doctrine in Wisconsin Antitrust Act claims").

While Takeda argues that the doctrine is unavailable in New York, that is incorrect. *See

Lamictal*, 172 F. Supp. 3d at 742 ("[T]wo principles recognized by New York courts that toll the

limitations period for causes of action that have already accrued: the "continuing violation"

doctrine and the doctrine of "equitable tolling/equitable estoppel"). However, in *Lamictal*, the

court held that the doctrine did not apply in those circumstances because "the New York class

members' purchases of generic and branded lamotrigine tablets at artificially inflated prices"

were "more appropriately viewed as the 'continuing effects' of the allegedly unlawful settlement

agreement," as opposed to a continuing violation. *Id.* at 743. That is also the case here. Similarly,

in North Carolina and Oregon, as explained more fully below in Section IV.C.7, Plaintiffs must

17

demonstrate that the injuries are a result of the "continuing unlawful acts" and not the "continual ill effects" from the original violation. *See Members of N. Carolina State Univ.'s 1983 NCAA Men's Basketball Nat'l Championship Team v. Nat'l Collegiate Athletic Ass'n*, No. 24-cv-017715-910, 2025 WL 2256311, at *7 (N.C. Super. Aug. 6, 2025) (cleaned up); *Davis v. Bostick*, 282 Or. 667, 671–72 (1978). As such, I find that Takeda is entitled to summary judgment that the continuing violations doctrine cannot save EPPs' claims under the laws of Arizona, Kansas, Maine, Michigan, New York, North Carolina, Oregon, and Wisconsin.

As with the equitable tolling doctrine, the doctrine of fraudulent concealment must also be assessed on a state-by-state basis. Previously, I held that, as a matter of law, the doctrine of fraudulent concealment tolled the Direct Purchaser Plaintiffs' and Retailer Plaintiffs' federal law claims. Under federal law, a claimant can establish fraudulent concealment when it shows that there was (1) wrongful concealment by defendants, (2) failure of the claimant to discover within the limitations period the operative facts that form the basis of the action, and (3) the failure to uncover these facts were not a result of claimant's lack of diligence. *See* [21-cv-11057 Doc. No. 632-1 at 101–102 (citing *Álvarez-Maurás v. Banco Popular of Puerto Rico*, 919 F.3d 617, 626 (1st Cir. 2019)]. However, the elements for fraudulent concealment under each of these states' laws require more. As such, EPPs' reliance on arguments from their summary judgment papers as to the DPPs' claims under federal law cannot be recycled here to meet the requisite standards under the relevant state laws at summary judgment.

EPPs' overall argument is that they relied on Takeda's deceptive concealment of the anticompetitive agreement because EPPs lacked the knowledge to discover the pertinent facts. This argument is circular. Additionally, EPPs argue that there is no dispute that Premera keeps abreast of relevant news in the pharmaceutical industry such that it relied on the press release

18

announcing the Settlement Agreement. Even to the extent that this fact is not disputed, this is not enough at summary judgment to show that the entire EPP class—not just Premera—actually relied on the press release. *See Hester v. Williams*, 117 Wis. 2d 634, 644 (1984) (**Wisconsin:** "equitable estoppel is based upon the fraudulent or other wrongful conduct on the part of the party asserting the statute of limitations and upon the detrimental reliance on such fraudulent or wrongful conduct by the aggrieved party"); *Roles-Heintz v. Rushmore*, No. 23-cv-6018, 2025 WL 319908, at *4 (Bankr. D. Or. Jan. 28, 2025) (**Oregon:** "Common law fraud in Oregon requires the following: (1) the accused had falsely represented a material fact; (2) the accused knew that the representation was false: (3) the misrepresentation was made with the intent to induce the recipient to act or refrain from acting; (4) the recipient justifiably relied on the misrepresentation; and (5) the recipient was damaged by that reliance") (citations omitted); *Azima v. Del Rosso*, No. 20-cv-954, 2021 WL 5861282, at *5 (M.D.N.C. Dec. 10, 2021) (**North Carolina:** "Plaintiff must establish that he relied on Defendants' conduct"); *Zumpano v. Quinn*, 6 N.Y.3d 666, 674 (N.Y. 2006) (**New York:** the doctrine of equitable estoppel applies where plaintiff demonstrates "reasonable reliance on the defendant's misrepresentations").

In Arizona, Kansas, Maine, and Michigan, there must be a showing of active concealment, a special relationship, or a duty to disclose, which EPPs have not shown here. *See Shamamian v. Pasionek*, No. 2021-cv-052853, 2023 WL 12134972, at *5 (Ariz. Super. Nov. 20, 2023) (**Arizona:** "[F]or there to be fraudulent concealment, there necessarily needs to be knowledge of negligence that is being concealed, knowledge of the person(s) from whom the negligence is being concealed, and thereafter, a decision to conceal the negligence"); *Crayton v. Bank of Am., Inc.*, No. 25-3058, 2025 WL 1561905, at *3 (10th Cir. June 3, 2025) (**Kansas:** "[A] plaintiff must establish that the party concealing facts was under a legal or equitable duty to

19

communicate those facts to the plaintiff") (citing *Alires v. McGehee*, 85 P.3d 1191, 1199 (Kan. 2004)); *McKinnon v. Honeywell Int'l, Inc.*, 2009 ME 69, ¶ 14, 977 A.2d 420, 425–426 (**Maine:** a plaintiff must establish that defendant either (1) "actively concealed material facts upon which the plaintiff relied to his detriment; or (2) that a special relationship existed between the parties that imposed a duty to disclose the cause of action, and the failure of defendants to honor that duty") (citation omitted); *Prentis Fam. Found. v. Barbara Ann Karmanos Cancer Inst.*, 266 Mich. App. 39, 48 (2005) (**Michigan:** "[F]or fraudulent concealment to postpone the running of a limitations period, the fraud must be manifested by an affirmative act or misrepresentation. The plaintiff must show that the defendant engaged in some arrangement or contrivance of an affirmative character designed to prevent subsequent discovery . . . [m]ere silence is insufficient") (citations omitted).

For these reasons, neither the continuing violations doctrine nor the fraudulent concealment doctrine can save EPPs' antitrust claims under the laws of Arizona, Kansas, Maine, Michigan, New York, North Carolina, Oregon, and Wisconsin. As such, summary judgment is GRANTED as to these claims.

### B.  EPPs' Consumer Protection Claims

#### 1.  Evidence Of Consumer Injury In Florida

Plaintiffs bring their Florida antitrust claims under Florida's consumer protection statute, the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201 *et seq.*, and not Florida's antitrust statute. [23-cv-12918 Doc. No. 47 at 30]. The definition of "consumer" includes "any commercial entity." Fla. Stat. § 501.203(7). Florida courts have held that, "while the claimant would have to prove that *there was an injury or detriment to consumers* in order to satisfy all of the elements of a FDUTPA claim, the claimant *does not have to be a*

20

*consumer* to bring the claim." *Caribbean Cruise Line, Inc. v. Better Bus. Bureau of Palm Beach Cnty., Inc.*, 169 So. 3d 164, 169 (Fla. Dist. Ct. App. 2015) (emphasis in original). Defendants argue that EPPs are not "consumers" under the statute, and that even if EPPs have standing to sue for consumer injury under the statute, EPPs have not put forth evidence that individual patient consumers (who share costs with EPPs in a pharmacy transaction) were injured, including because natural person consumers are excluded from the class. [Doc. No. 605 at 22].

Plaintiffs do not need to put forth such evidence as they are consumers under the statute. Defendants believe that the Florida statute is limited to injuries incurred by consumers who are users of the product, but the statute is "not limited to purely *consumer transactions*. It is now intended by its plain text to apply to any act or practice occurring 'in the conduct of *any trade or commerce*' even as between purely commercial interests." *Beacon Prop. Mgmt., Inc. v. PNR, Inc.*, 890 So. 2d 274, 278 (Fla. Dist. Ct. App. 2004) (emphasis in original). Defendants do not cite to any authority in Florida or elsewhere stating that an end payor in a pharmaceutical transaction chain, who purchases the products impacted by the allegedly illegal activity, is not a consumer. As such, summary judgment is <u>DENIED</u> as to this claim.

### 2. Nexus Between EPPs' Claims With Florida And California

Takeda moves for summary judgment as to EPPs' consumer protection claims under the laws of California and Florida because Premera is neither a resident of California nor Florida, and has failed to establish that there is a significant nexus between Premera or the other class members' antitrust claims and conduct that occurred in California and Florida. Both states prohibit claims by non-state residents where none of the misconduct or injuries occurred in those states.

In California, for example, there is "a presumption against the extraterritorial application of its statutes." *Churchill Vill., L.L.C. v. Gen. Elec. Co.*, 169 F. Supp. 2d 1119, 1126 (N.D. Cal. 2000), *aff'd sub nom. Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004). "With respect to the UCL specifically, section 17200 does not support claims by non-California residents where none of the alleged misconduct or injuries occurred in California." *Id.* Takeda argues that "defendant's in-state sales alone cannot properly be considered sufficient to establish a nexus with California." *Id.* at 1127. However, courts differ on whether, in the antitrust context, allegations of overcharges that occurred in California are sufficient to establish a nexus such that those claims can survive a motion to dismiss. *Compare In re Suboxone Antitrust Litig.*, 64 F. Supp. 3d 665, 699 (E.D. Pa. 2014*)* (cleaned up) ("The End Payors have alleged that overcharges occurred in California, which is sufficient to establish an intrastate nexus."); *with Edgar v. Teva Pharm. Indus., Ltd.*, No. 22-cv-2501, 2024 WL 1282436, at *35 (D. Kan. Mar. 26, 2024) (cleaned up) ("It's not enough that defendants sold Nuvigil in California").

In Florida, the "FDUTPA applies to non-Florida residents if the offending conduct took place predominantly or entirely in Florida." *Karhu v. Vital Pharms., Inc.*, No. 13-cv-60768, 2013 WL 4047016, at *10 (S.D. Fla. Aug. 9, 2013) (citations omitted). In the antitrust context, courts have also differed on whether allegations of overcharges occurring in Florida are enough to establish a nexus. *Compare In re Cast Iron Soil Pipe And Fittings Antitrust Litig.*, No. 14-md-2508, 2015 WL 5166014, at *34 (E.D. Tenn. June 24, 2015) (dismissing FDUTPA claims where "Downstream Plaintiffs have failed to allege state-specific allegations in their Consolidated Amended Complaints"); *with In re Flonase Antitrust Litig.*, 692 F. Supp. 2d 524, 538 (E.D. Pa. 2010) ("There is no reason to conclude that the FDUTPA requires that the alleged injuries took place *entirely* within the state. Plaintiffs allege some injury in the state of Florida, even if not all

22

of the offending conduct allegedly took place in Florida. This is sufficient to state a claim under the FDUTPA") (emphasis in original); *and In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143, 162 (E.D. Pa. 2009) ("At this stage of the case, the amended complaint alleges that certain of the named plaintiffs were injured in part through reimbursements for purchases of overpriced drugs sold in the state of Florida. This suffices to state a claim under the FDUTPA.").

Decisions from the Eastern District of Pennsylvania tend to find in favor of Plaintiffs who allege that at least an overcharge occurred in Florida. "Courts . . . have held that allegations of a nationwide anticompetitive scheme that raises prices for pharmaceutical products are sufficient to satisfy the intrastate pleading requirements of the consumer protection laws invoked here, particularly where the plaintiffs alleges that anticompetitive conduct had price impacts in each state." *Mayor & City Council of Baltimore v. Merck Sharp & Dohme Corp.*, No. 23-cv-828, 2023 WL 8018980, at *15 (E.D. Pa. Nov. 20, 2023); *see also Sheet Metal Workers Loc. 441 Health & Welfare Plan v. GlaxoSmithKline, PLC*, 737 F. Supp. 2d 380, 409 (E.D. Pa. 2010) ("Courts in this district have held that indirect payor plaintiffs may assert a cause of action under the FDUTPA for claims arising in Florida based on reimbursement for purchases of over-priced drugs, even when the alleged injuries did not take place entirely within Florida.").[3]

None of these cases address what is required on summary judgment to establish a nexus. However, even accepting that evidence of overcharges occurring in either Florida or California is enough to establish a nexus, EPPs must put forth evidence that individual indirect class members were in fact overcharged for purchases in Florida and California. Here, the evidence that EPPs have provided are: (1) a chart showing that since July 17, 2015, Premera has paid for 6,965

---

[3] I agree with EPPs that *Montgomery v. New Piper Aircraft, Inc.*, 209 F.R.D. 221, 227 (S.D. Fla. 2002) is inapposite because there, putative class members made no allegations that they suffered any injury Florida, and argued that the FDUTPA could apply not only to the named plaintiffs but also to the nationwide claims of all putative class members irrespective of where they lived.

prescriptions of Amitiza and generic Amitiza in forty states, which includes 173 claims in California and 148 claims in Florida, *see* [23-cv-12918 Doc. No. 1 at ¶ 223], (2) claims data showing the amount paid by certain EPPs, *see* [23-cv-12918 Doc. No. 629-19 at ¶ 50], and (3) evidence from Dr. Kovach's expert report and other record evidence that there are EPP class members that reside in California and Florida that indirectly purchased or paid for some or all of the purchase price of Amitiza and/or generic Amitiza, *see* [23-cv-12918 Doc. No. 629-19 at ¶ 51]. Takeda argues that there is no evidence of any of the class members' state of residence. However, for the purposes of summary judgment, the court can reasonably infer that if claims were made in California and Florida that they were made by in-state residents. As such, I cannot find as a matter of law that EPPs have failed to establish a nexus to Florida and California. Therefore, summary judgment as to EPPs' consumer protection claims under the laws of Florida and California is DENIED.

### 3. Timeliness Of Consumer Protection Claims Under The Laws of Florida And Connecticut

Takeda argues that EPPs' consumer protection claims under the laws of Connecticut and Florida are untimely. In Connecticut, the statute of limitations is three years, *see* Conn. Gen. Stat. § 42-110g, and in Florida, the statute of limitations is four years, *see* Fla. Stat. § 501.207(5).

In Connecticut, the doctrine of fraudulent concealment is not available. *Patane v. Nestle Waters N. Am., Inc.*, 583 F. Supp. 3d 341, 347 (D. Conn. 2022) (citing *Willow Springs Condo. Ass'n, Inc. v. Seventh BRT Dev. Corp.*, 245 Conn. 1, 717 A.2d 77, 100–01 (1998)) ("The Connecticut Supreme Court has ruled that CUTPA claims are not subject to equitable tolling for reasons of fraudulent concealment"). However, "Connecticut courts have applied the continuing violation doctrine to toll the CUTPA limitations period." *In re ZF-TRW Airbag Control Units Prods. Liab. Litig.*, 2025 WL 2684021, at *49 (C.D. Cal. Aug. 15, 2025) (cleaned up). "To

24

support a finding of a 'continuing course of conduct' that may toll the statute of limitations there must be evidence of the breach of a duty that remained in existence after commission of the original wrong related thereto. That duty must not have terminated prior to commencement of the period allowed for bringing an action for such a wrong." *Fichera v. Mine Hill Corp.*, 207 Conn. 204, 209 (1988). Courts have "upheld a finding that a duty continued to exist after the cessation of the 'act or omission' relied upon, there has been evidence of either a special relationship between the parties giving rise to such a continuing duty or some later wrongful conduct of a defendant related to the prior act." *Id.* at 210. There is no evidence to support a finding of a "special relationship" between the parties here. As to whether there was "some later wrongful conduct of a defendant related to the prior act," *see id.*, some courts have recognized that "the continuity of separate sales does not trigger the continuing course of conduct rule to allow recovery for sales that are outside the three-year statute of limitations." *Patane*, 583 F. Supp. 3d at 347; *see also Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 189 (1997) (noting federal law principle that each sale of an unlawfully over-priced item re-starts the limitations period for such sale but that each new sale "does not permit the plaintiff to recover for the injury caused by old overt acts outside the limitations period"). In *Patane*, plaintiffs were purchasers who claimed they were overcharged for falsely advertised Poland Spring water. There, they argued that the statute of limitations for the CUTPA could be tolled by the "continuing course of conduct" doctrine for their subsequent purchases of Poland Spring water. *Patane*, 583 F. Supp. 3d at 347. The court held that these were "discrete acts" because even if the second purchase of the water bottle caused them "the same *type* of harm . . . the second sale did not affect whether the first sale was legal or compound the damages from the first sale." *Id.* Accordingly, the court limited recovery of claims under the CUTPA to sales that were made within the three-year period of

limitations. I find that a similar solution is warranted here and hold that EPPs' claims under the CUTPA are not barred by the statute of limitations entirely, but that any recovery for these claims must be limited to purchases within the applicable limitations period, (i.e., after Nov. 30, 2020, respectively).

As to the FDUTPA, neither the continuing violations doctrine nor the fraudulent concealment doctrine are available. In *MSP Recovery Claims, Series LLC v. Amgen Inc.*, 787 F. Supp. 3d 1046, 1068 (C.D. Cal. 2025), the court held that because the claims brought under the FDUPTA are statutory, the equitable tolling doctrines do not apply. *Id.* at 1069 ("[I]nsofar as a claim is a statutory one, the statute of limitations begins to run once its elements are accrued, and equitable tolling based on fraudulent concealment does not apply"); *see also id.* at 1062 ("Absent guidance from Florida's high court that definitely rejects the continuing violations doctrine from FDUTPA claims, this Court finds that Plaintiffs' FUDTPA claim is not time-barred under the continuing violations doctrine. The Court, however, finds that Plaintiffs' FDUTPA claim is time-barred because it is a statutory claim"); *Marlborough Holdings Grp., Ltd. v. Azimut-Benetti, Spa, Platinum Yacht Collection No. Two, Inc.*, 505 F. App'x 899, 906 (11th Cir. 2013) ("[T]he delayed discovery rule, however, was inapplicable to [] FDUTPA claims, as the FDUTPA is a statute and actions under it are founded on a statutory liability"); *Hardy v. Volkswagen Grp. of Am., Inc.*, No. 24-cv-8251, 2025 WL 1409820, at *9 (D.N.J. May 14, 2025) ("It is well-settled there is no 'delayed discovery rule' applicable to FDUTPA claims") (citations omitted).

For the above reasons, Takeda's motion for summary is <u>GRANTED</u> as to the FDUTPA claim but <u>DENIED in part</u> as to the CUTPA claim. Any recovery for EPPs' claims under the CUTPA must be limited to purchases within the applicable limitations period, (i.e., after Nov. 30, 2020, respectively).

C. **EPPs' Unjust Enrichment Claims**

1. **Availability Of Unjust Enrichment Claims Under The Laws Of Arizona, Connecticut, Hawaii, Iowa, Maine, Minnesota, Missouri, Nevada, New Mexico, New York, and North Carolina Due To Available Remedy At Law**

Takeda moves for summary judgment as to EPPs' unjust enrichment claims brought under the laws of twelve states: Arizona, Connecticut, Hawaii, Iowa, Maine, Minnesota, Missouri, Nevada, New Mexico, New York, and North Carolina. As discussed below in Sections IV.C.5 and IV.C.7, EPPs' claims for unjust enrichment in Arizona, Maine, New York, and North Carolina are time-barred or otherwise dismissed. As such, I will only discuss Takeda's arguments for the remaining states. Takeda argues that in each of those states, unjust enrichment claims are barred where an adequate remedy at law exits. Because EPPs have also brought statutory claims based on the same underlying conduct, Takeda argues that an adequate remedy at law is available and Plaintiffs are not entitled to duplicative recovery. EPPs respond that under the Federal Rules and based on this court's previous ruling, they are entitled to plead alternative legal theories.

Plaintiffs are correct that "while it is generally true that one cannot *recover* under an unjust enrichment theory where a remedy at law is available, the EPPs are entitled to *plead* alternative theories." *In re Loestrin 24 FE Antitrust Litig.*, 410 F. Supp. 3d 352, 382 (D.R.I. 2019) (emphasis added). Takeda's argument "confuses Plaintiffs' right to recover an equitable remedy under a common law claim based upon principles of unjust enrichment with its right to recover a remedy at law for an alleged violation of a state's antitrust laws." *In re Cardizem CD Antitrust Litig.*, 105 F. Supp. 2d 618, 669 (E.D. Mich. 2000). Indeed, "courts often award equitable remedies under common law claims for unjust enrichment in circumstances where claims based upon contract or other state law violations prove unsuccessful." *Id.*; *see also e.g.*,

27

*CMI Roadbuilding, Inc. v. Iowa Parts, Inc.*, 920 F.3d 560, 566–567 (8th Cir. 2019) ("While alternative theories can be pled, a plaintiff cannot recover from both"). Neither this court nor a jury has made any determination as to the merits of Plaintiffs' statutory claims. Therefore, it is premature to grant summary judgment based on an available remedy at law at this time. As such, summary judgment is <u>DENIED</u>. Defendants may request a jury instruction indicating that if the jury finds that EPPs are meritorious on their statutory claims, they cannot recover for their unjust enrichment claims.

### 2. Whether Unjust Enrichment Claims Under The Laws Of Alabama, Missouri, And Utah Are Barred By *Illinois Brick*

Takeda moves for summary judgment as to EPPs' unjust enrichment claims under the laws of Alabama, Missouri, and Utah on *Illinois Brick* grounds. Because EPPs' Alabama claim is time-barred, see *infra* IV.C.7, I will only discuss Missouri and Utah. Judge Kelley previously recommended dismissal of EPPs' unjust enrichment claims, holding that permitting those claims would subvert the statutory scheme in those states. [Doc. No. 289 at 57–62]. However, I *sua sponte* modified Judge Kelley's recommendation and permitted the Alabama, Missouri, and Utah claims to move forward. I held that, "[a]bsent clearer evidence that a state statutory scheme affirmatively intends to bar an unjust enrichment claim for an antitrust violation or that such a claim would violate a state's public policy, the Court will permit the unjust enrichment claim when plausibly stated under the general standard for unjust enrichment." [Doc. No. 326 at 11–12]. At the summary judgment stage, Takeda concedes that it has not found clearer evidence that Missouri or Utah's statutory schemes affirmatively bar unjust enrichment claims for antitrust violations. However, it argues that indirect purchasers should not be permitted to bring unjust enrichment claims in lieu of antitrust or consumer protection claims where states have not allowed indirect purchasers to bring such claims.

28

Plaintiffs cite to a few cases that find that "EPPs may [] proceed with their unjust enrichment claims under the laws of the states in which they assert no other claims, so long as the state has passed an *Illinois Brick*-repealer statute signaling that such a cause of action would not violate the state's public policy." *Loestrin* 410 F. Supp. 3d at 382. In *In re Generic Pharms. Pricing Antitrust Litig.*, the court held that "[n]o reason or logic supports a conclusion that a state's adherence to the rule of *Illinois Brick* dispossesses a person not only of a statutory legal remedy for an antitrust violation, but also dispossesses the same person of his right to pursue a common law equitable remedy." 368 F. Supp. 3d 814, 850 (E.D. Pa. 2019) (citation omitted). Because Plaintiffs are permitted to plead causes of action in the alternative under Rule 8 of the Federal Rules of Civil Procedure, the court held "*Illinois Brick* does not require dismissal of the unjust enrichment claims at this time." *Id.*

However, many other courts have held differently. For instance, one court held that "[d]espite a handful of contrary case law cited by the end-payor plaintiffs, the vast majority of courts have held that indirect purchasers may not bring state claims for unjust enrichment if they otherwise would be barred from bringing a claim under that state's antitrust and consumer-protection statutes, absent a showing that the common law of the state in question expressly allows for such recovery." *In re Niaspan Antitrust Litig.*, 42 F. Supp. 3d 735, 763 (E.D. Pa. 2014) (citing cases); *In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, No. 14–md–02503, 2015 WL 5458570, at *18 (D. Mass. Sept. 16, 2015) (same). Some courts have held that unjust enrichment claims must be dismissed "in those states that explicitly disallow indirect purchasers from pursuing antitrust or consumer protection claims," *Sheet Metal Workers*, 737 F. Supp. 2d at 425, and other courts have held that unjust enrichment claims cannot be brought in states that have not enacted *Illinois Brick* repealer statutes "absent authority from the courts of

those states that would allow unjust enrichment claims to proceed." *In re Lidoderm Antitrust Litig.*, 103 F. Supp. 3d 1155, 1175 (N.D. Cal. 2015). In other words, summary judgment must be granted if there is explicit confirmation that either (1) unjust enrichment claims are disallowed in states where indirect purchasers are barred from bringing antitrust or consumer protection statues, or (2) unjust enrichment claims are allowed to proceed. Defendants have not put forth clear evidence of either. While it is true that neither of EPPs' antitrust nor consumer protection claims remain, Defendants do not point to case law stating, for example, that the unjust enrichment claim may not still move forward. As such, summary judgment is <u>DENIED</u> with respect to EPPs' unjust enrichment claims under the laws of Utah and Missouri.

### 3.  Proof Of A Direct Benefit In Alabama And Nebraska

Takeda next moves for summary judgment as to EPPs' unjust enrichment claim under the laws of Alabama and Nebraska. As EPPs' Alabama claim is time-barred, again see *infra* IV.C.7, I will only discuss Nebraska. In Nebraska, "[t]o recover on a claim for unjust enrichment, the plaintiff must show that (1) the defendant received money, (2) the defendant retained possession of the money, and (3) the defendant in justice and fairness ought to pay the money to the plaintiff." *Bel Fury Invs. Grp., L.L.C. v. Palisades Collection, L.L.C.*, 19 Neb. App. 883, 883 (2012). "The party seeking a finding of unjust enrichment must be a party to a transaction with the party allegedly unjustly enriched." *Id.* at 889. Takeda argues that EPPs have not provided evidence "that a benefit was conferred directly by the plaintiff to the defendant, rather than indirectly through intermediaries or third parties." [Doc. No. 605-1 at 27]. Here, EPPs largely rely on similar arguments as they made for proof of antitrust injury in Maine, Michigan, and Florida, [*see* Section IV.A.1], to argue that "although EPPs purchased Amitiza through a chain of

30

distribution, their injuries and Takeda's corresponding enrichment occurred as a 'direct and proximate result' of Takeda's unlawful conduct." [Doc. No. 625-1 at 28].

"Unjust enrichment is an equitable remedy, and thus by its very nature is a flexible doctrine . . . by their very nature unjust enrichment claims are ill-suited for bright-line rules of the type defendants suggest." *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2011 WL 4501223, at *7 (N.D. Cal. Sept. 28, 2011). "Rather than looking at the relationship between the parties, courts typically focus on the relation between the plaintiffs' injury and the defendants' conduct." *Id.*; *In re Auto. Parts Antitrust Litig.*, 50 F. Supp. 3d 869, 897 (E.D. Mich. 2014) ("The critical inquiry is not whether the benefit is conferred directly on the defendant, but whether the plaintiff can establish the relationship between his detriment and the defendant's benefit flow from the challenged conduct") (cleaned up). Given the flexibility of the unjust enrichment doctrine and the fact that EPPs have established a relationship between Defendants' conduct and their injury, I do not find that summary judgment in favor of Takeda is warranted as to the unjust enrichment claim. As such, summary judgment is DENIED.

### 4.  Whether New Hampshire Recognizes EPPs' Unjust Enrichment Claim

Takeda next moves for summary judgment as to EPPs' unjust enrichment claim under New Hampshire law. At the motion to dismiss stage, Takeda argued that unjust enrichment in New Hampshire is a remedy rather than an independent cause of action, citing *Pacamor Bearings, Inc. v. Minebea, Co., Ltd.*, 892 F. Supp. 347 (D. N.H. 1995). In her report & recommendation, Judge Kelley held that *Pacamor* "supports an argument that New Hampshire law does not recognize an unjust enrichment claim in the circumstances presented here." [Doc. No. 289 at 56]. However, Judge Kelley found that "Takeda's parenthetical for the case – 'unjust

enrichment is not an independent cause of action,' does not make that argument," so she declined, without prejudice, to recommend dismissal. [*Id.* at 57 (citation omitted)].

*Pacamor* rejected plaintiffs' contention that "the availability of the equitable remedy of restitution for unjust enrichment is not limited to situations in which there is an express or implied contractual relationship between the parties in question." *Id.* at 356. The court held that "[o]bligations imposed on a party under federal and state statutory and common law are not the type of obligations imposed by law that generally give rise to a claim for restitution." *Id.* at 357 (citation omitted). The court further held that:

> Plaintiffs have not cited, nor has this court found, any New Hampshire law cases that support plaintiffs' contention that profits gained by defendants as a result of their alleged violations of the Lanham Act and New Hampshire's law against unfair competition constitute the unjust receipt and retention of a "benefit" for which restitution is required. The court finds and rules that the circumstances of this case do not warrant a remedy under the doctrine of unjust enrichment. Instead, plaintiffs' recovery of the profits allegedly gained by defendants must come, if at all, through the claims brought by plaintiffs under the federal and state laws allegedly violated by defendants.

*Id.* Plaintiffs argue that "courts have allowed indirect purchasers to bring parasitic unjust-enrichment claims based on defendants' violations of New Hampshire's consumer-protection statute." *Niaspan*, 42 F. Supp. 3d at 767. Plaintiffs argue that because they simply plead unjust enrichment in the alternative, *Pacamor* are inapplicable. *See In re Chocolate Confectionary Antitrust Litig.*, 749 F. Supp. 2d 224, 240 (M.D. Pa. 2010) (concluding that an unjust-enrichment claim was sufficiently pled because it amounted to "simply pleading [an] alternative remed[y]" for a consumer-protection claim). However, Plaintiffs' consumer protection claim has been dismissed. [Doc. No. 605 at 36]. EPPs do not elaborate further whether New Hampshire would permit the unjust enrichment claim to go forward in this circumstance, and Takeda has made a compelling argument that under *Pacamor*, EPPs have not provided evidence to support that their

32

overcharges arising from Defendants' violation of federal and state laws are enough to "bring a case within the scope of the doctrine," which is designed as quasi-contract. *Pacamor*, 356–357; *See also In re Pork Antitrust Litig.*, 495 F. Supp. 3d 753, 792 (D. Minn. 2020) ("New Hampshire case law is friendlier to Defendants' argument that unjust enrichment is a remedy and not an independent cause of action."). As such, Takeda's motion for summary judgment as to EPPs' New Hampshire unjust enrichment claim is <u>GRANTED</u>.

### 5.    Whether EPPs Have A Direct Relationship To Defendants In New York

Takeda moves for summary judgment as to EPPs' unjust enrichment claim under New York law relying on *Sperry v. Crompton Corp.*, where New York's highest state court held that plaintiffs were unable to show a direct relationship or connection to the defendants for their unjust enrichment claim to survive dismissal. 8 N.Y.3d 204, 215 (2007). At the motion to dismiss stage, I adopted Judge Kelley's recommendation that the issue be revisited at a later stage, given that *Sperry* is a contested decision. [Doc. No. 289 at 66]. While EPPs contend that Takeda's argument here should be decided under a reconsideration standard, I do not find that necessary. *See e.g.*, *St. John's Hosptial of Hosp. Sisters of Third Ord. of St. Francis v. Nat'l Guardian Risk Retention Grp., Inc.*, No. 15-cv-3292, 2020 WL 1102502, at *4 (C.D. Ill. Mar. 6, 2020) ("Because the legal standard governing motions to dismiss is different from that associated with a motion for summary judgment, the Court does not consider this to be a motion to reconsider any prior decisions"). As such, I will independently decide whether *Sperry*'s holding is applicable here such that summary judgment is warranted.

It is well settled that "the essential inquiry in any action for unjust enrichment or restitution is whether it is against equity and good conscience to permit the defendant to retain what is sought to be recovered." *Paramount Film Distrib. Corp. v. State*, 30 N.Y.2d 415, 421 (1972).

"Generally, courts will look to see if a benefit has been conferred on the defendant under mistake of fact or law, if the benefit still remains with the defendant, if there has been otherwise a change of position by the defendant, and whether the defendant's conduct was tortious or fraudulent." *Id.*

In *Sperry*, a price-fixing case, the court held that while "a plaintiff need not be in privity with the defendant to state a claim for unjust enrichment," such a claim warranted dismissal "under the circumstances of [that] case" because there, "the connection between the purchaser of tires and the producers of chemicals used in the rubber-making process is simply too attenuated to support such a claim." *Sperry*, 8 N.Y.3d at 215–216. *Sperry*'s holding has been reaffirmed and applied in a few other cases. In *State ex rel. Spitzer v. Daicel Chem. Indus., Ltd.*, for example, the New York State Attorney General brought claims on behalf of consumers against manufacturers of food additives that plaintiff alleged were engaged in an illegal conspiracy to fix and inflate the price of those additives. 42 A.D.3d 301 (2007). There, the court held that the unjust enrichment claim must fail because "the end users of the products, in whose interest plaintiff is acting, are too attenuated from the producers of the chemicals which are among the ingredients of those products." *Id.* at 304; *see also Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 182 (2011) ("Although privity is not required for an unjust enrichment claim, a claim will not be supported if the connection between the parties is too attenuated").

Some plaintiffs have attempted to rely on *Cox v. Microsoft Corp.*, 8 A.D.3d 39, 40 (2004) to help their unjust enrichment claims survive. There, the court held that indirect purchasers of Microsoft's software products—pre-installed on computers purchased by plaintiffs—could bring an unjust enrichment claim because "plaintiffs' allegations that Microsoft's deceptive practices caused them to pay artificially inflated prices for its products state a cause of action for unjust enrichment." *Id.* However, the court in *Fenerjian v. Nongshim Co., Ltd*, rejected plaintiffs'

34

invocation of *Cox* because "*Cox* predates *Sperry* and *Daicel* and is contradicted by them. In addition, *Cox* was issued by New York's intermediate court while *Sperry* was issued by the Court of Appeals of New York, which is New York's highest court and is controlling." 72 F. Supp. 3d 1058, 1089 (N.D. Cal. 2014).

Plaintiffs rely on two other cases to argue that *Sperry*'s holding should not apply. In *Waldman v. New Chapter, Inc.*, the court affirmed *Sperry's* holding but found that the relationship between the plaintiff and defendant in *Waldman* was not "too attenuated." 714 F. Supp. 2d 398, 404 (E.D.N.Y. 2010). There, Plaintiff was an indirect purchaser who purchased a whole food product and sued that product's manufacturer for misleading consumers regarding the product's weight. *Id.* The court found that the plaintiff in that case was more like *Cox* than *Sperry*: "Here, Plaintiff is an indirect Berry Green purchaser who is suing Berry Green's manufacturer. She is not suing the manufacturer of a Berry Green ingredient. Thus, much like the *Cox* plaintiff, she is not 'too attenuated' from Berry Green to maintain an unjust enrichment claim." *Id*. Similarly in *In re Processed Egg Prods. Antitrust Litig.*, the court held that New York law does not require plaintiff to show a "direct relationship." 851 F. Supp. 2d 867, 930 (E.D. Pa. 2012). Relying on *Waldman*, the court held that "although Plaintiffs have not alleged facts suggesting the conferral of a direct benefit, such a deficit is not in and of itself fatal to a New York unjust enrichment claim as a matter of law." *Id.*

As Judge Kelley's report and recommendation found, *Waldman* has ben criticized. *Fenerjian*, 72 F. Supp. 3d at 1089 ("*Waldman* does not cite any persuasive authority for distinguishing *Sperry* or *Daicel* on that basis. *Waldman* relies on *Cox,* which, as I have stated above, predates *Sperry* and *Daicel* and appears contrary to those cases. Moreover, the relevant discussion in *Cox* comprises one sentence and *Cox* itself did not reference any distinction

35

between price-fixed products and price-fixed ingredients of products").

At this stage of the litigation, Plaintiffs have not pointed to any persuasive authority from New York's highest court that *Sperry* does not apply. Indeed, the courts that have not dismissed unjust enrichment claims did not do so because *Sperry* is contested. Rather, they did so because they found the relationship to be "not too attenuated." At the summary judgment stage, without more evidence from Plaintiffs regarding the EPPs' relationship with Takeda and Sucampo, I will follow courts in other generic delay cases that have applied *Sperry* to dismiss unjust enrichment claims under New York law. *See Loestrin*, 410 F. Supp. 3d at 384 ("Under . . . New York . . . law, however, a plaintiff must plead the conferral of a direct benefit in order to state a claim of unjust enrichment and, accordingly, the EPPs' unjust enrichment claims under these laws must be dismissed"); *Lidoderm*, 103 F. Supp. 3d at 1178 (finding no distinction between facts in *Lidoderm* and the price-fixing scheme in *Fenerijian*). As such, Takeda's motion for summary judgment as to the New York unjust enrichment claim is <u>GRANTED</u>.

### 6. Failure To Exhaust Remedies In Tennessee

Takeda argues that EPPs have not shown that they have exhausted all remedies to bring an unjust enrichment claim in Tennessee. In Tennessee, a "plaintiff must [] demonstrate that he or she has exhausted all remedies against the person with whom the plaintiff enjoyed privity of contract." *Freeman Indus., LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 525 (Tenn. 2005). However, a "plaintiff need not be in privity with a defendant to recover under a claim of unjust enrichment" and a "plaintiff need not establish that the defendant received a direct benefit from the plaintiff." *Id.* Rather, "a plaintiff may recover for unjust enrichment against a defendant who receives *any* benefit from the plaintiff if the defendant's retention of the benefit would be unjust." *Id.* (emphasis in original).

36

In *Freeman*, plaintiff sought to recover for sorbates (food additives) he purchased from supermarkets in New York that were engaged in a price fixing scheme. There, the defendants argued that plaintiff "failed to establish that it exhausted its remedies against the supermarket from which it purchased the food products that contained sorbates." *Id.* The defendants submitted various affidavits to demonstrate that Freeman had not sought to recover from the supermarket. *Id.* The court held that defendants' affidavits were sufficient to negate the exhaustion of remedies element of the unjust enrichment claim, after which the burden shifted to "Freeman to provide specific facts establishing the existence of disputed issues of material fact that must be resolved by the trier of fact." *Id.* at 526. In response, Freeman presented affidavits that any action against the supermarket would have been futile. The court held that, "to maintain an action for unjust enrichment, a plaintiff is not required to exhaust all remedies against the party with whom the plaintiff is in privity if the pursuit of the remedies would be futile." *Id.* However, in Freeman, the court found that "a bare allegation that any attempt to exhaust its remedies . . . would be futile without providing a factual basis to support the allegation" is insufficient to "establish a disputed issue of material fact as to the exhaustion of remedies." *Id.* As such, the court found that the trial court erred in denying defendants' motion for summary judgment.

Takeda argues that Plaintiffs' bare allegations in the complaint that "[i]t would be futile for Premera and the Class to seek a remedy from any party with whom it has privity of contract" and "futile for Premera and the Class to seek to exhaust any remedy," is insufficient to survive summary judgment, as in *Freeman*. [*See* Doc. No. 1 at ¶¶ 288–289]. EPPs respond that futility is self-evident. For instance, "[s]ome federal courts sitting in diversity have found that consumer plaintiffs have adequately pled futility of pursuing remedies under Tennessee law by alleging,

37

*inter alia,* that the resellers of a product (*i.e.,* the parties in privity of contract with plaintiffs) were not involved in the producer defendants' price-fixing conspiracy, and thus not liable for or the cause of the plaintiffs' alleged losses resulting from that conspiracy." *Processed Egg*, 851 F. Supp. 2d at 919. In *Processed Egg*, the court denied a motion to dismiss an unjust enrichment claim under Tennessee law and agreed with plaintiffs that any remedies against parties "from whom they directly purchased eggs (and thus presumably with whom Plaintiffs were in privity of contract) would be futile because those parties are, as alleged, not directly or indirectly liable for the Plaintiffs' losses due to their lack of involvement in the conspiracy." *Id.* at 920; *see also In re TFT-LCD (Flat Panel) Antitrust Litig.*, 599 F. Supp. 2d 1179, 1193 (N.D. Cal. 2009) (denying motion to dismiss because "futility is self-evident in these circumstances where the alleged price-fixing was done by the defendants in the manufacture of LCD panels and LCD products, and there has been no allegation that the resellers were involved in the conspiracy"); *Solodyn*, 2015 WL 5458570, at *20 (accepting end payors allegation that "it would be futile to seek relief from intermediaries in the chain of distribution"). Alternatively, Plaintiffs argue that even if futility is not self-evident, they have provided evidence that Takeda's market restraint, and not any action by any intermediary, caused EPPs to be overcharged for brand and generic Amitiza. Additionally, Dr. Kovach's reports demonstrate that retail drug prices are partly determined by wholesale prices.

I agree with EPPs that futility is self-evident. I am unaware of what more evidence EPPs are required to provide at the summary judgment stage to prove that they could not have sued and recovered from an intermediary like a PBM or ASO Provider. This is especially so considering that EPPs' claims arise from a Settlement Agreement, in which the intermediaries are not alleged to have any involvement. Further, EPPs' other evidence of market power and Dr.

Kovach's expert opinions are in dispute and at least warrant denial of summary judgment. As such, I decline to dismiss EPPs' unjust enrichment claim under the laws of Tennessee for failure to exhaust remedies and Takeda's motion for summary judgment as to this claim is <u>DENIED</u>.

7.    **Timeliness Of EPPs' Unjust Enrichment Claims Under The Laws Of Alabama, Arizona, Colorado, Connecticut, Kansas, Maine, North Carolina, Oregon, and Wisconsin**

Takeda argues that EPPs' unjust enrichment claims in Alabama, Arizona, Colorado, Connecticut, Kansas, Maine, North Carolina, Oregon, and Wisconsin are time-barred. In each of these states, the statute of limitations ranges from three to six years. As noted above, EPPs' claims accrued as early as October 2016, when they paid their first overcharge, but did not file their complaint until November 30, 2023, more than seven years after EPPs' began incurring overcharges. Additionally, EPPs were on notice of their claims at least by January 2021, two years and five months before filing the first complaint. I will assess whether either the continuing violations doctrine or the fraudulent concealment doctrine applies in each of these states.

*Alabama and Colorado:* In Alabama, the statute of limitations for unjust enrichment for EPPs' antitrust allegations is two years. *See Auburn Univ. v. Int'l Bus. Machines, Corp.*, 716 F. Supp. 2d 1114, 1118 (M.D. Ala. 2010) (finding that two-year statute of limitations applies when actions sound in tort); *Associated Gen. Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 547 (1983) ("[A]ntitrust violations are essentially tortious acts") (citation omitted). The fraudulent concealment doctrine will not apply to toll EPPs' claims under Alabama law because, based on Plaintiffs' theory, fraudulent concealment would have only delayed their discovery of the violating conduct until January 2021. Because EPPs did not file their action within two years of January 2021, fraudulent concealment cannot toll Plaintiffs' claims. The same is true in Colorado, where the statute of limitations for an unjust enrichment

39

claim based in tort is two years. *Crespo-Gutierrez v. Resendiz Ramirez*, No. 16-cv-01028, 2016 WL 9441427, at \*4 (D. Colo. Sept. 23, 2016) (cleaned up).

The continuing violations doctrine is also unavailable in Alabama and Colorado. *Ex parte Abbott Lab'ys*, 342 So. 3d 186, 196 (Ala. 2021) ("Alabama law does not recognize a continuing tort in instances where there has been a single act followed by multiple consequences"); *see also Trondheim Cap. Partners LP v. Life Ins. Co. of Alabama*, No. 19-cv-1413, 2022 WL 893542, at \*23 (N.D. Ala. Mar. 25, 2022) (Alabama Supreme Court has limited the continuing tort doctrine to limited situations not encompassing the type of claims EPPs bring here); *Reynolds v. Great N. Ins. Co.*, 2023 COA 77, ¶ 20, 539 P.3d 930, 933 (continuing violation doctrine's "application has been limited to discrimination cases in Colorado"). As such, EPPs' unjust enrichment claims under Alabama and Colorado law is time-barred.

***Kansas:*** In Kansas, the statute of limitations for unjust enrichment is two years. Kan. Stat. Ann. § 60-513(a)(4) ("An action for injury to the rights of another, not arising on contract" shall be brought within two years). Contrary to EPPs' assertions, their claims are not based in contract and therefore, the three-year statute of limitations under § 60-512 is inapplicable. *Keesling v. Wilson*, No. 68,283, 1993 WL 13965775, at \*2 (Kan. Ct. App. Mar. 19, 1993) ("The statute of limitations for an action sounding in tort is two years"); *Murray v. Miracorp, Inc.*, 318 Kan. 615, 629 (2024) ("Under the applicable statutes of limitations, the [plaintiffs] needed to bring their [unjust enrichment] action within two years"). As explained above, because Plaintiffs were on notice of their claims by at least January 2021 and did not bring their claims within two years of that notice, fraudulent concealment tolling is unavailable. Additionally, the continuing tort doctrine is unavailable in Kansas. *N. Nat. Gas Co. v. Nash Oil & Gas, Inc.*, 526 F.3d 626, 631

(10th Cir. 2008) ("Kansas would not apply the continuing-tort doctrine to claims for conversion or unjust enrichment"). As such, EPPs' unjust enrichment claim in Kansas is time-barred.

*Oregon:* In Oregon, the statute of limitations for unjust enrichment sounded in tort is two years. *Htaike v. Sein*, 269 Or. App. 284, 294–96 (2015) (applying two-year statute of limitations under ORS 12.110(1) to unjust enrichment claim because the gravamen of the action was grounded in tort). As explained above, because Plaintiffs were on notice of their claims by at least January 2021 and did not bring their claims within two years of that notice, fraudulent concealment tolling is unavailable.

While the continuing tort doctrine is available in Oregon, Oregon's Supreme Court has explained that "at the heart of the continuing tort idea is the concept that recovery is for the cumulative effect of wrongful behavior, not for discrete elements of that conduct." *Davis v. Bostick*, 282 Or. 667, 671–72 (1978). In other words, a continuing tort occurs "where either no single act gives rise to the tort claim or the plaintiff's harm can be determined only at the end of a series of alleged wrongful acts based on the *cumulative* effect of the wrongful behavior." *Curzi v. Oregon State Lottery*, 286 Or. App. 254, 266 (2017) (emphasis in original). Here, EPPs' theory of continuing harm is based on the effects of one discrete action—the execution of the anticompetitive Settlement Agreement that led to the continuing overcharges. As that does not fit the definition of continuing tort in Oregon, the continuing violations doctrine cannot save Plaintiffs' claims. As such, EPPs' unjust enrichment claim under Oregon law is time-barred.

*Arizona:* In Arizona, the statute of limitations for an unjust enrichment claim based in tort is three years. "A review of Arizona . . . . tort law shows it is governed by the three-year statute of limitations." *In re Opana ER Antitrust Litig.*, 2021 WL 2291067, at *28 (N.D. Ill. June 4, 2021) ("Antitrust claims have traditionally sounded in tort") (applying Ariz. Rev. Stat. Ann. §

41

12-543(1)). As explained above in Section IV.A.3, Arizona does not recognize the doctrine of continuing tort, and EPPs have not met the standard of showing fraudulent concealment. As such, EPPs' unjust enrichment claim under Arizona law is time-barred.

*Connecticut:* In Connecticut, the applicable statute of limitations for unjust enrichment is three years. *Reichman Brodie Real Est., LLC v. U.S. Bank, Nat'l Ass'n,* 2021 WL 3487796, at \*2 (Conn. Super. Ct. July 15, 2021) (citing Conn. Gen. Stat. Ann. § 52-581). Takeda argues that this claim may not be tolled by either tolling doctrine but seems to only rely upon case law evaluating EPPs' CUTPA claims, rather than their unjust enrichment claims. As to unjust enrichment, the continuing violations doctrine is available where there is evidence of a breach of duty that remained in existence after the commission of the original wrong. *Rickel v. Komaromi*, 144 Conn. App. 775, 785 n.4 (2013) (citation omitted). However, "after the discovery of actionable harm, the policy behind the continuing course of conduct doctrine is no longer served." *Id.* (citation omitted). Accordingly, and as explained above in Section IV.A.3, EPPs' claims for unjust enrichment are not barred by the statute of limitations entirely, but any recovery for these claims must be limited to purchases within the applicable limitations period, (i.e., after Nov. 30, 2020, respectively).

As to fraudulent concealment, Takeda has not cited any case law that holds fraudulent concealment is unavailable to toll unjust enrichment claims in Connecticut. However, some case law in Connecticut indicates that the doctrine is available. *Merrill Lynch & Co. v. Mathes*, No. 0126054, 1995 WL 534247, at \*6 (Conn. Super. Ct. Sept. 1, 1995) ("The statute of limitations may be tolled if there is something tantamount to a fraudulent concealment cause of action") (citation omitted). As Takeda makes no other substantive arguments regarding the sufficiency of EPPs' evidence of fraudulent concealment, I find that summary judgment is unwarranted. As

42

such, I will not find EPPs' claim for unjust enrichment under the laws of Connecticut untimely at this stage and summary judgment is denied.

**Maine:** The statute of limitations for unjust enrichment in Maine is six years. *Thurlow v. Connolly*, No. 04-cv-745, 2005 WL 2722917, at *5 (Me. Super. July 11, 2005) ("The statute of limitations on claims for unjust enrichment is six years from the time the cause of action accrues") (Citing Me. Rev. Stat. Ann. tit. 14, § 752). As explained above in Section IV.A.3, the continuing violations doctrine is unavailable in Maine, and EPPs have failed to meet the standard to show fraudulent concealment. As such, Plaintiffs' unjust enrichment claim under Maine law is time-barred and summary judgment is granted.

**North Carolina:** The statute of limitations for unjust enrichment in North Carolina is three years. N.C. Gen. Stat. Ann. § 1-52. In North Carolina, the doctrine of equitable estoppel may be used to toll the statute of limitations where the elements of a fraudulent concealment claim are met. *Friedland v. Gales*, 131 N.C. App. 802 (1998). "To assert a claim for fraudulent concealment, there must be a showing that the opposing party knew a material fact, and failed to fully disclose that fact in violation of a pre-existing duty to disclose." *Id.* at 807. However, to toll the statute of limitations, "it is not necessary to show a pre-existing duty to disclose a material fact." *Id.* at 808. "Thus even in the absence of a pre-existing legal duty, a defendant may still be barred from asserting a statute of limitations defense by the doctrine of equitable estoppel. Under the doctrine of equitable estoppel, the fraud consists in the inconsistent position subsequently taken, rather than in the original conduct. It is the subsequent inconsistent position, and not the original conduct that operates to the injury of the other party." *Id.* (citation omitted). Additionally, Plaintiffs must demonstrate that they relied on Defendants' misrepresentations. *Id.*

43

As explained above in Section IV.A.3, Plaintiffs have not provided adequate proof at this stage to demonstrate reliance. As such, fraudulent concealment cannot toll EPPs' claims here. As to the continuing violations doctrine, the tolling defense in North Carolina is "virtually identical" to the federal continuing wrong doctrine. *Nat'l Collegiate Athletic Ass'n*, 2025 WL 2256311, at *7. Under North Carolina law, "the continuing wrong doctrine is not easily invoked," and courts apply it "narrowly." *Id.* at *6. "In order for the continuing wrong doctrine to be triggered, a plaintiff must demonstrate that its injuries are the result of continual unlawful acts, and not continual ill effects from an original violation." *Id.* Here, EPPs' tolling theory is based on the continuing ill effects—i.e., the overcharges resulting from the Settlement Agreement. This is the type of theory that has been rejected by North Carolina courts when considered in the context of unjust enrichment claims. *See id.* (citing cases); *see also e.g., Pryor v. Nat'l Collegiate Athletic Ass'n*, No. 24-cv-4019, 2025 WL 2022123, at *9 (S.D. Ohio July 18, 2025) ("Mr. Pryor argues his unjust enrichment claim is timely for the same reasons as his antitrust claims. But, as discussed above, he gave Defendants the benefit (control over his NIL) over a decade ago. The 'continual ill effects' resulted from this original alleged violation, not from Defendants' later conduct. Accordingly, his unjust enrichment claim is time-barred."). For these reasons, the continuing violations doctrine is unavailable to toll the EPPs' claims. As such, EPPs' unjust enrichment claims under North Carolina law is time-barred and summary judgment is granted.

*Wisconsin:* In Wisconsin, the statute of limitations for unjust enrichment is six years. *CMFG Life Ins. Co. v. UBS Sec.*, 30 F. Supp. 3d 822, 831 (W.D. Wis. 2014) (citing Wis. Stat. Ann. § 893.43). Though Takeda argues that Wisconsin has rejected the continuing violations doctrine, that holding only applied to an antitrust claim, but did not discuss whether the doctrine would toll an unjust enrichment claim. *In re Pre-Filled Propane Tank*, 2019 WL 4796528, at *16

(the "current Wisconsin precedent does not foreshadow the Wisconsin Supreme Court recognizing the continuing violations doctrine in Wisconsin Antitrust Act claims"). Some cases have applied the continuing violations doctrine to claims outside the antitrust context. In any event, Wisconsin law recognizes that the continuing violations doctrine would not apply to an allegation of a single act that caused "injury [] over time." *Dellis v. Fay Servicing, LLC*, No. 18-cv-202, 2018 WL 4927525, at *4 (E.D. Wis. Oct. 10, 2018) (distinguishing *Kolpin v. Pioneer Power & Light Co.*, 162 Wis. 2d 1 (1991)). As I have already discussed, Plaintiffs' allegations that the overcharges resulting from the single act of the Settlement Agreement would not likely apply under Wisconsin law to toll the statute of limitations, especially in the antitrust context. Similarly, as held above in Section IV.A.3, Plaintiffs have not provided sufficient evidence of detrimental reliance sufficient to invoke tolling under the doctrine of fraudulent concealment. As such, Plaintiffs' claim for unjust enrichment under Wisconsin law is time-barred and summary judgment is granted.

In accordance with the above, Takeda's motion for summary judgment as to the timeliness of EPPs' unjust enrichment claims under the laws of Alabama, Arizona, Colorado, Kansas, Oregon, Maine, North Carolina, and Wisconsin, is <u>GRANTED</u>, but <u>DENIED</u> as to Connecticut.

## V.   CONCLUSION

For the above reasons, Defendants' Motion for Partial Summary Judgment, [Doc. No. 604; 23-cv-12918 Doc. No. 182], is <u>DENIED in part</u> and <u>GRANTED in part</u>:

1.  Summary judgment is <u>GRANTED</u> in favor of Takeda as to EPPs' antitrust claims under Michigan, Maine, and Florida law for failure to show proof of injury as to each individual class member.

2.  Summary judgment is <u>DENIED</u> as to EPPs' antitrust claim under Hawaii law as Defendants have not shown that EPPs lack standing.

3.  Summary judgment is <u>GRANTED</u> in favor of Takeda as to EPPs' antitrust claims under the laws of Arizona, Kansas, Maine, Michigan, New York, North Carolina, Oregon, and Wisconsin, as those claims are time-barred.

4.  Summary judgment is <u>DENIED</u> as to EPPs' consumer protection claims under the FDUTPA as Defendants have not shown that EPPs' lack standing.

5.  Summary Judgment is <u>DENIED</u> as to EPPs' consumer protection claims in Florida and California because there is at least a material dispute of fact as to whether EPPs have established a nexus to Florida and California.

6.  Summary is <u>GRANTED</u> in favor of Takeda as to the FDUTPA claim but <u>DENIED in part</u> as to the CUTPA claim. EPPs' claims under the CUTPA are not barred by the statute of limitations entirely, but any recovery for these claims must be limited to purchases within the applicable limitations period, (i.e., after Nov. 30, 2020, respectively).

7.  Takeda's motion for summary judgment is <u>DENIED</u> as to EPPs' unjust enrichment claims under the laws of Connecticut, Hawaii, Iowa, Minnesota, Missouri, Nevada, and New Mexico. Defendants may request a jury instruction indicating that if the jury finds that EPPs are meritorious on their statutory claims, they cannot recover for their unjust enrichment claims.

8.  Summary judgment is <u>DENIED</u> with respect to EPPs' unjust enrichment claims under the laws of Utah and Missouri absent clearer evidence that this claim cannot proceed.

9.  Summary judgment is <u>DENIED</u> as to EPPs' unjust enrichment claims in Alabama and Nebraska as Takeda has not shown lack of a direct benefit to Defendants in those states.

10. Summary judgment is <u>GRANTED</u> in favor of Takeda as to EPPs' unjust enrichment claim in New Hampshire as New Hampshire does not recognize unjust enrichment as an independent cause of action.

11. Summary judgment as to EPPs' unjust enrichment claim in New York is <u>GRANTED</u> due to EPPs' failure to show a direct relationship between EPPs and Defendants under New York law.

12. Summary judgment as to EPPs' unjust enrichment claim in Tennessee is <u>DENIED</u> as Defendants have not shown that EPPs failed to exhaust remedies.

13. Summary judgment is <u>GRANTED</u> in favor of Takeda as EPPs' unjust enrichment claims under the laws of Alabama, Arizona, Colorado, Kansas, Oregon, Maine, North Carolina, and Wisconsin are untimely, but <u>DENIED</u> as to EPPs' unjust enrichment claims in Connecticut.

**SO ORDERED.**

/s/ Myong J. Joun
United States District Judge