# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

_____

IN RE AMITIZA ANTITRUST
LITIGATION
_____

)
)
)
)
)

Civil Action No. 21-11057-MJJ

### JURY VERDICT FORM

1.  Have Plaintiffs proven, by a preponderance of the evidence, that Takeda possessed substantial market power within the relevant market?

    Yes _____ No _____

    [If you answered "YES" to Question 1, proceed to answer Question 2. If you answered "NO" to Question 1, then stop here, and go to the end to sign/date the form.]

2.  Have Plaintiffs proven, by a preponderance of the evidence, that the settlement agreement contained a reverse payment from Sucampo/Takeda to Par in the form of:

    a.  50% profit split?

        Yes _____ No _____

    b.  Declining royalty provision?

        Yes _____ No _____

    [If you answered "YES" to either subpart (a) or (b) in Question 2, proceed to Question 3. If you answered "NO" to both subparts (a) or (b) in Question 2, then stop here, and go to the end to sign/date the form.]

3.  Have Plaintiffs proven, by a preponderance of the evidence, that the reverse payment was large and unjustified?

    Yes _____ No _____

    [If you answered "YES" to Question 3, proceed to Question 4. If you answered "NO" to Question 3, then stop here, and go to the end to sign/date the form.]

1

4. Have Plaintiffs proven, by a preponderance of the evidence, that the reverse payment had anticompetitive effects?

       Yes _____ No _____

[If you answered "YES" to Question 4, proceed to Question 5. If you answered "NO" to Question 4, then stop here, and go to the end to sign/date the form.]

5. Have Plaintiffs proven, by a preponderance of the evidence, that Sucampo/Takeda entered into an implicit agreement with Par not to launch its own authorized generic?

       Yes _____ No _____

[If you answered "YES" to Question 5, proceed to Question 6. If you answered "NO" to Question 5, then stop here, and go to the end to sign/date the form.]

6. Has Takeda proven, by a preponderance of the evidence, that its conduct had procompetitive benefits?

       Yes _____ No _____

[If you answered "YES" to Question 6, proceed to Question 7. If you answered "NO" to Question 6, then skip Questions 7 and 8, and proceed to Question 9.]

7. Have Plaintiffs proven, by a preponderance of the evidence, that the reverse payment provisions were not necessary to achieve those procompetitive benefits, and that there were alternative ways to achieve the same result with less harm to competition?

       Yes _____ No _____

[If you answered "YES" to Question 7, then skip Question 8 and go to Question 9. If you answered "NO" to Question 7, proceed to Question 8.]

8. Have Plaintiffs proven, by a preponderance of the evidence, that the anticompetitive effects of Takeda's conduct substantially outweighed the procompetitive benefits claimed by Takeda?

       Yes _____ No _____

[If you answered "YES" to Question 8, proceed to Question 9. If you answered "NO" to Questions 8, then stop here, and go to the end to sign/date the form.]

2

9. Did the anticompetitive settlement agreement between Sucampo/Takeda and Par result in some overcharge to the following plaintiffs?

   a. The members of the Direct Purchaser Class:      Yes _____ No _____

   b. Albertsons Companies:      Yes _____ No _____

   c. CVS Pharmacy, Inc.:      Yes _____ No _____

   d. H-E-B, L.P.:      Yes _____ No _____

   e. The Kroger Co.:      Yes _____ No _____

   f. Walgreen Co.:      Yes _____ No _____

   g. The members of the End Payor Class:      Yes _____ No _____

   [If you answered "YES" to any of the plaintiffs in Question 9 (a) - (g), proceed to Question 10. If you answered "NO" to all plaintiffs in Question 9 (a) - (g), then stop here, and go to the end to sign/date the form.]

10. When would a generic version of Amitiza have come to market if it had not been for the anticompetitive settlement agreement?

   _____ _____, 20____.

   [Proceed to Question 11.]

11. If you answered "YES" to any of the plaintiffs in Question 9 (a) – (g), what is the amount of overcharge damages sustained by those plaintiffs?

   a. Direct Purchaser Class:      $_____

   b. Albertsons Companies:      $_____

   c. CVS Pharmacy, Inc.:      $_____

   d. H-E-B, L.P.:      $_____

   e. The Kroger Co.:      $_____

   f. Walgreen Co.:      $_____

   g. End Payor Class:

      California      $_____

      Connecticut      $_____

      District of Columbia      $_____

      Hawaii      $_____

      Iowa      $_____

      Maryland      $_____

| Minnesota | $ _____ |
| North Dakota | $ _____ |
| Nebraska | $ _____ |
| New Mexico | $ _____ |
| Nevada | $ _____ |
| Rhode Island | $ _____ |
| South Dakota | $ _____ |
| Tennessee | $ _____ |
| Vermont | $ _____ |

[If you awarded damages to any of the States in the End Payor Class in Question 11 (g), proceed to Question 12. If you awarded damages to none of the States, then stop here, and go to the end to sign/date the form.]

12. Did the End Payor Plaintiffs prove, by a preponderance of the evidence, that Takeda's actions were "willful"?

    Yes _____ No _____

[Proceed to Question 13.]

13. Did the End Payor Plaintiffs prove, by a preponderance of the evidence, that Takeda's actions were "flagrant"?

    Yes _____ No _____

[Proceed to Question 14.]

14. If you answered "YES" to Question 13 or Question 14, what additional damages do you award?

    1X (no more damages)        _____
    2X (two times damages)      _____
    3X (three times damages)    _____

I certify that the answers to each of the questions are unanimous.

Dated: May ___, 2026                  _____
                                      Jury Foreperson

4