**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| IN RE AMITIZA ANTITRUST LITIGATION | Master Docket No. 1:21-cv-11057-MJJ |
| THIS DOCUMENT RELATES TO<br><br>*FWK Holdings, LLC, et al. v. Takeda Pharmaceutical Company Limited, et al.*, 1:21-cv-11057-MJJ<br><br>*KPH Healthcare Servs, Inc., A/K/A Kinney Drugs, Inc. v. Takeda Pharmaceutical Company Limited, et al.*, 1:21-cv-11255-MJJ | |

**THE DIRECT PURCHASER CLASS PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR ENTRY OF JUDGMENT, AN AWARD OF THE COST OF SUIT INCLUDING A REASONABLE ATTORNEY'S FEE, AND ENTRY OF A SCHEDULE FOR FEE PETITIONS**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. Gissell,*
  2024 WL 1956174 (D. Mass. Mar. 4, 2024)......................................................................4

*Bay State HMO Mgmt., Inc. v. Tingley Sys., Inc.,*
  181 F.3d 174 (1st Cir. 1999).............................................................................................5

*Budinich v. Becton Dickinson & Co.,*
  486 U.S. 196 (1988)..........................................................................................................8

*Fairholme Funds, Inc. v. Fed. Housing Fin. Agency,*
  2024 WL 1213200 (D.D.C. Mar. 20, 2024)......................................................................7

*Glob. Naps, Inc. v. Verizon New England, Inc.,*
  396 F.3d 16 (1st Cir. 2005)...............................................................................................5

*Haddad Motor Grp. Inc. v. Karp Ackerman Skabowski & Hogan PC,*
  716 F. Supp. 2d 161 (D. Mass. 2010)...............................................................................4

*Home Placement Serv., Inc. v. Providence J. Co.,*
  819 F.2d 1199 (1st Cir. 1987)...........................................................................................8

*Krakauer v. Dish Network, L.L.C.,*
  925 F.3d 643 (4th Cir. 2019).............................................................................................6

*In re Massachusetts Helicopter Airlines, Inc.,*
  469 F.2d 439 (1st Cir. 1972).............................................................................................5

*In re Neurontin Mktg., Sales Practices, & Prods. Liability Litig.,*
  No. 04-cv-10981, ECF No. 3288 (D. Mass. Feb. 14, 2011).............................................8

*In re New Motor Vehicles Canadian Export Antitrust Litig.,*
  2012 WL 379947 (D. Me. Feb. 3, 2012) ..........................................................................7

*Parks v. Pavkovic,*
  753 F.2d 1397 (7th Cir. 1985) ..........................................................................................6

*Sitzer v. Nat'l Assoc. of Realtors,*
  No. 19-cv-332, ECF No. 1401 (W.D. Mo. Mar. 18, 2024) ..............................................8

*Strey v. Hunt Int'l Resources Corp.,*
  696 F.2d 87 (10th Cir. 1982)............................................................................................7

*Tyson Foods, Inc. v. Bouaphakeo,*
  577 U.S. 442 (2016)..................................................................................................6

*In re Urethane Antitrust Litig.,*
  768 F.3d 1245 (10th Cir. 2014) ..............................................................................7

*In re Urethane Antitrust Litig.,*
  No. 04-md-1616, ECF No. 2899 (D. Kan. June 7, 2013)........................................8

**Statutes**

15 U.S.C. § 15(a) .....................................................................................................3, 8

28 U.S.C. § 1961(a)....................................................................................................4

**Other Authorities**

Fed. R. App. P. 4(a)(4)(A) ..........................................................................................6

Fed. R. Civ. P. 23(h)...................................................................................................9

Fed. R. Civ. P. 54(b)..................................................................................................4,5

Fed. R. Civ. P. 54(d)(2) ...........................................................................................1, 9

Fed. R. Civ. P. 54(d)(2)(B) ......................................................................................1, 9

Fed. R. Civ. P. 58(a), (b)(2)(A) ..................................................................................3

Fed. R. Civ. P. 58(b)(2)..............................................................................................1

Fed. R. Civ. P. 58(d)...................................................................................................3

Fees, Payments, and Interest Rates,
  https://www.mad.uscourts.gov/finance/fees.htm (last accessed June 16,
  2026)......................................................................................................................4

IIA Phillip E. Areeda, *Antitrust Law* ¶ 330e (4th ed. 2025)........................................9

J. Moore, Federal Practice (2d ed. 1971) ...................................................................5

*Manual for Complex Litigation, Fourth* § 21.721 ........................................................9

## I.    INTRODUCTION

The direct purchaser class plaintiffs[1] (direct purchasers) respectfully move this Court (a) for approval of the form of judgment as set forth in Exhibit A to this motion, pursuant to Fed. R. Civ. P. 58(b)(2); (b) for an order adjudging that under 15 U.S.C. § 15(a) and as of the time of the judgment, the certified direct purchaser class has an entitlement to an award of the cost of suit, including a reasonable attorney's fee, payable jointly and severally by the defendants, pursuant to Fed. R. Civ. P. 54(d)(2); and (c) for an order staying proceedings with respect to the determination of the amount of the award of the cost of suit including a reasonable attorney's fee under 15 U.S.C. § 15(a) payable by the defendants until the issuance of a mandate by the First Circuit (in the event the defendants prosecute a timely appeal) or other order of this Court, pursuant to Fed. R. Civ. P. 54(d)(2)(B).

## II.    BACKGROUND

On March 1, 2024, the Court entered the parties' Stipulation and Proposed Order Regarding Partial Coordination of Related Cases, ordering that the parties to the direct purchaser class action, an end-payor class action, and retailer actions "use their best efforts to have all discovery and pretrial motion practice proceed in a coordinated manner." The Order further consolidated  the separate case dockets "with the DPP case docket," but confirmed that "a party in these actions shall not be a party to any action other than those in which it is named as a party."[2]

On September 19, 2025, the Court certified a class of direct purchasers consisting of:

> All persons and entities in the United States and its territories that directly purchased brand Amitiza and/or generic Amitiza in any form from Takeda or

---

[1] KPH Healthcare Services, Inc., a/k/a Kinney Drugs, Inc. and the certified direct purchaser class.

[2] No. 1:23-cv-13061-MJJ, ECF No. 36 at 3 (order regarding partial coordination of related cases); *see* Doc No. 148 (order on master docket regarding partial coordination of related cases).

any generic Amitiza manufacturer other than Par, or their subsidiaries or affiliates, from the beginning of the period of delayed generic entry until January 2023; and Excluded from the class are the defendants and their officers, directors, management, employees, parents, subsidiaries, and affiliates, all governmental entities, and R&S Northeast.[3]

On November 21, 2025, the direct purchaser class filed its Motion to Approve the Form and Manner of Notice, updating its class definition to exclude purchases from the generic manufacturers Dr. Reddy's and Sun to conform with the class certification order.[4] On December 23, 2025, the Court approved that motion.[5]

On May 18, 2026, after a five-week trial, the jury returned a unanimous verdict against Takeda Pharmaceutical Company Limited and Takeda Pharmaceuticals U.S.A., Inc. (collectively, Takeda) in favor of the direct purchasers in the amount of $474,897,965.[6] After applying mandatory trebling under 15 U.S.C. § 15(a), this judgment shall amount to $1,424,693,895. The jury found that if not for Takeda's anticompetitive conduct, generic entry would have begun in April 2018.[7]

The direct purchaser class proposes the following complete class definition for judgment:

> All persons and entities in the United States and its territories that directly purchased brand Amitiza and/or generic Amitiza in any form from Takeda or any generic Amitiza manufacturer other than Par, Dr. Reddy's, or Sun, or their subsidiaries or affiliates, from April 2018 until January 2023. Excluded from the class are the defendants and their officers, directors, management, employees,

---

[3] Doc No. 616 at 2 (class certification order). In the same order, the Court excluded Meijer and generic-only purchasers. *Id.* at 22, 25.

[4] Doc Nos. 640, 640-2 at 4 (motion to approve the form and manner of notice and notice of certified litigation class action). In the notice of certified litigation class action, the relevant purchase period was October 2016 to January 2023. Doc No. 640-2 at 5.

[5] Doc No. 649.

[6] Doc No. 903 (jury verdict).

[7] *Id.*

parents, subsidiaries, and affiliates, all governmental entities, R&S Northeast, Meijer, Inc., and Meijer Distribution, Inc.[8]

### III.    ARGUMENT

**A.    Entry of Final Judgment in a Separate Document**

The direct purchasers request entry of judgment on the jury's verdict in their favor against Takeda as follows:

a) The judgment, per Fed. R. Civ. P. 23(c)(3), applies to the class as defined by the class definition, less the entities that opted out of the class during the opt-out period;[9]

b) Takeda Pharmaceutical Company Limited and Takeda Pharmaceuticals U.S.A., Inc. are jointly and severally liable for the entire amount of the judgment;

c) The damages awarded by the jury shall be trebled pursuant to 15 U.S.C. § 15(a);

d) The direct purchaser class shall be awarded the cost of the suit, including a reasonable attorney's fee pursuant to 15 U.S.C. § 15(a); and

e) Post-judgment interest shall be awarded pursuant to 28 U.S.C. § 1961(a).

A proposed final judgment is attached as Exhibit A.

Every judgment must be set out in a separate document and, where a jury returns "a general verdict with answers to written questions," the court "must promptly approve the form of the judgment, which the clerk must promptly enter."[10] A party may request that judgment be entered.[11]

Under the Clayton Act, the direct purchasers are entitled to "recover threefold damages by [them] sustained, and the cost of suit, including a reasonable attorney's fee."[12] The trebled

---

[8] *See* Doc No. 616 at 2; Doc Nos. 640, 640-2 at 4; Doc No. 649; Doc No. 903.

[9] The following putative class members timely opted out of the class: Albertsons Companies, Inc., CVS Pharmacy, Inc., H-E-B, L.P., The Kroger Co., and Walgreen Co.

[10] Fed. R. Civ. P. 58(a), (b)(2)(A).

[11] *See* Fed. R. Civ. P. 58(d).

[12] 15 U.S.C. § 15(a). The direct purchasers are not moving for pre-judgment interest.

damages owed to the direct purchasers, before costs and fees, are $1,424,693,895. Under federal law, "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court" to be "calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield . . . for the calendar week preceding the date of the judgment."[13] Said rate is currently 3.87%.[14] That means that for every week judgment is not entered, the direct purchaser class loses approximately $1 million in the value owed to them in mandatory interest.[15] Upon the entry of the merits judgment granting the direct purchasers the right to recover a reasonable attorney's fee, interest will also accrue on the attorney's fees.[16]

Because this judgment would include all claims in and parties to the direct purchaser plaintiff action, there is no need for the Court to determine whether "there is no just reason for delay" under Fed. R. Civ. P. 54(b).[17] The direct purchaser, end-payor, and retailer purchaser actions were not consolidated "for all purposes;" the dockets were consolidated and the actions were coordinated in the interest of efficiency and judicial economy.[18] The separate actions were

---

[13] 28 U.S.C. § 1961(a).

[14] *See* Fees, Payments, and Interest Rates, https://www.mad.uscourts.gov/finance/fees.htm (last accessed June 16, 2026). This is the rate as of the date of filing this motion. In the Proposed Order attached hereto as Exhibit A, the percentage has been left blank for the Court to fill in based on the rate upon entry of judgment.

[15] $1,424,693,895*.0387/52=$1,060,301.03.

[16] *See Haddad Motor Grp. Inc. v. Karp Ackerman Skabowski & Hogan PC*, 716 F. Supp. 2d 161, 162 (D. Mass. 2010) (noting majority rule among circuits consistently followed by the District of Massachusetts that interest on fees accrues from the date of the merits judgment, not the "quantum judgment" quantifying the amount of fees to be awarded); *Adams v. Gissell*, 2024 WL 1956174, at *2 (D. Mass. Mar. 4, 2024) (same, collecting cases).

[17] Fed. R. Civ P. 54(b) (in actions that have one more claims or multiple parties, requiring determination of "no just reason for delay" for entry of judgment "as to one or more, but fewer than all, claim or parties").

[18] *See* No. 1-23-cv-13061-MJJ, ECF No. 36 (order regarding partial coordination of related cases), at 2–3 ("Takeda and Moving Plaintiffs are in agreement that some degree of coordination is required to properly and efficiently complete fact discovery and bring these

"tried together but each retain[ed] its separate character and require[d] entry of a separate judgment."[19] As such, no Rule 54(b) certification is required.[20]

The direct purchasers conferred with Takeda regarding this motion, and Takeda expressed that "dividing" the judgment into three separate matters will create inefficiencies. But there is nothing to divide. There already are three separate actions that require three separate judgments. Any purported inefficiencies can be resolved through coordinated briefing of common post-trial matters. To that end, the plaintiff groups agree that all three plaintiff groups will be bound by briefing on common issues.[21] And the time for appeal in each case will

---

actions to trial in a manner that will not cause any party to suffer prejudice."); Hearing Tr. of Mar. 6, 2025 Status Conf. at 4:8-9 (asking if the parties "want to have a single trial across all of these cases"); Hearing Tr. of Class Cert. Hearing (May 9, 2025) at 130:14-17 ("I would like to conduct it in a single non-bifurcated manner. I think, with proper instructions, the jury will be able to figure things out and be able to segregate issues properly."); *see also In re Massachusetts Helicopter Airlines, Inc.*, 469 F.2d 439, 441 (1st Cir. 1972) ("Except for the consolidation of these cases for convenience of pre-trial and trial procedure, the cases maintained their separate identities throughout the litigation. Separate judgments were entered in each of the five cases."); *Glob. Naps, Inc. v. Verizon New England, Inc.*, 396 F.3d 16, 22 (1st Cir. 2005) ("The disposition of one case in a consolidated action is a final and appealable judgment unless the cases were consolidated 'for all purposes.'").

[19] *Bay State HMO Mgmt., Inc. v. Tingley Sys., Inc.*, 181 F.3d 174, 178 & n.3 (1st Cir. 1999); *see Massachusetts Helicopter*, 469 F.2d at 441–42 ("'One or many or all of the phases of the several actions may be merged. But merger is never so complete even in consolidation as to deprive any party of any substantial rights which he may have possessed had the actions proceeded separately. The actions retain their separate identity, and the parties and pleadings in one action do not automatically become parties and pleadings in the other action.'" (quoting J. Moore, Federal Practice ¶ 42.02, at 42-21, 42-22 (2d ed. 1971))); *Glob. Naps*, 396 F.3d at 22 (recognizing consolidation is "a procedural mechanism meant to serve the purposes of judicial economy and convenience of the parties, as here, but not alter the substantial rights the parties had in the separate actions" (citing *Massachusetts Helicopter*, 469 F.2d at 441)).

[20] *See, e.g., Bay State*, 181 F.3d 174 at 178 ("[C]onsolidated cases retain their separateness for purposes of appeal and therefore the district court need not issue such a Rule 54(b) certification to allow an appeal from the termination of one of the consolidated cases.").

[21] This would include any issues briefed against the direct purchaser and retailer judgments. The direct purchasers understand, although Takeda has not identified the post-judgment motions it intends to file, that all questions of liability are common. The only issues that should be specific to the end payors relate to their class injury and damages—specifically, the testimony and related issues of the parties' respective experts, Martin Kovach and Bruce Strombom (e.g., whether all end-payor class members were injured). And there should not be

begin to run upon the Court's order resolving the last of the post-judgment motions for that case.[22] Given the ability and desire of the end-payors to address their discrete case-specific issues in an expedited manner, and given that the appellate process typically proceeds at a deliberate pace, the direct purchasers anticipate that briefing on end-payor-specific issues will be able to catch up to the common briefing during the appeal such that no party is prejudiced. To the contrary, if judgment is delayed, the direct purchaser class will be prejudiced every day that the millions of dollars of interest to which the class is entitled does not accrue.

Takeda also objected to entry of judgment before the approval of an allocation plan for the class. "[W]here the remaining issues are 'ministerial' and unlikely to alter the issues on appeal, 'immediate appeal is allowed.'"[23] The allocation of the total judgment amongst the class,

---

any dispute over the meaning of "common," unlike for the summary judgment briefing. There, Takeda first moved for leave to file motions on plaintiff-specific issues after it had filed on common issues, and there was a dispute about whether subsequent issues were genuinely "new." *See, e.g.*, Doc No. 592 at 6–9 (Transcript of July 10, 2025 Status Conference). Here, the scheduling issue has been raised ahead of time, and the Rules will allow Takeda to file post-judgment motions after a judgment in the end-payor case.

[22] *See* Fed. R. App. P. 4(a)(4)(A) (time to file notice of appeal runs from entry of order disposing of last remaining post-trial motion).

[23] *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 651 n.1 (4th Cir. 2019) (quoting *Parks v. Pavkovic*, 753 F.2d 1397, 1401 (7th Cir. 1985)) (holding judgment that awarding aggregate damages to class was final where "[a]ll that remains at the district court are questions as to distribution of the damages award [that] can be resolved expeditiously and easily via a claims process" (quotation marks and internal citation omitted)); *see Parks*, 753 F.2d at 1401–02 ("For if the further proceedings in the trial court are quite unlikely to make the appeal moot or even affect the issue on appeal, there is no reason to delay the appeal while they are resolved . . . ."). *Parks* is instructive. There, as here, the court concluded that "the district court will not have the problem of dividing up a pie among competing claimants whose claims in the aggregate exceed the pie," and "in the unlikely event that any appealable issues arise in computing each class member's damage entitlement, they will not be factually similar to those raised by the present appeal, so there will be no judicial diseconomy if they are considered in a separate appeal." 753 F.2d at 1402. Indeed, the Supreme Court has ruled on the merits of a case where the "damages award ha[d] not yet been disbursed, nor d[id] the record indicate how it w[ould] be disbursed." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 461 (2016).

based on actual overcharges, is a ministerial matter that does not concern Takeda.[24] Courts, including in the First Circuit, often enter final judgments separate from any plan for allocation.[25] Where, as here, the defendant has expressed an intent to move for a stay of execution of judgment pending appeal, there is no need to finalize the allocation plan until after appeal, when the judgment becomes available to the class. Should the Court desire a plan of allocation to be issued concurrent with entry of judgment, the direct purchasers will file a motion for approval of an allocation plan.

**B.    Award of Cost of Suit and Deferral of Deadline for Fee Petition**

Separate from the judgment, the direct purchasers request an order, attached as Exhibit B, that: 1) the deadline for the direct purchasers' statutory fee petition requesting a determination quantifying the award of the cost of suit, including a reasonable attorney's fee, pursuant to Fed. R. Civ. P. 54(d)(2) and 15 U.S.C. § 15(a) be deferred until 14 days after the issuance of a mandate, if any, by the First Circuit (or other order of this Court); and (2) the

---

[24] *See In re Urethane Antitrust Litig.*, 768 F.3d 1245, 1269 (10th Cir. 2014) ("[A defendant] has no interest in the method of distributing the aggregate damages award among the class members."). Here, the allocation will align with the supplemental report of the direct purchasers' expert economist Dr. Rena Conti, dated April 9, 2026, which calculated the allocation of damages based on April 2018 entry in attachment C.11. At class certification, the Court held that the direct purchasers had satisfied their burden of proving common damages based on Dr. Conti's methodology. Doc No. 616 at 41 (class certification order). And this is not a case in which the method of allocation could lead to Takeda paying more in damages to the class than it otherwise would. *Cf. Fairholme Funds, Inc. v. Fed. Housing Fin. Agency*, 2024 WL 1213200, at *3–4 & n.2 (D.D.C. Mar. 20, 2024) (modifying jury award where damages evidence and subsequent award included the damages of opt-outs).

[25] *See, e.g., In re New Motor Vehicles Canadian Export Antitrust Litig.*, 2012 WL 379947, at *2 (D. Me. Feb. 3, 2012) ("Any order entered regarding the plan of allocation or any order entered regarding any application for attorney fees and expenses shall in no way disturb or affect this Judgment and shall be considered separate from this Judgment."). In arguing an allocation plan was required at this stage, Takeda pointed the direct purchaser class to Tenth Circuit precedent that has not been adopted in the First Circuit, let alone by the other Circuits. *See Strey v. Hunt Int'l Resources Corp.*, 696 F.2d 87 (10th Cir. 1982); *compare Urethane*, 768 F.3d at 1269 (Tenth Circuit decision concluding defendants have no interest in distribution of damages among class members). *But see supra* n.23 (Fourth and Seventh Circuits).

deadline for counsel for the certified direct purchaser class to move under Fed. R. Civ. P. 23(h)

for an award of reasonable attorney's fees and nontaxable costs from any common fund when,

as and if, such fund exists be deferred until the same date.

Again, the Clayton Act entitles the direct purchaser class to "recover . . . the cost of suit,

including a reasonable attorney's fee."[26] Fed. R. Civ. P. 54(d)(2)(B) states that absent a court

order holding otherwise, any motion for a reasonable attorney's fee and related non-taxable

expenses must be filed within 14 days after the entry of judgment.

Courts, including in antitrust class actions, routinely defer the adjudication of an

attorney's fee until after the resolution of any merits appeal.[27] This serves the interests of

judicial economy and efficiency because any appeal will affect the fee petition no matter the

outcome—i.e., additional time and costs will need to be included for prosecution of the appeal.

Deferral is particularly appropriate here, where the direct purchasers must compile, review, and

audit hours and costs over the last five years, along with the five-week trial, which will require

some time.

The Fed. R. Civ. P. 54(d)(2)(B) deadline does not apply to Rule 23(h), under which class

counsel for the direct purchasers may seek a reasonable attorney's fee and costs from the

---

[26] 15 U.S.C. § 15(a); *see Home Placement Serv., Inc. v. Providence J. Co.*, 819 F.2d 1199, 1210 (1st Cir. 1987) ("In all successful antitrust cases, the award of reasonable attorney's fees as part of costs is mandatory in order to encourage private prosecution of antitrust violations by insulating plaintiffs' treble damage recoveries from the expense of legal fees.").

[27] *See, e.g., Sitzer v. Nat'l Assoc. of Realtors*, No. 19-cv-332, ECF No. 1401 (W.D. Mo. Mar. 18, 2024); *In re Urethane Antitrust Litig.*, No. 04-md-1616, ECF No. 2899 (D. Kan. June 7, 2013); *see also In re Neurontin Mktg., Sales Practices, & Prods. Liability Litig.*, No. 04-cv-10981, ECF No. 3288 (D. Mass. Feb. 14, 2011) at 20:9-11; *see also Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 202–03 (1988) ("[A] decision on the merits is a 'final decision' for purposes of § 1291 whether or not there remains for adjudication a request for attorney's fees attributable to the case.").

judgment.[28] It is in the interest of judicial economy and efficiency to defer this briefing until the briefing pursuant to 15 U.S.C. § 15(a). Accordingly, the direct purchasers request that the deadline for their class counsel to move under Fed. R. Civ. P. 23(h) be set at the deferred date for their motion under the Clayton Act: 14 days after the issuance of a mandate if any by the First Circuit (or other order of this Court).[29]

## IV.    CONCLUSION

For these reasons, the direct purchasers respectfully request that the Court enter final judgment in favor of the direct purchasers in the form of Exhibit A and an order deferring the time to file fee petitions in the form of Exhibit B.

Dated: June 16, 2026

Respectfully submitted,

**HAGENS BERMAN SOBOL SHAPIRO LLP**

*/s/* Thomas M. Sobol
Thomas M. Sobol (BBO #471770)
Erin C. Burns (*pro hac vice*)
Kristen A. Johnson (BBO #667261)
Jessica R. MacAuley (BBO #685983)
Rebekah Glickman-Simon (BBO #708043)
Daniel Polonsky (BBO #709609)
1 Faneuil Hall Square
Boston, MA 02109
Tel: (617) 482-3700

---

[28] *See* Fed. R. Civ. P. 23(h)(1) ("A claim for an award must be made by motion under Rule 54(d)(2), subject to the provisions of this subdivision (h), *at a time the court sets.*" (emphasis added)); *see also Manual for Complex Litigation, Fourth* § 21.721 ("Rule 23(h) does not contemplate application of the fourteen-day rule specified in Rule 54(d)(2)(B) unless the court chooses to set that time."). Reasonable fees shifted pursuant to the Clayton Act belong to the class, not counsel. *See* IIA Phillip E. Areeda, *Antitrust Law* ¶ 330e (4th ed. 2025) (explaining that section 4 of the Clayton Act "makes clear that the plaintiff, not the attorney, is entitled to recover the attorney's fees and costs") (citing *Farmington Dowel Prods. Co. v. Forster Mfg. Co.*, 421 F.2d 61, 88 (1st Cir. 1969) ("[T]he court's award goes first to the plaintiff as part of his recovery in accordance with the language of section 4. If he chooses to pass that money on to his attorneys, that is his business.")).

[29] Included in the motion for fees and costs will be amounts allocated for claims administration and class representative service awards.

Fax: (617) 482-3003
tom@hbsslaw.com
erinb@hbsslaw.com
kristenj@hbsslaw.com
jessicam@hbsslaw.com
rebekahgs@hbsslaw.com
danielp@hbsslaw.com

*Counsel for the Direct Purchaser Class*

Michael L. Roberts (*pro hac vice*)
Stephanie E. Smith (*pro hac vice*)
Kelly Rinehart (*pro hac vice*)
Joshua Zuckerman (*pro hac vice*)
Rita Y. Wang (*pro hac vice*)
**ROBERTS LAW FIRM US, PC**
1920 McKinney Ave., Suite 700
Dallas, TX 75201
Tel: (501) 821-5575
mikeroberts@robertslawfirm.us
stephaniesmith@robertslawfirm.us
kellyrinehart@robertslawfirm.us
joshzuckerman@robertslawfirm.us
ritawang@robertslawfirm.us

*Counsel for KPH Healthcare Services, Inc.,
a/k/a. Kinney Drugs, Inc. and the Direct
Purchaser Class*

John D. Radice (*pro hac vice*)
April Lambert (*pro hac vice*)
Charles Kopel (*pro hace vice*)
Luke Smith (*pro hac vice*)
Clark Craddock (*pro hac vice*)
Kenneth Pickle (*pro hac vice*)
**RADICE LAW FIRM, P.C.**
475 Wall St.
Princeton, NJ 08540
Tel: (646) 245-8502
Fax: (609) 385-0745
jradice@radicelawfirm.com
alambert@radicelawfirm.com
ckopel@radicelawfirm.com
lsmith@radicelawfirm.com
ccraddock@radicelawfirm.com
kpickle@radicelawfirm.com

*Counsel for the Direct Purchaser Class*

- 10 -

## CERTIFICATE OF SERVICE

I, Thomas M. Sobol, hereby certify that this document was electronically filed with the Clerk of the Court for the District of Massachusetts by using the CM/ECF System, which will send notification of such filing to all registered CM/ECF users.


Dated: June 16, 2026                              /s/ Thomas M. Sobol
                                                  Thomas M. Sobol